# In the United States Court of Appeals for the Fifth Circuit

---

JONATHAN CORRENTE; CHARLES SHAW; LEO WILLIAMS,

*Plaintiffs – Appellees*,

v.

THE CHARLES SCHWAB CORPORATION,

*Defendant – Appellee,*

v.

SHIYANG HUANG, OBJECTOR; STATE OF IOWA, OBJECTOR,

*Appellants*.

---

On Appeal from the United States District Court for the Eastern District of Texas
Hon. Amos L. Mazzant, III, No. 4:22-cv-470

## PLAINTIFFS-APPELLEES' MOTION TO DISMISS APPEAL OF THE STATE OF IOWA

CHRISTOPHER M. BURKE
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
(619) 369-8244

BRIAN J. DUNNE
EDWARD M. GRAUMAN
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, Texas 78746
(512) 575-8848

YAVAR BATHAEE
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, New York 10022
(332) 322-8835

*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF INTERESTED PERSONS**

No. 25-40774, *Corrente v. Charles Schwab Corp.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**1.    Plaintiffs-Appellees**

      a.  Jonathan Corrente

      b.  Charles Shaw

      c.  Leo Williams

**2.    Counsel for Plaintiffs-Appellees**

      a.  Bathaee Dunne LLP

      b.  Yavar Bathaee

      c.  Brian J. Dunne

      d.  Edward M. Grauman

      e.  Andrew Wolinsky

      f.  Priscilla Ghita

      g.  Allison Watson

      h.  Burke LLP

      i.  Christopher Burke

j.  Korein Tillery P.C.

k.  Chad E. Bell

l.  Capshaw Derieux LLP

m. Elizabeth L. DeRieux

n.  S. Calvin Capshaw

**3.      Defendant-Appellee**

a.  The Charles Schwab Corporation

**4.      Counsel for Defendant-Appellee**

a.  King & Spalding LLP

b.  Veronica S. Moyé

c.  Gibson, Dunn & Crutcher, L.L.P.

d.  Jason J. Mendro

e.  Cynthia Richman

f.  Daniel G. Swanson

g.  Jeffrey Liu

h.  Gillam & Smith, LLP

i.  Harry Lee Gillam, Jr.

j.  Andrew Thompson Gorham

k.  Melissa R. Smith

l.  Wilmer Cutler Pickering Hale & Dorr, L.L.P.

m. Alan E. Schoenfeld

n. David Charles Marcus

o. Jennifer Milici

5. **Movants-Appellants (Objectors)**

a. Shiyang Huang (*pro se*)

b. State of Iowa

6. **Counsel for Movant-Appellant State of Iowa**

a. Iowa Department of Justice

b. Brenna Bird

c. Eric H. Wessan

7. **Settlement Class Members**

a. Persons, entities, and corporations who, as of November 24, 2025 (the date of final approval), were current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade

The Charles Schwab Corporation is a publicly held Delaware corporation that has no parent corporation. As of January 26, 2026, no corporation has filed a Schedule 13G with the U.S. Securities and Exchange Commission disclosing ownership of ten percent or more of stock of The Charles Schwab Corporation.

s/ Brian J. Dunne
Brian J. Dunne

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS........................................................i

TABLE OF CONTENTS ........................................................................iv

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION ................................................................................1

BACKGROUND....................................................................................2

    A.    The Underlying District Court Action and Settlement .........................2

    B.    District Court Objections, Fairness Hearing, and Final Approval........4

ARGUMENT ........................................................................................5

I.    IOWA HAS NO STANDING—NOT TO OBJECT, AND NOT TO APPEAL.....................................................................................6

II.    IOWA'S ARGUMENTS FOR STANDING ARE WRONG .......................13

CONCLUSION ...................................................................................16

CERTIFICATE OF CONFERENCE ....................................................17

CERTIFICATE OF COMPLIANCE ....................................................18

EXHIBIT A (District Court Orders)

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*,
 458 U.S. 592 (1982)...............................................................2, 11, 13

*Audler v. CBC Innovis Inc.*,
 519 F.3d 239 (5th Cir. 2008) ............................................................ 6

*Center for Biological Diversity v. U.S. Environmental Protection Agency*,
 937 F.3d 533 (5th Cir. 2019) ..................................................... 13, 16

*Chapman v. Tristar Products, Inc.*,
 940 F.3d 299 (6th Cir. 2019) ................................................... passim

*Hollingsworth v. Perry*,
 570 U.S. 693 (2013)..............................................................1, 5, 12

*In re Deepwater Horizon*,
 739 F.3d 790 (5th Cir. 2014) ........................................................... 10

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*,
 910 F. Supp. 2d 891 (E.D. La. 2012) ........................................ 8, 9, 14

*Iowa ex rel. Miller v. Block*,
 771 F.2d 347 (8th Cir. 1985) .............................................................. 9

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)................................................................... 12, 16

*Paterson v. Texas*,
 308 F.3d 448 (5th Cir. 2002) ............................................... 1, 6, 7, 16

*People ex rel. Hartigan v. Cheney*,
 726 F. Supp. 219 (C.D. Ill. 1989) ...................................................... 9

*Rohm & Hass Texas, Inc. v. Ortiz Brothers Insulation, Inc.*,
 32 F.3d 205 (5th Cir. 1994) ........................................................... 1, 5

*Seila Law LLC v. Consumer Financial Protection Bureau*,
 591 U.S. 197 (2020).......................................................................... 5

*Texas Democratic Party v. Benkiser,*
  459 F.3d 582 (5th Cir. 2006) ............................................................. 16

*Texas v. United States,*
  50 F.4th 498 (5th Cir. 2022) .............................................................. 13

*Transamerican Refining Corp. v. Dravo Corp.,*
  952 F.2d 898 (5th Cir. 1992) .............................................................. 8

## Statutes

15 U.S.C. § 18 ........................................................................................ 2

28 U.S.C. § 1332(d) ............................................................................... 7

28 U.S.C. § 1453 .................................................................................... 7

28 U.S.C. § 1715(b) ........................................................................ 4, 13

28 U.S.C. § 1715(e)(1) ........................................................................ 14

28 U.S.C. § 1715(f) .................................................................... 2, 12, 14

28 U.S.C. §§ 1711-15 ............................................................................ 7

Iowa Code § 13.2 ........................................................................... 13, 15

## Other Authorities

Senate Report No. 109-14 .................................................................... 12

## Rules

FED. R. CIV. P. 23(b)(2) ......................................................................... 3

Fed. R. Civ. P. 23(e) ............................................................................ 13

FED. R. CIV. P. 23(e)(5)(A) .................................................................. 15

# INTRODUCTION

The State of Iowa's appeal should be dismissed because Iowa lacks standing—both to object to the district court's approval of the class settlement below and to invoke this Court's appellate jurisdiction. Iowa is not a class member. It does not allege that it has ever maintained a Schwab or TD Ameritrade brokerage account. It does not contend that it has suffered, or will suffer, any concrete or particularized injury as a result of the settlement it challenges. Instead, Iowa seeks to appear as a self-appointed overseer of a private federal class action, advancing generalized grievances about the adequacy of relief for unnamed class members and invoking broad assertions of state authority untethered from any cognizable injury to the State itself. Article III does not permit this maneuver.

Standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance," *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013), and a party may not appeal "to champion the rights of another," *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994). This Court has enforced those limits in the class action context, including in *Paterson v. Texas*, where it dismissed a state's appeal from approval of a nationwide class settlement because the state—like Iowa here—was not a class member and had suffered no injury of its own. *See* 308 F.3d 448 (5th Cir. 2002). That rule applies here, and nothing Iowa has invoked alters the analysis.

For example, the Class Action Fairness Act requires notice to state officials, but it expressly disclaims any expansion of state authority or standing. *See* 28 U.S.C. § 1715(f). Nor may Iowa rely on *parens patriae* principles to manufacture jurisdiction. To have *parens patriae* standing, a state must assert a quasi-sovereign interest distinct from the private interests of its citizens; it may not simply relabel the alleged injuries of private parties as its own. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 600-07 (1982). Federal courts have frequently—and persuasively—rejected for lack of standing indistinguishable attempts by state attorneys general to object to class settlements.

Iowa lacked standing to object, and lacks standing to appeal. Accordingly, the Court should grant this motion to dismiss Iowa's appeal for lack of jurisdiction.

## BACKGROUND

### A.     The Underlying District Court Action and Settlement

This appeal comes from a district court case challenging the merger between Charles Schwab and TD Ameritrade—two of the largest retail brokerages in the United States prior to their coupling. ROA.37 ¶ 1 (Compl.). On June 2, 2022, three Schwab retail traders and a putative class sued Schwab in the United States District Court for the Eastern District of Texas under Section 7 of the federal Clayton Antitrust Act, 15 U.S.C. § 18, challenging the Schwab-TD Ameritrade merger as anticompetitive and seeking injunctive relief and damages. ROA.46 ¶ 52, ROA.137-

38 ¶¶ 482-88. The action was assigned to Chief District Judge Amos Mazzant. ROA.3092.

Between June 2022 and July 2024, the district court parties (Plaintiffs and Schwab) litigated a motion to dismiss, exchanged more than a million pages of documents and 6.5 terabytes of financial data, completed five depositions, and briefed several discovery motions. *See* ROA.2150, 3100-13. On July 9, 2024, Plaintiffs and Schwab held an in-person mediation session with the Hon. Nancy F. Atlas, retired United States District Judge, which in September 2024 led to a settlement in principle with a signed term sheet. ROA.975. The parties' agreement included a classwide settlement of injunctive relief claims under FED. R. CIV. P. 23(b)(2), and individual settlement of the named plaintiffs' damages claims. ROA.2443 n.2. Classwide damages claims were not released. *Id.*; ROA. 2477

On February 4, 2025, Plaintiffs moved for preliminary approval of the parties' settlement. ROA.1002-36. On February 19, 2025, the district court granted preliminary approval, certified an injunctive relief settlement class under Rule 23(b)(2), directed that notice be provided, and scheduled a fairness hearing for August 28, 2025. ROA.1174-84. The Rule 23(b)(2) settlement class was defined as follows:

> persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade.

ROA.1176.

## B. District Court Objections, Fairness Hearing, and Final Approval

After the settlement was preliminarily approved and the settlement class certified, direct notice was provided to nearly 25 million class members. ROA.2126. In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), notice was also provided to designated state authorities. *Id.*

Between April and August 2025, the district court received approximately 70 objections. ROA.2121. Most of these were from class members (*i.e.*, Americans with Schwab brokerage accounts). A handful were not.

Among this latter group was the State of Iowa, which filed an "objection" on July 29, 2025. ROA1956-86. Iowa did not claim to be a member of the settlement class, nor to have **ever** had a Schwab or TD Ameritrade brokerage account. *See id.* It did not claim that it had been, or would be, injured in fact from the proposed settlement. *See* ROA.1967-68. Instead, Iowa claimed that "the proposed settlement impairs the economic well-being of Iowa consumer class members," and "Iowa law imposes an affirmative 'duty' on the Attorney General to 'prosecute and defend' in all courts 'all actions or proceedings, civil or criminal, in which the state may be a party *or interested*, when, in the attorney general's judgment, the interest of the state requires such action." ROA.1968 (quoting Iowa Code § 13.2) (emphasis added by Iowa; brackets omitted).

On August 28, 2025, the district court held a class action fairness hearing in Sherman, Texas. ROA.3121. The State of Iowa did not appear. *Id.* It did not move to intervene. *See id.*

On November 24, 2025, the district court issued a fifty-two-page opinion granting final approval, ROA.2241-92, and a twenty-nine page opinion on attorney fees, ROA.2493-521. The district court carefully addressed all objections in these orders. ROA.2483-89, ROA.2511-20. The district court's orders did not evaluate Iowa's standing to object. *Id.*

On December 19, 2025, Iowa filed a notice of appeal to this Court. ROA.3123.

## ARGUMENT

"[S]tanding must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 211 (2020) (quoting *Hollingsworth*, 570 U.S. at 705). A "putative appellant shoulders the burden of alleging facts sufficient to demonstrate that it is a proper party to appeal." *Rohm & Hass*, 32 F.3d at 208 (5th Cir. 1994). "Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court," and "a party generally may not appeal a district court's order to champion the rights of another." *Id.* Here, the State of Iowa—which has suffered

(and will suffer) no injury-in-fact—has no standing, and its appeal must be dismissed on jurisdictional grounds.

## I.    IOWA HAS NO STANDING—NOT TO OBJECT, AND NOT TO APPEAL

"Ordinarily, under the general principles of standing, a litigant may not merely champion the rights of another," but "[i]nstead . . . must establish that he has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (cleaned up). Iowa, which is not a class member and does not trade through a Schwab retail brokerage account, has no personal stake in the settlement it seeks to challenge. *See* ROA.1967-68. Instead, it avowedly seeks to champion the rights of others—Iowa citizens—in a representative capacity. ROA.1968 ("The State's interest in the economic welfare of its citizens thus supports standing and an adequate legal interest to warrant its objection here."). This Court and others across the country have repudiated arguments like Iowa's that seek to bootstrap standing for a non-class member to object to a class settlement.

For example, in *Paterson v. Texas*, 308 F.3d 448 (5th Cir. 2002), this Court faced a nearly identical procedural situation—indeed, down to the appealed-from district court. There, a group of "Plaintiffs brought . . . suit alleging that Western Union, in violation of federal and state law, had overcharged customers who used a credit card to transfer money." *Id.* at 449. The district court certified a nationwide

class and "approved a settlement agreement whereby class members receive by check or money order a partial refund of fees paid to Western Union." *Id.* The State of Texas objected to a provision in the settlement agreement provided that unclaimed settlement funds would revert to Western Union, which Texas contended "violates Texas law," to wit, a Texas Property Code provision concerning unclaimed funds. *Id.* at 449-50. "The district court rejected [Texas's] argument and approved the settlement agreement," and Texas appealed. *Id.* at 450. As to standing, "[t]he State regard[ed] itself as standing in the shoes of those class members residing in Texas who are eligible to receive funds from Western Union but whose current addresses are unknown and who do not take advantage of the claims process set out in the settlement agreement." *Id.*

This Court dismissed Texas's appeal for lack of standing. First, the "State ha[d] not itself suffered an actual or imminent injury and c[ould] demonstrate no present interest in settlement funds." *Id.* at 451. And "for the State's argument that it represents the interests of Texas class members, we know of no authority that would give it standing in a representative capacity." *Id.*

*Paterson* was decided before the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711-15, but CAFA has not materially impacted the case's applicability—and does not somehow manufacture Article III standing for the objection Iowa seeks to raise here. For example, in *In re Oil Spill by*

*Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010* ("*Deepwater Horizon*"), 910 F. Supp. 2d 891 (E.D. La. 2012), a group of Gulf States, including Louisiana and Mississippi, sought to object to a class settlement, arguing they had standing under CAFA, under the *parens patriae* doctrine, and for their own indirect injuries. *Id.* at 941-44. After noting that "[i]n the context of class settlements, non-settling parties generally have no standing to challenge the proposed settlements," *id.* at 941 (citing *Transamerican Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992)) (additional citations omitted), and that "Plaintiffs falling outside the settlement class are entirely unaffected by the Settlement, and thus lack standing to challenge it," *id.*, the *Deepwater Horizon* district court considered and rejected each of the Gulf States' arguments for standing.

As to supposed "CAFA standing," the court explained:

> The Gulf States do not acquire standing under CAFA's notification provision, 28 U.S.C. § 1715. The statute simply requires notification; it does not create standing that a state otherwise lacks. *See* 28 U.S.C. § 1715(f) ("Nothing in this section shall be construed to expand the authority of . . . State officials."); *In re Budeprion XL Mktg. & Sales Litig.*, MDL No. 09-2107, 2012 WL 4322012, at *4 (E.D. Pa. Sept. 21, 2012) ("The statute says nothing . . . of granting states a right to be heard on, or formally appeal, every class action settlement simply because residents of that state are class members.").

*Id.*

And as to *parens patriae*:

> The Gulf States may not invoke the *parens patriae* doctrine, as any challenge to the Settlement Agreement simply represents an effort to advance the particular financial interests of a subset of these states' citizens. But while "a State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest . . . Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 602. At bottom, "the State must articulate an interest apart from the interests of particular private parties." *Id.* at 607; *see also Paterson*, 308 F.3d at 451 (overruling Texas' Attorney General's objections to a class action settlement for lack of standing).

*Id.* (citations cleaned up).

Finally, "Louisiana and Mississippi . . . contended that they ha[d] standing because the Settlement inadequately compensates their citizens and requires those states to pay more in unemployment insurance and other benefits." *Id.* This argument was rejected by the *Deepwater Horizon* district court as insufficient, as it "would logically give standing to any state to challenge ***any*** settlement of a private dispute." *Id.* (emphasis in original). As the court noted, "similar arguments have been repeatedly challenged by federal courts," *id.*, citing *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985), and *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989). On January 14, 2014, this Court affirmed the *Deepwater*

*Horizon* district court's class certification order but did not specifically address its analysis of the Gulf States' objection standing. *See In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

The Fifth Circuit is not an outlier on this issue. For example, in *Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 302 (6th Cir. 2019), "[t]he Arizona Attorney General believe[d] the plaintiff class got a bad deal in settling [a] products liability lawsuit over allegedly defective pressure cookers." There, "[t]he settlement agreement, entered after one day of trial, included an award of approximately $2 million in fees and expenses for class counsel, and substantially less than that— primarily in the form of coupons—for the class members." *Id.* The State of Arizona "objected in the district court to the terms of the settlement, arguing that it was lopsided and should be rejected," and also moved to intervene. *Id.* The district court denied Arizona's motion to intervene on the ground the state lacked Article III standing, then approved the settlement. *Id.* Arizona appealed, and the Sixth Circuit, holding that the state lacked standing, dismissed Arizona's appeal "for want of jurisdiction." *Id.*

The *Chapman* court considered, and rejected, arguments indistinguishable from those advanced by Iowa in this matter, including that Arizona "ha[d] standing (1) under the doctrine of *parens patriae*, (2) under § 1715 of the Class Action

Fairness Act, 28 U.S.C. § 1715, and (3) because it has a participatory interest as a 'repeat player.'" *Id.* at 305.

As to *parens patriae*, the Sixth Circuit emphasized—relying on Supreme Court doctrine—that "the State must articulate an interest apart from the interests of particular private parties; the State must be more than a nominal party." *Id.* at 305 (quoting *Alfred Snapp & Son, Inc.*, 458 U.S. at 600 (brackets omitted)). In trying to show this distinct *parens patriae* interest, Arizona argued that the settlement it was challenging was of a sort the state had "attempted to address . . . through legislation," *id.* at 305, but the court rejected that argument. Since "it [wa]s not entirely certain that Arizona's sovereign law-making processes have touched on the issues to which Arizona objects . . . the only objections that Arizona can make are indistinguishable from the objections which individual Arizonans might raise." *Id.* at 306. Under the Supreme Court's decision in *Snapp*, this would make Arizona "merely a nominal party" and would not give rise to any quasi-sovereign interests. *Id.*

Arizona also argued—like Iowa did in the district court here—that CAFA conferred upon it standing to object, but the Sixth Circuit rejected that too. As the *Chapman* court explained, "CAFA does not create a right of action for state attorneys general; thus, we need not consider here the reach of the principle that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 306 (quoting *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 578 (1992) (brackets and italics in original)). Reading the plain text of the CAFA statute, the *Chapman* court noted that while "§ 1715 requires parties to notify state attorneys general of proposed settlements," the statute "also states that '[n]othing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials.'" *Id.* at 306-07 (quoting 28 U.S.C. § 1715(f)). Although Arizona argued that legislative history—legislative history also cited by Iowa in its district court objection in this case, ROA.1967 (citing S. Rep. No. 109-14)—"demonstrates that CAFA gives standing to intervene," 940 F.3d at 306, the Sixth Circuit held that "the statute's plain text clearly forecloses Arizona's argument," *id*. at 307.

Finally, Arizona argued in *Chapman* that it had standing "because it has 'participate[d] regularly in class action settlement proceedings to protect Arizona consumers and ensure statutory compliance.'" *Id.* at 307. This was insufficient to confer standing to object, the Sixth Circuit held, because "Arizona's regular participation in class action lawsuits establishes at most a mere interest in the problem of unfair class action settlements, which is not sufficient to confer standing." *Id.* (cleaned up). As the *Chapman* court explained, quoting the Supreme Court, "Article III standing is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for vindication of value interests." *Id.* at 307 (quoting *Hollingsworth*, 570 U.S. at 707) (quotation marks and citation omitted).

The Sixth Circuit's analysis and reasoning in *Chapman* are instructive here, where Iowa is not a class member and relies on CAFA and general state statutes to create a penumbra of quasi-interests under *Snapp*. To the extent that *Paterson* and *Audler* leave any doubt as to whether non-class-member states have standing to object to class settlements, the well-reasoned analysis in *Deepwater Horizon* and *Chapman* resolve it—responding to standing arguments indistinguishable from those presented by Iowa in its objection here.

## II. IOWA'S ARGUMENTS FOR STANDING ARE WRONG

In the district court, Iowa argued it has "substantial interests in the settlement approval decision," including that "the settlement strongly affects the State of Iowa's 'quasi-sovereign interest in the health and well-being—both physical and economic—of its residents.'" ROA.1967 (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 607). Iowa cited CAFA, specifically 28 U.S.C. § 1715(b), and Iowa Code § 13.2 as statutes providing "an interest or procedural right[] that weighs in favor of finding special solicitude for *parens patriae* standing." *Id.* (citing *Texas v. United States*, 50 F.4th 498, 517 (5th Cir. 2022)). Ultimately, Iowa argued the district court "should accept this objection filed on behalf of the State of Iowa in accord with Iowa law, federal law, federal rules, and Fifth Circuit precedent," *id.*, citing Iowa Code § 13.2, 28 U.S.C. § 1715(b), Fed. R. Civ. P. 23(e), and *Center for Biological*

*Diversity v. U.S. Environmental Protection Agency*, 937 F.3d 533, 536 (5th Cir. 2019).

Iowa's arguments—including its spaghetti-at-the-wall string citation—do not establish the state's standing to object under well-reasoned precedent. First, as to Iowa's reliance on CAFA, that statute provides the state neither a standalone right of action nor derivative authority for *parens patriae* standing under *Snapp*. As both the *Deepwater Horizon* district court and the Sixth Circuit have recognized, CAFA by its terms provides no right of action for state attorneys general to object to class settlements, and indeed expressly states that "[n]othing in this section shall be construed to expand the authority of, or impose any obligations, duties or responsibilities on, Federal or State officials." 28 U.S.C. § 1715(f); *see Deepwater Horizon*, 910 F. Supp. 2d at 943; *Chapman*, 940 F.3d at 306-07. As to the notice terms of § 1715, the statute expressly states that if notice is not provided, "***[a] class member*** may refuse to comply with and may choose not to be bound by a settlement agreement . . ." 28 U.S.C. § 1715(e)(1) (emphasis added). That is, to the extent CAFA creates any substantive rights at all for state officials, it expressly excludes such state officials from the individuals who may enforce them. For the same reason, CAFA does not create the sort of state-specific interest that is distinct from the rights of private parties required under *Snapp*. *See Deepwater Horizon*, 910 F. Supp. 2d at 943; *Chapman*, 940 F.3d at 305-07.

As to Iowa's assertion that Iowa law creates the necessary interest under *Snapp*, the statute identified by Iowa is incredibly broad and non-specific, without even an oblique reference to federal class action settlements. As Iowa puts it: "Iowa law imposes an affirmative 'duty' on the Attorney General to '[p]rosecute and defend' in all courts 'all actions or proceedings, civil or criminal, in which the state may be a party *or interested*, when, in the attorney general's judgment, the interest of the state requires such action." ROA.1968 (quoting Iowa Code § 13.2 (brackets and italics in Iowa's brief)). Similar assertions of broad, non-specific state interest were rejected in *Deepwater Horizon* and in *Chapman*—the latter of which rejected Arizona's reliance on state statutes and rules much more concrete than the Iowa statute relied on here. *See Chapman*, 940 F.3d at 305-06. Indeed, if Iowa's argument that Iowa Code § 13.2 gives it standing under *Snapp* were to be countenanced, the Iowa Attorney General could appear as a party in ***any federal lawsuit in the country***, so long as the Iowa Attorney General, in her "judgment," deemed it was necessary. That is the exact sort of "merely nominal" standing that *Snapp*—and Article III—proscribes.

Finally, Iowa's citation to Rule 23(e) and *Center for Biological Diversity* are simply head-scratchers. Rule 23(e) could not on its own confer constitutional standing in any event, but regardless its terms state that "[a]ny ***class member*** may object" to a settlement, FED. R. CIV. P. 23(e)(5)(A), and Iowa is not a class member.

Indeed, this Court's decision in *Paterson* forecloses the argument that a state may, citing just Rule 23(e), appear in federal court to object to a class action settlement. 308 F.3d at 450-51. And this Court's decision in *Center for Biological Diversity*, cited by Iowa in its objection as a basis for standing, does not address state objector standing, does not address objector standing more generally, and does not appear pertinent in any way beyond its recitation of baseline standing tests. *See* 937 F.3d at 536 (discussing, among other cases, *Lujan*, 504 U.S. at 561, and *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006)).

## CONCLUSION

The Court should dismiss the State of Iowa's appeal for lack of jurisdiction.


Date: January 26, 2026

Respectfully submitted,

s/ Brian J. Dunne

CHRISTOPHER M. BURKE
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
(619) 369-8244

BRIAN J. DUNNE
EDWARD M. GRAUMAN
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, Texas 78746
(512) 575-8848

YAVAR BATHAEE
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, New York 10022
(332) 322-8835

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF CONFERENCE

Pursuant to 5th Circuit Rule 27.4, I certify that I have contacted all other parties. Defendant-Appellee The Charles Schwab Corporation takes no position on the motion. Appellant Shiyang Huang takes no position on the motion. I have not heard back from counsel of record for Appellant the State of Iowa as of the time of this filing. Given the nature of the motion, it is reasonable to assume that the State of Iowa will file an opposition.

s/ Brian J. Dunne

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.2, this document contains 3793 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

s/ Brian J. Dunne

*Counsel for Plaintiffs-Appellees*

# EXHIBIT A

**[DISTRICT COURT ORDERS]**

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JONATHAN CORRENTE, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-470 |
| | § | Judge Mazzant |
| THE CHARLES SCHWAB | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #197). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This is a class action lawsuit arising from the merger between Charles Schwab ("Schwab" or "Defendant") and TD Ameritrade Holding Corporation ("TD Ameritrade") (the "Merger"). On June 2, 2022, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams (collectively, "Plaintiffs"), each individually and on behalf of approximately twenty-five million members (the "Settlement Class"), filed this action challenging the Merger under Section 7 of the Clayton Act, seeking monetary damages and injunctive relief (Dkt. #1). More specifically, Plaintiffs allege that the Merger substantially lessened competition in an asserted Retail Order Flow Market ("ROFM"), which has harmed Schwab brokerage customers in the form of reduced price improvement on trades (Dkt. #1 at ¶ 35).

Prior to reaching this class action settlement, the parties meaningfully participated in the relevant pretrial procedures to prepare for a trial on the merits. On August 29, 2022, Defendant

filed a 12(b)(6) motion to dismiss arguing that Plaintiffs failed to establish a prima facie Section 7 case (Dkt. #18).[1] On December 1, 2022, Plaintiffs served their First Set of Interrogatories and Request for Admissions on Defendants (Dkt. #197-2 at ¶ 9). On March 15, 2023, Plaintiffs deposed Defendant through its corporate representative (Dkt. #197-2 at ¶ 9). Plaintiffs also deposed four other Schwab and TD Ameritrade executives they believed had knowledge relevant to the anticompetitive conduct at issue (Dkt. #197-2 at ¶ 9). In addition, before reaching this settlement, the parties also engaged in extensive discovery; for example, Defendant produced 218,319 documents and 6.5 terabytes of financial data to Plaintiffs and Plaintiffs filed two motions to compel seeking the production of certain documents that Defendant initially withheld (Dkt. #197-2 at ¶¶ 9–11).

On July 9, 2024, the parties started the process of working towards settling this class action lawsuit (Dkt. #197-2 at ¶ 12). Specifically, on this date, the parties held a full-day, in-person mediation with the Honorable Nancy F. Atlas (Dkt. #197-2 at ¶ 12). During the mediation, the parties were able to devise an initial framework for the settlement of this action and agreed that they would continue to engage in further negotiations following the mediation (Dkt. #197-2 at ¶ 12). On July 24, 2024, the parties filed a Joint Motion to Appoint Mediator and Stay Deadlines (Dkt. #140). The parties' joint motion asked the Court to formally appoint Judge Atlas to serve as the mediator to continue to assist with the negotiations regarding a potential resolution and also requested that the Court stay certain upcoming case deadlines (Dkt. #140 at p. 2). On July 29, 2024, the Court granted the motion which continued the class certification and the initial associated expert reports for sixty days and stayed all other case deadlines (Dkt. #141 at p. 1).

---

[1] Defendant's Motion to Dismiss was denied by the Court on February 24, 2023.

25-40774.2442

Additionally, the Court requested that the parties provide a joint report on the status of the mediation by August 23, 2024 (Dkt. #141 at p. 1).

On August 23, 2024, pursuant to the Court's order, the parties filed a Joint Report on Status of Mediation (Dkt. #142). In the joint status report, the parties indicated that although they had not yet reached a settlement, they made significant progress and thus requested another opportunity to provide the Court with a second joint report on September 30, 2024 (Dkt. #142 at p. 2). On September 27, 2024, the parties filed their second Joint Report on Status of Mediation which informed the Court that they reached a settlement agreement in principle which had been reduced to a signed term sheet (Dkt. #145 at p. 2). On October 1, 2024, the Court stayed all deadlines in the case to allow the parties to continue their settlement negotiations (Dkt. #146). The parties continued to engage in negotiations for two more months, during which time the parties provided joint status reports to the Court on the progress of finalizing the class action settlement (*See* Dkt. #147; Dkt. #148). On December 12, 2024, the parties notified the Court that they had executed the Stipulation and Agreement of Settlement (the "Settlement") which they would soon submit to the Court for preliminary approval (Dkt. #149 at p. 2).

On February 4, 2025, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. #154).[2] On February 19, 2025, the Court granted Plaintiffs' motion and preliminarily approved the Settlement, certified the Settlement Class, appointed Yavar Bathaee and Christopher M. Burke as co-lead class counsel, and appointed Plaintiffs as the class

---

[2] The terms of the Settlement include, among other things, implementation of an antitrust compliance program, a release of non-monetary claims against Defendant, that Defendant shall pay the sum of $50 USD to each Plaintiff to settle and release Plaintiffs individual damages claims, that Co-Lead Counsel will submit an application to the Court for an award of attorney's fees and expenses, and that Co-Lead Counsel will submit an application to the Court for a service award of no more than $5,000 per Plaintiff for the service undertaken on behalf of the Settlement Class (Dkt. #197-1 at pp. 11, 14, 20–21).

25-40774.2443

representatives (Dkt. #157 at pp. 3–4). Additionally, the Court ordered that the Settlement Class be notified and scheduled a fairness hearing for August 28, 2025 (Dkt. #157 at pp. 4–5). After notice was sent to the members of the Settlement Class, the Court received approximately seventy objections from class members regarding the proposed class action settlement (the "Objectors"). Generally, the Objectors focused on four main issues: (1) Plaintiffs lacked Article III standing to seek the injunctive relief provided for in the Settlement; (2) the Settlement Class did not receive adequate notice of the Settlement; (3) the Settlement provided no monetary benefit to the class; and (4) the class counsel's attorney's fees are disproportionate to the class benefit. On August 28, 2025, the Court held the fairness hearing at which counsel for both parties appeared and argued in favor of the proposed Settlement. However, at the hearing, despite notice, no Objectors appeared. On July 7, 2025, Plaintiffs filed this Motion for Final Approval of Class Action Settlement arguing that the Settlement meets the Rule 23(e) requirements and thus should be approved and the case dismissed with prejudice (Dkt. #197).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Under Rule 23(e) the Court may grant final approval of the class action settlement "only after a hearing and only on a finding that [the settlement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2) (citation modified); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (stating that "[u]nder Rule 23, a court must hold a hearing to consider whether a proposed class action settlement is fair, reasonable, and adequate."). Additionally, before granting final approval of a class action settlement under Rule 23(e), the Court must also certify the class,

25-40774.2444

appoint class counsel, and conclude the notice requirements have been satisfied. *See Vaughn v. Am. Honda Motor. Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007).

## ANALYSIS

Plaintiffs argue that the proposed class action settlement meets the standard for final approval and thus request that the Court (1) certify the class for settlement purposes; (2) appoint Plaintiffs as class representatives; (3) appoint Yavar Bathaee of Bathaee Dunne LLP and Chrisopher M. Burke of Burks LLP as co-lead counsel; (4) approve the Settlement; and (5) dismiss this action on the merits and with prejudice (Dkt. #197 at p. 37).[3] The Court addresses each request in turn.

## I.    Article III Standing

Before proceeding to the class certification and settlement approval analysis, the Court begins, as it must, with standing. *See Caples v. U.S. Foodservice Inc.*, 444 F. App'x. 49, 52 (5th Cir. 2011) ("We have recognized that standing is essential to the exercise of jurisdiction and is a threshold questions that determines the power of the court to entertain the suit.") (citation omitted). For the Court to approve a proposed class action settlement it must determine whether Article III standing exists. *See Frank v. Gaos*, 586 U.S. 485, 492 (2019) (explaining that the court's obligation to assure itself of litigants' standing under Article III "extends to court approval of proposed class action settlements."). To determine if Article III standing exists in a class action suit, the Court must first decide which class members must have Article III standing. The Fifth Circuit "has not yet decided whether standing must be proven for unnamed class members, in

---

[3]    In addition to the abovementioned requests, Plaintiffs also request that the Court grant Plaintiffs' simultaneously filed Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). The Court has decided to address this request in a separate order which will be docketed subsequently to this Order.

25-40774.2445

addition to the class representative." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020) (citation omitted). However, in making this determination other circuits have followed two analytical approaches. *See In re Deepwater Horizon*, 739 F.3d 790, 800 (5th Cir. 2014) [hereinafter *Deepwater Horizon II*].

The first approach to evaluating standing for purposes of class certification and settlement approval under Rule 23 was initially endorsed by three Justices concurring in the Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343, 358 (1996) and later adopted by the Seventh Circuit in *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009) (the "*Kohen* test").[4] *See Deepwater Horizon II*, 739 F.3d at 800. Under the *Kohen* test, "courts look to whether the *named plaintiffs* or *class representatives* have standing, ignoring the absent class members entirely." *In re Deepwater Horizon*, 785 F.3d 1003, 1019 (5th Cir. 2015) (alteration in original) [hereinafter *Deepwater Horizon III*]. The second approach—which has been adopted by several circuits with the most common formulation of this approach found in the Second Circuit's decision in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006)—does not "necessarily ignore[] absent class members" (the "*Denney* test"). *Deepwater Horizon II*, 739 F.3d at 801.[5] Under the *Denney* test, "courts look at the *class definition* to ensure that absent class members possess Article III standing." *Deepwater Horizon III*, 785 F.3d at 1019 (alteration in original). Importantly, however, "this approach does not contemplate scrutinizing or weighing any evidence of absent class members'

---

[4] In addition to the Seventh Circuit, the *Kohen* test for determining standing during class certification has been also followed by the Ninth and Third Circuits. *See Deepwater Horizon II*, 739 F.3d at 800. Additionally, the "Tenth Circuit has adopted this test at least in class actions seeking prospective injunctive relief and arguably also in class actions for damages as well." *Id.*

[5] In addition to the Second Circuit, the "Eighth Circuit has also applied [the *Denney*] test, as have the Seventh, and Ninth Circuits, despite both these latter circuits' statements in other decisions that absent class members are irrelevant to the Article III inquiry." *Deepwater Horizon II*, 739 F.3d at 801 (citation modified).

25-40774.2446

standing or lack of standing during the Rule 23 stage." *Deepwater Horizon II*, 739 F.3d at 801. Instead, under the *Denney* test, to satisfy the standing requirement, "the class must . . . be defined in such a way that anyone within it would have standing." *Id.* (citation modified). After determining which class members must have standing, the Court must determine whether the elements of Article III standing are satisfied: "(1) an injury [that is] concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409 (2013).

Plaintiffs argue that the Court should approve the class action settlement because Article III standing exists (Dkt. #197 at p. 14). Plaintiffs contend that since the parties are settling at the class-certification stage the Court need only consider whether the named plaintiffs have alleged Article III standing to make this determination (Dkt. #197 at p. 15). Applying this approach, all three Plaintiffs argue that each of them have Article III standing to seek the injunctive relief provided for in the Settlement (Dkt. #197 at pp. 14–15). More specifically, Plaintiffs contend that as current Schwab brokerage customers they each have alleged an imminent in fact, ongoing injury—i.e., underpayment from order flow in the form of reduced payments (Dkt. #197 at p. 15). And Plaintiffs' threatened injury would be redressed by the injunctive relief in the Settlement— i.e., compliance program targets the areas of Schwab's business that have affected price improvements (Dkt. #197 at p. 15). The Court agrees with Plaintiffs that Article III standing exists in this action. However, Plaintiffs' analysis—which focuses only on the three named Plaintiffs when analyzing the standing requirement—does not fully reflect the law of this Circuit. Nevertheless, as discussed in more detail below, the Article III standing requirement is still satisfied.

25-40774.2447

Here, the Court finds that Article III standing exists in this action because both the three named Plaintiffs and the absent class members contemplated by the class definition include only persons who can allege causation and injury in accordance with Article III. In other words, the Settlement satisfies the standing requirement under both the *Kohen* and the *Denney* test. Applying the *Kohen* test, which focuses on the standing of the named plaintiffs or class representatives only, the Court finds class standing. More specifically, each of the three named Plaintiffs satisfy the elements of standing by identifying an injury in fact—i.e., underpayment of their order flow, in the form of reduced price improvement on their trades—which is traceable to the Merger and susceptible to redress by the injunctive relief provided by the Settlement. Under the *Kohen* test, this is the end of the inquiry. *See Cole v. General Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (holding that for purposes of Article III standing of named plaintiffs during class certification under Rule 23 it is "sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they *allege* they have suffered."); *see also Deepwater Horizon II*, 739 F.3d at 803 (explaining that "[a]t the Rule 23, *Cole* provides that a federal court must assume *arguendo* the merits of each named plaintiff's legal claims") (citation modified). Applying the *Denney* test to the definition of the class proposed for certification, the Court comes to the same conclusion. The Class Definition is set forth in section 1.31 of the Settlement with Schwab. Under the plain terms of the Class Definition, a "person, entity, or corporation" is included in the Settlement Class only if they are "current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at Ameritrade" (Dkt. #197-1 at p. 9). Thus, by limiting the Settlement Class to only "current U.S. brokerage customers of Schwab or any of its affiliates" the class includes only persons, entities, and corporations that have suffered the same injury in fact as the three named

25-40774.2448

Plaintiffs which is traceable to the Merger and susceptible to redress by the injunctive relief provided by the Settlement. Accordingly, the Settlement Class does not include any members who lack any causally related injury. This ends the Article III inquiry under the *Denney* test, which does "not require that each member of the class submit evidence of personal standing so long as ever class member contemplated by the class definition can *allege* standing." *Deepwater Horizon II*, 739 F.3d at 804 (citation modified).

## II. Class Certification

In deciding whether to certify a proposed class, a court must determine whether the party seeking class certification has met "the requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 394 (2011)). Additionally, a plaintiff must show that their proposed class "satisfy[ies] at least one of the three requirements listed in Rule 23(b)." *Id.* (citation modified). However, where, as here, a court is confronted with a request for settlement-only class certification, it "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) (citing FED. R. CIV. P. 23(b)(3)(D)). In addition to the class certification requirements above, "the Fifth Circuit, has also articulated an ascertainability requirement for Rule 23 actions." *Braidwood Mgmt., Inc.*, 70 F.4th at 933; *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.").

Plaintiffs contend that the proposed Settlement Class satisfies the ascertainability requirement, the four threshold requirements of Rule 23(a), and the requirements of Rule 23(b)(2)

25-40774.2449

(Dkt. #197 at pp. 16–19). The Court addresses each argument in turn and, as explained in more detail below, the Court agrees with Plaintiffs.

### A.    Ascertainability Requirement

For a proposed class to satisfy the Fifth Circuit's ascertainability requirement, the class must be "adequately defined and clearly ascertainable." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015). To be ascertainable, the class "must be susceptible to a precise definition to properly identify those entitled to relief, those bound by the judgment, and those entitled to notice." *A.A. ex rel. P.A. v. Phillips*, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023) (citation modified). However, "the district court need not know the identity of each class member before certification, but it needs to be able to identify class members at some stage of the proceeding." *Frey*, 602 F. App'x at 168. Ultimately, "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Earl v. Boeing Co.*, 339 F.R.D. 391, 422 (E.D. Tex. 2021), *rev'd on other grounds*, 53 F.4th 897 (5th Cir. 2022) (citing *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015)).

Plaintiffs argue that the proposed Settlement Class satisfies the Fifth Circuit's ascertainability requirement (Dkt. #197 at p. 16). Specifically, Plaintiffs argue that the class is ascertainable because it is clearly defined so that it would not be difficult to identify whether someone is in the class (Dkt. #197 at p. 16). Indeed, Plaintiffs contend that the members of the Settlement Class can be identified by using objective criteria—i.e., status as a current U.S. brokerage customer of Schwab or its affiliated entities (Dkt. #197 at p. 16). And, as current customer, the members of the Settlement Class are also readily identifiable through Schwab's customer records and reachable through whatever means Schwab uses to contact customers

10

25-40774.2450

(Dkt. #197 at p. 16). Thus, according to Plaintiffs, this is not the sort of "amorphous" or "imprecise" class definition that might defeat ascertainability (Dkt. #197 at p. 16). The Court agrees with Plaintiffs.

Here, the Court finds that the Settlement Class satisfies the ascertainability requirement. The class in this case is defined as "persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade" (Dkt. #197-1 at p. 7). The class definition here is clear and definite. More specifically, the class includes an estimated twenty-five million identifiable persons, entities, or corporations who are "current U.S. brokerage customers of Schwab or any of its affiliates" as of a specified date set forth in the Settlement (Dkt. #197-1 at pp. 24–26 (defining the "Effective Date" of the Settlement)). Further, as current customers, the class members may be identified from Schwab's customer record database. *See Frey*, 602 F. App'x at 168 (finding that the class is sufficiently ascertainable where the class members "may be identified from account numbers and bank identification numbers associated with the ATM transaction" at issue). Thus, this is not the type of "amorphous" or "imprecise" class definition that Fifth Circuit has found to defeat ascertainability. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (finding that a class made up of "residents of this State active in a peace movement does not constitute an adequately defined or clearly ascertainable class contemplated by Rule 23."); *see also Braidwood Mgmt., Inc.*, 70 4th at 935 (explaining that class definitions which depend on class members' state of mind or are impermissibly vague in practice are the types of classes courts find fail the ascertainability requirement). Indeed, the Settlement Class is sufficiently definite so that it is administratively

11

feasible for the Court to identify whether a particular individual is a member of the Settlement Class. Accordingly, the Court finds that the ascertainability requirement is satisfied.

## B.  Rule 23(a) Requirements

Federal Rule of Civil Procedure 23(a) provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all parties is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claim and defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(1)–(4). Put simply, "the requirements of Rule 23(a) are: numerosity, commonality, typicality, and adequacy of representation." *Braidwood Mgmt., Inc.*, 70 F.4th at 933. The Court addresses each Rule 23(a) requirement in turn.

### 1.  Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure provides that certification is only appropriate where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citation modified). The Fifth Circuit, however, has repeatedly recognized that "the number of members in a proposed class is not determinative of whether joinder is impracticable." *Id.*; *see also In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (explaining that when analyzing the numerosity requirement, the Fifth Circuit has counseled that "courts must not focus on sheer numbers alone."). Rather, assessing numerosity also entails a consideration of "the geographical dispersion of the class, the ease with which class members may be identified, the

25-40774.2452

nature of the action, and the size of each plaintiff's claim." *In re TWL Corp.*, 712 F.3d at 894 (citation omitted).

Plaintiffs argue that the proposed Settlement Class satisfies the numerosity requirement (Dkt. #197 at p. 16). In support, Plaintiffs emphasize that the proposed Settlement Class consists of approximately twenty-five million members, which they claim, under Fifth Circuit law, is more than sufficient to satisfy the numerosity requirement (Dkt. #197 at p. 16–17). The Court agrees with Plaintiffs. However, as discussed below, Plaintiffs' basis—which relies exclusively on the sheer number of class members to establish that "the class is so numerous that joinder of all members is impracticable—conflicts with well-established Fifth Circuit precedent. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (stating that "the number of members in a proposed class is *not determinative* of whether joinder is impracticable") (emphasis added). Nevertheless, the numerosity requirement is still satisfied in this case.

Here, the Court finds that the proposed Settlement Class satisfies the numerosity requirement for three reasons. First, the sheer size of the class, which consists of approximately twenty-five million members, will make joinder of all members impracticable. *See Mullen*, 186 F.3d at 624 ("the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."); *see also Martinez v. Anderson Cnty.*, 2023 WL 2672837, at *3 (E.D. Tex. Mar. 1, 2023) (holding that a class of 300 members satisfies the numerosity requirement because "[t]he Fifth Circuit has typically found the numerosity prerequisite is met when the class has 100–150 members.") (citation modified). Second, given that this class action is against one of the largest brokerage firms in the United States, Charles Schwab, the proposed Settlement Class will consist of members spread all throughout the nation, making joinder of all

25-40774.2453

members impracticable. *See Miller v. Grand Canyon Univ., Inc.*, 540 F. Supp. 625, 633 (N.D. Tex. 2021) (finding that a proposed class of tens of thousands of members spread throughout the nation makes joinder impracticable, thus satisfying the numerosity requirement). Third, the nature of this case—which involves complicated antitrust claims that are likely to continue for years, at significant costs to the parties—will likely render most of the class members individual claims unprofitable, thus making joinder impracticable.[6] *See Bywaters v. United States*, 196 F.R.D. 458, 466 (E.D. Tex. 2000) (finding that the numerosity requirement was satisfied where "the proposed class members would probably not pursue their claims individually due to disproportionate litigation expense in relation to the actual size of their takings claims."). Accordingly, the Court finds that the proposed class satisfies the requirements of numerosity under Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Supreme Court has explained that "commonality requires more than a shared cause of action or common allegations of fact—it requires a common legal contention capable of class-wide resolution." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (2011)). "Dissimilarities among class members should be considered to determine whether a common question is truly presented." *Ibe*, 836 F.3d at 528 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 359).

---

[6] In addition, at the fairness hearing, counsel for both parties explained that there are a large number of members within the class that have very small damages claims—i.e., fraction of a penny, third of a cent, or fifth of a cent—making many of their individual claims unprofitable. On the other hand, the prospective relief offered to the class will automatically increase the amount of money in the pocket of the class members (*See* Dkt. #197 at p. 27 (explaining that the "compliance program could yield price improvement gains of approximately 1.8% to 2.4% translating to $10.7 million to $14.5 million in monthly savings—or roughly $128.4 million to $174 million annually—for Schwab's retail customers.")). The Court agrees. Here, the Court finds that it is not feasible for most of the proposed class members to bring individual actions since the significant cost of the litigation would outweigh any recovery they could receive.

25-40774.2454

However, "even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Id.* at 528 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350, 359) (citation modified).

Plaintiffs argue that the commonality requirement is satisfied since there are several questions of law and fact that are capable of class wide resolution, including: (1) whether the U.S. ROFM is a relevant antitrust market; (2) whether the effect of the Merger "may be to substantially lessen competition" in the ROFM under Section 7 of the Clayton Act; and (3) whether there is a "threatened" loss or damage from the Merger entitling Plaintiffs and the class members to injunctive relief under Section 16 of the Clayton Act (Dkt. #197 at p. 17). The Court agrees with Plaintiffs.

Here, the Court finds that the commonality requirement is satisfied because each of the three abovementioned common questions of law and fact, taken together or standing alone, satisfy the commonality requirement. *See Deepwater Horizon II*, 739 F.3d at 811–12 (finding that the commonality requirement is satisfied where there are numerous factual and legal issues central to the validity of all class members' claims because "even a single common question will do under *Wal-Mart*."). More specifically, the Settlement Class members claims all depend on the single common question of whether the Merger, which harmed all the class members in the form of reduced price improvement on trades, violated Section 7 of the Clayton Act. As a result, if any one of these three common questions of law and fact are answered in the affirmative, they would establish Defendant's liability. *See Illumina, Inc. v. FTC*, 88 F.4th 1016, 1047–48 (5th Cir. 2023) (explaining that to prove liability under Section 7 of the Clayton Act the plaintiff must "establish a

15

prima facie case that the merger is likely to substantially lessen competition in the relevant market.") (citing 15 U.S.C. § 18); *see also* 15 U.S.C. § 16 (providing that "any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against *threatened loss or damage* by a violation of the antitrust laws, including sections 13, 14, 18, and 19.") (emphasis added).  Because liability would be established, these common questions are apt to drive the litigation's resolution. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 (explaining that what matters for commonality is that common questions "generate common answers apt to drive the resolution of the litigation."); *see also Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 129 (N.D. Tex. 2020) (finding that plaintiff's three common questions of law and fact failed the commonality requirement because "[e]ven if the questions are answered in the affirmative, they do not establish Defendants' liability."). Accordingly, the Court finds that the proposed class satisfies the requirements of commonality under Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). To demonstrate typicality, "the parties seeking certification need not show a complete identity of claims." *Ward v. Hellerstedt*, 753 F. App'x 236, 246–47 (5th Cir. 2018). Rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* at 247. The typicality inquiry, however, "is not concerned so much with the strengths of the named and unnamed plaintiff's cases as with the similarity of legal and remedial theories behind their claims." *Id.* (citation omitted). Thus, "if the claims of the named plaintiffs and putative class members arise from a similar course of conduct and share the same legal theory, typicality will not be defeated by factual differences." *Id.*

16

Plaintiffs argue that the typicality requirement is satisfied because the claims of Plaintiffs and the members of the proposed Settlement Class arise from the same course of conduct and are based on the same legal theory (Dkt. #197 at p. 18). Specifically, Plaintiffs contend that the Merger will substantially lessen competition in the ROFM, resulting in reduced price improvement on future trades for all or most Schwab brokerage customers (Dkt. #197 at p. 18). The Court agrees with Plaintiffs.

Here, the Court finds that Plaintiffs have satisfied the typicality requirement. Indeed, both Plaintiffs and the members of the proposed Settlement Class's claims arise from the same events and are based on the same legal theories. First, Plaintiffs and the members of the proposed Settlement Class complain of the exact same anticompetitive conduct by Defendant. That is, the Merger substantially lessened competition in an asserted ROFM (Dkt. #1 at ¶¶ 2, 35). Additionally, Plaintiffs and the proposed Settlement Class members also allege that Defendant's anticompetitive conduct caused each of them to suffer harm in the form of reduced price improvement on trades through their brokerage accounts (Dkt. #1 at ¶ 3). Second, the claims alleged by Plaintiffs, which would include the proposed Settlement Class, are based on the same legal theory—violation of Section 7 of the Clayton Act (Dkt. #1 at ¶¶ 482–88). Thus, there is no question that Plaintiffs and the Settlement Class members' claims "arise from a similar course of conduct and share the same legal theory." *See Ward*, 753 F. App'x at 247; *see also Corley v. Entergy Corp.*, 220 F.R.D. 478, 482 (E.D. Tex. Apr. 14, 2004) (finding typicality where "[p]laintiffs bring the same claims that absent class members would bring."). Accordingly, the Court finds that  the requirements of typicality under Rule 23(a)(3) are satisfied.

25-40774.2457

####        4.        Adequacy of Representation

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that "the representatives parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). The Fifth Circuit has created three factors for a court to consider when adjudging the adequacy of class representatives: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risks of conflicts of interests between the named plaintiffs and the class they seek to represent." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 737 (5th Cir. 2023) (citation modified); *see also Jones*, 865 F.3d at 294 (explaining that Rule 23(a)(4) involves an examination of both the representatives' counsel and the representatives themselves). In other words, adequacy "requires the class representative to possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation." *Ibe*, 836 F.3d at 529 (citation modified).

Plaintiffs argue that the three factors weigh in favor of finding that the adequacy requirement is satisfied. First, Plaintiffs contend that their proposed counsel is competent and well qualified to represent the Settlement Class (Dkt. #197 at p. 18). In support, Plaintiffs emphasize that their counsel each possesses significant experience prosecuting complex class actions, including antitrust class actions (Dkt. #197 at p. 18). Second, Plaintiffs contend that they are adequate class representatives for the Settlement Class (Dkt. #197 at p. 18). Plaintiffs argue that they have taken an active role in the litigation since the inception of this lawsuit including, among other things, cooperating in discovery and approving the terms of the Settlement (Dkt. #197 at p. 18). Additionally, Plaintiffs argue that no conflicts of interest exist between Plaintiffs and the Settlement Class because their interests are identical to those of the proposed class (Dkt. #197 at

18

p. 18). More specifically, as current Schwab customers, Plaintiffs have the same interest as the rest of the class in establishing Defendant's liability and will benefit from the proposed injunctive relief in the same way as the other class members (Dkt. #197 at p. 18).[7] The Court agrees with Plaintiffs.

Here, the Court finds that Plaintiffs have satisfied the adequacy requirement. The Court will start with the first consideration regarding adequacy: the zeal and competence of the proposed class counsel. Plaintiffs have put forth sufficient evidence that demonstrates that Plaintiffs' Counsel have extensive experience litigating complex class actions, including antitrust class actions (*See* Dkt. #197-3 at ¶¶ 24–34 (detailing the qualifications of Plaintiffs' Counsel—Yavar Bathaee and Christopher Burke—relating to their experience as lead or co-lead counsel in complex class action cases)). Thus, Plaintiffs' Counsel will fairly and adequately protect the interests of the Settlement Class. *See Mullen*, 186 F.3d at p. 625–26 (affirming the district court's finding that the representatives counsel is adequate under Rule 23(a)(4) where their attorneys "have extensive experience litigating class action and Jones Act cases."); *see also Bywaters v. United States*, 196 F.R.D. 458, 468 (E.D. Tex. 2000) (finding plaintiffs proposed counsel adequate where they "have years of experience litigating class actions in general, and class actions specifically concerning railroad right-of-way ownership issues."). The Court next turns to the second consideration regarding adequacy: the willingness and ability of the representatives to take an active role in and control the litigation and the risk of conflicts of interest between Plaintiffs and the Settlement Class. Based on the evidence presented, there is nothing that indicates that the Settlement Class members will be inadequately represented by Plaintiffs. Indeed, there is no possibility of any conflicts of

---

[7]  Plaintiffs also assert that no conflict of interest is created by the fact that they will each receive $50 from Defendant in return for releasing their individual damages claims since any damages claims of the absent class members are not being released under the Settlement (Dkt. #197 at p. 18). Thus, there is no concern that Plaintiffs have sacrificed the right of the absent class members for their own benefit (Dkt. #197 at p. 18).

25-40774.2459

interest arising because, as current Schwab brokerage customers, Plaintiffs interests are identical to the members of the Settlement Class. *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 2023 WL 12334835, at *3 (E.D. Tex. June 14, 2013) (finding the class representatives adequate where their interests are aligned with the class because they have allegedly suffered from the same harm caused by the defendant); *see also Whittington v. United States*, 240 F.R.D. 344, 351 (S.D. Tex. 2006) (finding the class representative adequate where the court anticipates "no antagonism within the proposed class" since the class representatives' claims are typical of those belonging to the unnamed class). Thus, Plaintiffs will fairly and adequately protect the interest of the Settlement Class. Accordingly, the Court finds that the adequacy requirement under Rule 23(a)(4) is satisfied.

### C. Rule 23(b)(2) Requirements

Having found that Plaintiffs satisfied the requirements of Rule 23(a), the Court must now determine whether the proposed Settlement Class satisfies at least one of the requirements listed in Rule 23(b). Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2) of the Federal Rules of Civil Procedure (Dkt. #197 at p. 19). Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). In contrast to the commonality requirement, which looks for common issues, "the Rule 23(b)(2) analysis requires common behavior by the defendant towards the class." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012) (citation omitted). The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*,

25-40774.2460

564 U.S. at 360. In other words, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. However, "it does not authorize class certification when each individual class member would be entitled to *different* injunction or declaratory judgement against the defendant." *Id*. Similarly, "it does not authorize class certification when each class member would be entitled to an individualized award of money damages." *Id*. at 360–61. Thus, Rule 23(b) certification is available if three requirements are satisfied: "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (citation omitted). The specificity element "requires plaintiffs to give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in reasonable detail the acts required." *Id*. at 367.

Plaintiffs argue that certification under Rule 23(b)(2) is warranted because each of the Rule 23(b)(2) requirements is met (*See* Dkt. #197 at p. 19). The Court agrees with Plaintiffs. Here, the Court finds that the proposed Settlement Class easily meets the requirements for Rule 23(b)(2) certification. First, all members of the Settlement Class have been harmed in the exact same way. There is no question that Defendant has engaged in common behavior that "appl[ies] generally to the class." FED. R. CIV. P. 23(b)(2). More specifically, Plaintiffs allege that the Merger substantially lessened competition in an asserted ROFM, which harmed each class member (current Schwab brokerage customers) in the form of reduced price improvements on trades (Dkt. #1 at ¶ 35). Thus, the same action by Defendant is the source of any injury for the entire Settlement Class. *See Yates*, 868 F.3d at 368 (affirming the district courts class certification under 23(b)(2) where "the same action/inaction by Defendants is the source of any injury for the entire General Class and the

25-40774.2461

subclasses."); *see also Cone v. Vortens, Inc.*, 2019 WL 5390128, at *6 (E.D. Tex. Sept. 4, 2019) (finding that the class members have been harmed in "essentially the same way" where defendant's conduct that caused the injury to the proposed class was practically uniform). Second, the injunctive relief requested predominates over any monetary damage claim in this case. Indeed, the Court need not delve into whether the injunctive relief "predominates" over monetary damages claims where, as here, injunctive relief is the only relief sought. *See Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (analyzing whether injunctive relief predominates over monetary damages only where plaintiffs seek an injunction in addition to monetary damages). Third, the injunctive relief sought is specific. The Settlement not only requests that the Court order the implementation of the antitrust compliance program—which in practice will enjoin Defendant from engaging in the anticompetitive behavior alleged herein—but also identifies specific relief in "reasonable detail" that meets the Rule 23(b)(2) specificity element. For example, the Settlement requires that the parties engage a specific consultant to design the antitrust compliance program (Dkt. #197-1 at ¶ 2.2(b)). Additionally, the Settlement also provides that the same consultant will examine specific policies of Defendant (and provide reports if necessary) to ensure that any anticompetitive conduct is remediated (*See* Dkt. #197-1 at ¶ 2.2(c)(i)–(iv)). Thus, this case is unlike *Maldonado*, where the requested injunctive relief—the provision that Defendants provide "mutually affordable health care"—lacked any meaningful content and provided no guidance. 493 F.3d at 524. Accordingly, the Court finds that certification of the Settlement Class under Rule 23(b)(2) is proper.

## III.    Appointing Class Counsel

The Court now turns to whether it should  appoint  Yavar Bathaee of Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel. Rule 23(g) of the Federal Rules of

25-40774.2462

Civil Procedure requires that a court certifying a class appoint class counsel. *See* FED. R. CIV. P. 23(g)(1) ("Unless a statute provides otherwise, a court that certifies a class *must* appoint class counsel.") (emphasis added); *see also Martinez*, 2023 WL 2672837 at \*2 (providing that "[a] court that certifies a class must . . . appoint class counsel under Rule 23(g).") (citation modified). In appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)–(iv). In addition, the Court, in deciding whether to appoint the proposed class counsel, "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*. at 23(g)(1)(B).

Plaintiffs argue that the appointment of their proposed co-lead class counsel is proper under Rule 23(g)(1) (Dkt. #197 at p. 20). The Court agrees with Plaintiffs. Here, after weighing the relevant factors, the Court finds that the appointment of Yavar Bathaee and Christopher M. Burke as co-lead class counsel is proper under Rule 23(g)(1) for several reasons. First, Plaintiffs have submitted evidence detailing that both Yavar Bathaee and Christopher M. Burke have served as either lead counsel or co-lead counsel in many class action cases and, specifically, complex antitrust class actions (*See* Dkt. #197-2 at ¶¶ 26, 30 (listing 4 notable complex class action cases tried by Yavar Bathaee and 15 notable complex class action cases tried by Christopher M. Burke respectively)). Thus, their extensive experience in handling these types of cases weighs in favor of appointment. *See Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at \*11 (E.D. Tex. Aug. 29, 2016) (finding that the proposed class counsel should be appointed where he has "served as class

counsel in many securities class action cases."). Second, based on their substantial experience litigating and settling complex antitrust class actions, it is clear that they are well-versed in class action and antitrust law. *See e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 1:14-cv-07126 (S.D.N.Y. 2020) (obtaining a $504.5 million settlement in a complex class action lawsuit); *Dahl v. Bain Cap. Partners, LLC*, No. 1:07-cv-12388 (D. Mass. 2015) (obtaining a $590.5 million settlement in a complex antitrust class action lawsuit); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1:05-md-01720 (E.D.N.Y. 2019) (obtaining $5.6 billion settlement in a complex antitrust class action lawsuit). Third, the work that the proposed co-lead class counsels have performed to date in litigating and settling this case demonstrates their commitment to the Settlement Class's interests. More specifically, over the course of the last three years counsel has prepared a 103-page class action complaint (*See* Dkt. #1), successfully defeated Defendant's Motion to Dismiss (*See* Dkt. #40), meaningfully engaged in discovery, and worked to reach a favorable settlement on behalf of the Settlement Class (*See* Dkt. #154-1; Dkt. #197-1). *See Marcus*, 2016 WL 8604331 at *11 (finding that the proposed class counsel should be appointed where he, among other things, has "successfully opposed a motion to dismiss in this case . . . and filed this Motion for Class Certification."). Thus, there is no evidence that Yavar Bathaee and Christopher M. Burke would be inadequate counsel in this case. Accordingly, the Court finds that Yavar Bathaee of Bathaee Dunne LLP and Chrisopher M. Burke of Burke LLP should be appointed as co-lead class counsel pursuant to Rule 23(g)(1).

## IV.    Notice

Rule 23(e) of the Federal Rules of Civil Procedure provides that a court must "direct notice in a reasonable manner to all class member who would be bound by the proposal" before approving a class action settlement. FED. R. CIV. P. 23(e)(1)(B). Rule 23 requires that class members receive

25-40774.2464

"the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e) provides "no standard by which a court is to consider the settlement of a class action." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). However, the Fifth Circuit has repeatedly recognized that "a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (citation omitted). The minimum of due process, as interpreted by the Supreme Court, is that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Thus, in a mandatory class action settlement,[8] which will deprive class members of their claims, due process "requires that class members be given information *reasonably necessary* for them to make a decision whether to object to the settlement." *Id.* (emphasis added).

In evaluating the reasonableness of the notice, "courts look at the type of notice provided to the class and its content." *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *8 (W.D. Tex. Aug. 20, 2018). The type of notice to which a member of a class is entitled "depends upon the information available to the parties about that person and the possible methods of identification."

---

[8] Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2) which is known as a "mandatory class action" under well-established Fifth Circuit law. *See Johnson v. Kan. City S. Ry. Co.*, 208 F. App'x 292, 296 (5th Cir. 2006) (explaining that "[t]here are essentially two separate types of class action suits, mandatory non-opt-out classes under 23(b)(1) or 23(b)(2) and discretionary opt-out classes under 23(b)(3)."). Rule 23(b)(2) certification is considered a "mandatory class action" because notice of an opt out right for members of the class is not required. *See Ayers v. Thompson*, 358 F.3d 356, 375 (5th Cir. 2004) (explaining that the Fifth Circuit has held that "a member of a class certified under rule 23(b)(2) has no absolute right to opt out of the class."); *see also Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) ("Rule 23(d)(2), which applies to all Rule 23 class actions, is the only notice provision applicable to 23(b)(2) action. It provides only for discretionary notice, the content of which is to be determined by the district court.").

25-40774.2465

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1997). The general rule is that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interest are directly affected by the proceeding in question." *Id.* at 1097 (citation omitted). In determining the reasonableness of the effort required, courts must look to the "anticipated results, costs, and amount involved." *Id.* at 1099.

Plaintiffs argue that the notice plan provided the "reasonable" notice required by Rule 23(e)(1)(B) (Dkt. #197 at pp. 21–23). Specifically, Plaintiffs contend the notice plan implemented satisfies Rule 23(e)(1)(B) for several reasons: (1) Ankura Consulting Group LLL ("Ankura") developed a plan that provided individual direct notice to all reasonably identifiable members of the Settlement Class via email or post card, along with a dedicated website, class helpline, and helpdesk support where the Settlement Class could learn more about their legal rights, the notices, and implications of the litigation; (2) Ankura obtained basic contact information from Defendant for class members and has been able to reach a total of 24,165,364 class members (97.0% of the class) via mail or email; (3) Ankura employed methods to maximize the number of Settlement Class members who received the notice including (but not limited to) an email cleansing and validation process, address verification process using a U.S. Postal Service program, and maintained a settlement website that provided an overview of the litigation, issued notices, and FAQs; and (4) the notices provided to the Settlement Class members were in plain terms and easy to understand language and included information about the nature of the action, definition of the Settlement Class, the settlement itself, the right of the Settlement Class members, and the date and location of the fairness hearing (Dkt. #197 at pp. 22–23). In sum, according to Plaintiffs, the notice plan

25-40774.2466

provided the "reasonable" notice to the Settlement class required under Rule 23(e)(1)(B) (Dkt. #197 at p. 23). The Court agrees with Plaintiffs.

Here, the Court finds that the notice given to the Settlement Class clearly satisfies the broad reasonableness standards imposed by due process and with the Rule 23 requirements. The notice was sent (and successfully delivered) to either the last known mailing address or email address of 24,165,364 class members in this case (Dkt. #197-7 at ¶ 36). The notice provides, among other things, that "this Notice is to inform you of the Settlement with Schwab in the above-captioned case" in which "Plaintiffs allege that the combination of Schwab and TD Ameritrade Holding Corporation, in October 2020, violated Section 7 of the Clayton Act" (Dkt. #197-1 at pp. 52–53). It further provides that the Settlement allows "both sides to avoid the risks and costs of lengthy litigation and the uncertainty of pre-trial proceedings, a trial, and appeals." (Dkt. #197-1 at p. 56). The notice explained that, "as part of the Settlement, Schwab has agreed to implement a comprehensive antitrust compliance program to prevent antitrust violations" (Dkt. #197-1 at p. 56). In defining the class, the notice states that, you are a Settlement Class member if you fit within the following definition: "All persons, entities, and corporations who are current U.S. brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at Ameritrade" (Dkt. #197-1 at p. 56). The notice also notified each member of the class that he or she had one of four options: (1) Do Nothing. You are automatically apart of the Settlement Class if you fit the Settlement Class description. You will be bound by past and any future Court rulings, including rulings on the Settlement, if approved, and releases; (2) Object to the Settlement. If you wish to object to the Settlement, Attorney's Fees and Expenses, or Services Awards, you must file a written objection with the Court by July 29, 2025; (3) Go to Settlement Hearing. You may ask the

25-40774.2467

Court for permission to speak at the Fairness Hearing (scheduled for August 28, 2025 at 9:00 a.m.) by including such a request in your written objections; and (4) Appear Through an Attorney. You may enter an appearance through your own counsel at your own expense (*See* Dkt. #197-1 at p. 53). Finally, the notice provided that "[i]f you are a Settlement Class Member, you may not exclude yourself from the Settlement Class. However, you may object to the Settlement by following the procedures in this Notice" (Dkt. #197-1 at p. 59). Thus, the Court finds that the notice complies with the notice requirements set forth in Rule 23(c)(2)(B).[9]

Having found that the notice complied with the Rule 23(c)(2)(B) requirements, the Court must now determine whether the notice satisfies the broad reasonableness standards imposed by due process as required by Rule 23(e). Here, the Court finds that it does. As to timing, the notice gave class members 136 days between the initial mailing of the notice on April 14, 2025, and the Fairness Hearing to submit objections to the Settlement, which was on August 28, 2025. Indeed, this amount of time has been found to be more than sufficient by other courts in this Circuit. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *3 (N.D. Tex. Apr. 25, 2018) (finding gap of more than 75 days between when notice was first sent out and the fairness hearing was adequate); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8, 2005) (finding that a gap of 62 days between the date of notice and the date of the fairness hearing was adequate); *Welsh*, 2018 WL 7283639 at *10 (finding that a gap of 115 days between the date of notice and the date of the fairness hearing supports a finding of reasonableness). Furthermore, out of the

---

[9]   Rule 23(c)(2)(B) requires that "[t]he notice must clearly and consciously state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B)(i)–(vii).

25-40774.2468

25,539,532 members who were sent notice, a total of 24,165,364 (or 97% of the Settlement Class) received direct notice of the Settlement (Dkt. #197-1 at ¶ 36). Of those 24,165,364 class members, only approximately seventy (or 0.00028% of the Settlement Class) submitted objections to the Settlement. Thus, based on the number of class members who received direct notice of the Settlement and the small number of class members who submitted objections, the Court finds that the Settlement Class received "reasonable" notice of the Settlement. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1041, 1061 (S.D. Tex. 2012) (finding Rule 23(e)(1)'s reasonableness requirement was satisfied where the notice reached 81.4 percent of the class members); *see also Welsh*, 2018 WL 7283639 at *11 (finding Rule 23(e)(1)'s reasonableness requirement satisfied where the notice reached 90 percent of the class members).

In short, the members of the Settlement Class received the best practicable notice, which was reasonably calculated to ensure that the "class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d at 197. Accordingly, the Court finds that the notice requirement under Rule 23 is therefore satisfied in this case.

## V.     Final Approval of Settlement

Lastly, the Court must determine whether the proposed settlement in this case warrants final approval. To be approved, a proposed class action settlement must be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate at the final approval stage, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

25-40774.2469

class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (D) the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(A)–(D).

Prior to the 2018 amendment of Rule 23(e)(2), the Fifth Circuit used a six-factor test (the "*Reed* Test"), to determine the appropriateness of a proposed settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery contemplated; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *See C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). However, the new Rule 23(e)(2) factors added by the 2018 amendment do not displace the *Reed* factors. *See Celeste Neely*, 2022 WL 17736350 at *3 n. 3 (explaining that the advisory committee has made clear that the Rule 23(e)(2) factors added by the 2018 amendment "do *not* displace any factor" sanctioned by the circuit courts) (emphasis added). Indeed, "the Rule 23(e)(2) requirements overlap significantly with the *Reed* factors." *Wilson v. Frontier Commc'n. Parent, Inc.*, 2025 WL 2421373, at *6 (N.D. Tex. June 20, 2025). Thus, the Court will consider the Rule 23(e)(2) requirements as informed by the *Reed* factors. *Id.*; *see also ODonnell v. Harris Cnty.*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (noting that because the Rule 23(e)(2) and *Reed* factors overlap significantly "courts in [the Fifth Circuit] often combine them in analyzing class settlements.") (citation modified).

30

Plaintiffs argue that the proposed class action Settlement meets each of the Rule 23(e)(2) requirements and thus should be approved by the Court (*See* Dkt. #197 at pp. 25–37). The Court addresses each of Plaintiffs' arguments relating to the Rule 23(e) requirements in turn.

## A. Plaintiff and Counsel Have Adequately Represented the Settlement Class

The Court must first determine whether the class representatives (Plaintiffs) and class counsel (Yavar Bathaee and Christopher M. Burke) have adequately represented the Settlement Class. As already discussed ad nauseam by this Court above, both Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class in this case. *See supra* Section II.B.4 and Section III. Since the inception of this case Plaintiffs have taken an active role in both the litigation and in reaching the Settlement (*See* Dkt. #197-3 ¶ 10; Dkt. #197-4 ¶ 10; Dkt. #197-5 ¶ 10 (stating that each Plaintiff has "actively participated in this suit by reviewing and authorizing the Complaint, keeping abreast of case and settlement developments, reviewing and collecting [their] own documents for production to Schwab, and periodically discussing case-related matters with counsel.")). More importantly, Plaintiffs do not have any conflicts of interest with the Settlement Class. Indeed, as current Schwab brokerage customers themselves, Plaintiffs' interests are identical to the members of the Settlement Class. Similarly, Plaintiffs' Counsel has adequately represented the Settlement Class. Both Yavar Bathaee and Christopher M. Burke have extensive experience in serving as lead counsel or co-lead counsel in complex class actions and, more specifically, antitrust class actions. Additionally, over the last three years, they have shown their commitment to the Settlement Class by actively pursuing the class's claims and also working to reach a settlement that will meaningfully benefit the members of the Settlement Class for years to come. Accordingly, the Court finds that this factor weighs in favor of final approval of the Settlement.

31

### B.    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) asks the Court to determine "whether the proposed settlement was negotiated at arm's length, thereby implicating the first *Reed* factor—the existence of fraud or collusion in the negotiation." *Kostka v. Dickey's Barbecue Rests., Inc.*, 2022 WL 16821685, at *10 (N.D. Tex. Oct. 14, 2022). Here, the Court finds that the Settlement was negotiated at arm's length and was not the product of any fraud or collusion between opposing counsel. In making this determination, the Court "may presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *C.C. & L.C.*, 2022 WL 4477316 at *3 (E.D. Tex. Sept. 26, 2022) (citation omitted). Such a presumption is warranted in this case. To date, no evidence has been submitted that would indicate that the Settlement was the product of fraud or collusion. Rather, the evidence makes clear that the Settlement was the product of hard-fought negotiations between the parties. In addition, the Settlement is the product of a mediation conducted before an experienced mediator and former United States District Court Judge Nancy F. Atlas (Dkt. #197-6). Indeed, Judge Nancy F. Atlas submitted a sworn affidavit to this Court stating that "[t]he negotiations were hard-fought but were conducted by both sides with civility and professionalism. There was no apparent collusion between the parties, and in my view the negotiations were conducted at arm's length" (Dkt. #197-6 at ¶ 7). Thus, the mediator's involvement makes it highly unlikely that the Settlement is the product of any fraud or collusion. *See Jones*, 865 F.3d at 295 (explaining that "[t]he involvement of an experienced well-known mediator is also a strong indicator of procedural fairness."). Accordingly, the Court finds that this factor weighs in favor of final approval of the Settlement.

### C.    The Relief Provided for the Settlement Class is Adequate

Rule 23(e)(2)(C) requires the relief granted by the Settlement to be adequate, taking into account four considerations: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims; (iii) the terms of any proposed awards of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court addresses each consideration in turn and, as discussed in more detail below, the Court finds that these considerations weigh in favor of finding that the Settlement is adequate.

### 1.    The costs, risks, and delay of trial and appeal

The first consideration—the costs, risks, and delay or trial and appeal—also "implicates four of the *Reed* factors: (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and amount of discovery completed; (4) plaintiffs' probability of success; and (5) the range of possible recovery." *Kostka*, 2022 WL 16821685 at *11 (citing *Reed*, 703 F.2d at 172). After considering the relevant *Reed* factors, the Court finds that the injunctive relief provided for in the Settlement is adequate.

First, the complexity, expense, and likely duration of the litigation support a finding that the Settlement is adequate. The Fifth Circuit has  repeatedly recognized that "settling avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Thus, when "the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *C.C. & L.C.*, 2022 WL 4477316 at *3. Here, although Plaintiffs contend that they are confident they would prevail (Dkt. #197 at p. 28), the key legal issues in this case have not yet been adjudicated. For example, Plaintiffs would still need to establish (1) a viable claim under

33

Section 7 of the Clayton Act and (2) entitlement to injunctive relief under Section 16 of the Clayton Act (Dkt. #1 at pp. 101–02). As a result, there is an inherent risk in proceeding to trial. Indeed, the risk of proceeding to trial is amplified where, as here, the case involves a complex antitrust class action. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) (explaining that "[a]n antitrust class action is arguably the *most complex action* to prosecute [because] [t]he legal and factual issues involved are always numerous and uncertain in outcome.") (citation modified). The Settlement, however, not only eliminates this risk but also provides a clear process for undisputed prospective relief that is specifically tailored to remedy the anticompetitive harm pleaded by Plaintiffs and the Settlement Class in this case. Accordingly, the Court finds that this factor favors approving the Settlement.

Second, the stage of the proceedings and the amount of discovery completed weigh in favor of finding that the Settlement is adequate. The key issue under this factor is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. However, "a court can approve a settlement even if the parties have not conducted much formal discovery." *C.C. & L.C.*, 2022 WL 4477316 at *3; *see also Union Asset Mgmt. Holdings A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (agreeing that "formal discovery is not a prerequisite to approving a settlement as reasonable."). Thus, "a court should consider all information which has been available to the parties." *C.C. & L.C.*, 2022 WL 4477316 at *3 (citation omitted). Here, the Court finds that prior to the Settlement the parties engaged in meaningful discovery. This case settled only after the parties engaged in extensive discovery which included: (1) Plaintiffs deposing several of Defendant's executives (including a 30(b)(6) deposition of Defendant's corporate representative) most knowledgeable about the anticompetitive practices

34

25-40774.2474

at issue; (2) Defendant producing 218,319 documents (totaling more than 950,021 pages) of which Plaintiffs thoroughly reviewed; (3) Defendant producing 6.5 terabytes of financial data (including approximately 6.4 billion individual trades placed by customer between 2019-2023); and (4) Plaintiffs filing two motions to compel against Defendant seeking to compel disclosure of certain documents originally withheld (*See* Dkt. #197-2 at ¶¶ 9–11). Following this discovery, Plaintiffs' Counsel, with the help of a retained expert, drew on their prior experience in similar antitrust class action litigation and determined that the Settlement was in the best interest of the putative class. Indeed, other courts in this Circuit have found this to be more than sufficient to satisfy this factor. *See C.C. & L.C.*, 2022 WL 4477316 at *4 (finding this factor satisfied where the parties "settled only after *extensive* written document production" and "after Plaintiff took the Rule 30(b)(6) deposition of Defendants."); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (finding this factor satisfied where defendant "produced tens of thousands of documents" and "voluminous electronic data" and plaintiffs "retained statistical experts who engage in extensive discrimination impact analysis."). Accordingly, the Court finds that this factor favors approving the Settlement.

Third, the probability of success on the merits weighs in favor of finding that the Settlement is adequate. The Fifth Circuit has made clear that "[a]bsent a showing of fraud or collusion, the probability of success on the merits is the most important *Reed* factor." *Smith v. Crystian*, 91 F. App'x 952, 955 n.3 (5th Cir. 2004) (citation modified). When examining the likelihood of success, a court "must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *Reed*, 703 F.2d at 172. Here, although Plaintiffs survived Defendant's Motion to Dismiss and are likely to have a strong case on the merits, the Court finds that there still remains a substantial risk for all parties in proceeding to trial. As

mentioned above, Plaintiffs face significant factual and legal hurdles to prevail on their claims at trial, especially, where, as here, the case involves an antitrust class action. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639 (noting that "[a]n antitrust class action is arguably the most complex action to prosecute.") (citation modified). Additionally, as Plaintiffs mention, Defendant—a large corporation represented by three prestigious law firms—can be expected to push back at every stage of the litigation including, among other things, opposing class certification, moving to exclude Plaintiffs' retained experts, and moving for summary judgment (*See* Dkt. #197 at pp. 30–31). Thus, in light of these risks, settlement makes sense in this case. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 654–56 (N.D. Tex. 2010) (finding this factor satisfied after considering, among other things, defendants' intent to vigorously challenge the merits of plaintiffs' claim, their intent to present *Daubert* challenges to class plaintiffs' medical evidence, and intent to appeal the courts partial denial of their motion for summary judgment). Accordingly, the Court finds that this factor favors approving the Settlement.

Fourth, the range of possible recovery in this case weighs in favor of finding that the Settlement is adequate. This factor requires courts to "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiffs' settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (citation omitted). In considering this factor courts "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Klein*, 705 F. Supp. 2d at 656. Ultimately, "[t]he court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." *In re*

25-40774.2476

*Katrina Canal Breaches Litig.*, 628 F.3d at 195.  Because the Settlement binds only an injunctive relief class under Rule 23(b)(2) and does not release individual damages claims, the relevant inquiry is the range of possible recovery were this case to proceed to trial as a Rule 23(b)(2) class action. Estimating the range of possible recovery is not difficult in this case. The lowest band is no recovery. The upper band of relief would be divestiture of Schwab and TD Ameritrade or segregation of the lines of business within the merged entity, to protect against future injury due to the Merger. *See Illumina, Inc.*, 88 F.4th at 1056 (providing that a court may order divestiture after a finding of liability under Section 7 of the Clayton Act). Here, the Court finds that comparing the recoveries in this case to those that could be recovered at trial supports the approval of the Settlement. Although not as extreme as divestiture, the antitrust compliance program provided for by the Settlement will likely have a similar impact. More specifically, the compliance program will ensure that going forward Schwab's policies, practices, and procedures promote competitive price improvement on trades for all members of the Settlement Class as well as *future* Schwab brokerage customers. *See Klein*, 705 F. Supp. 2d at 658 (finding this factor satisfied where the settlement will provide, among other things, relief even to "class members who have no apparent injury."). Additionally, Plaintiffs have submitted evidence demonstrating that the compliance program will provide a substantial monetary benefit to the Settlement Class (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvement between $10.7 million and $14.5 million per month for Schwab brokerage customers)). Thus, the relief provided for in the Settlement is more than fair to the Settlement Class, especially when considering that proceeding to trial could leave the class members with no remedy at all. Accordingly, the Court finds that this factor favors approving the Settlement.

25-40774.2477

### 2.   Proposed method of distributing relief to the Settlement Class

The second Rule 23(e)(2)(C) consideration—the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims—does not apply where, as here, the only relief proposed in the Settlement is injunctive relief which need not be distributed to the individual members of the Settlement Class. *See Poff v. PHH Mortgage Corp.*, 2023 WL 11983790, at *5 (S.D. Tex. Apr. 18, 2023) (applying this factor to a proposed class action settlement that calls for $1.3 million in relief to be distributed to class members but provides no sort of injunctive relief remedy for the class); *see also C.C. & L.C.*, 2022 WL 4477316 at *3–4 (approving the proposed settlement, which provides prospective relief to the class, without considering this factor).

### 3.   Proposed award of attorney's fees

The third Rule 23(e)(2)(C) consideration—the terms of any proposed award of attorney's fees, including timing of payment—weighs in favor of finding that the Settlement is adequate. "An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances." *DeHoyos*, 240 F.R.D. at 322. In fact, courts, including the Fifth Circuit, have "encouraged litigants to resolve fee issues by agreement, if possible." *Id.* (collecting cases). As explained by the Supreme Court, "a request for attorneys fees should not result in a second major litigation." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Thus, "courts are authorized to award attorneys' fees and expenses where all parties have agreed to the amount subject to court approval, particularly where the amount is in addition and separate from the defendant's settlement with the class." *Id.* (citation omitted).  However, before approving an attorney's fee award, "the court must carefully review a proposed fee award to ensure reasonableness." *C.C. & L.C.*, 2022 WL 4477316 at *5 (citing *Strong v. BellSouth Telecomms., Inc.*,

25-40774.2478

137 F.3d 844, 849 (5th Cir. 1998)). This scrutiny is necessary to guard "against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *see also* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTION § 13:54 (6th ed. 2024) (explaining that the court must consider the terms of a proposed fee award because "an inordinate fee may be a sign that counsel sold out the class's claim at a low value in return for a high fee.").

The Court finds that the terms of the proposed award of attorney fees are reasonable, and thus this factor weighs in favor of approving the Settlement.[10] During a subsequent meditation, which was entirely separate from the mediation where the Settlement was agreed to, counsel for the parties agreed to cap their attorney's fee application at $8,250,000 and expense application at $700,000 (Dkt. #197-2 at ¶ 19). The proposed award of attorney's fees in this case is similar to those that were at issue in the *DeHoyos* case. In *DeHoyos*, the court found that the agreed upon attorney's fee award was reasonable under Rule 23(e)(2)(C)(iii). 240 F.R.D. at 322. In reaching this conclusion, the court noted that there were several factors present that indicate a presumption of reasonableness in the parties' request for an award of attorney's fee. 240 F.R.D. at 322–23. The factors included: (1) the award of attorney's fees and expenses is separate and apart from the class settlement—which is not a monetary common fund—and will not in any way diminish the class settlement; and (2) the attorney's fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement. *Id.*

---

[10] In this section the Court is addressing the reasonableness of the attorney's fees for the limited purposes of deciding whether the Settlement warrants final approval under the Rule 23(e)(2)(C) considerations and relevant *Reed* factors. The Court's determination in this section of this Opinion has no bearing on whether the Court is approving Plaintiffs request for an award of attorney's fees, litigation expenses, and service awards. Indeed, as already discussed above, the Court will address this request by Plaintiffs in a separate order which will be docketed subsequently to this Order.

25-40774.2479

Here, the agreed upon attorney's fees award submitted by the parties in this case is exactly like the fee award that was found reasonable by the court in *DeHoyos*. First, the award of attorney's fees and expenses is separate and apart from the Settlement (Dkt. #197-1 at p. 55). Indeed, it is Defendant who is responsible for paying Plaintiffs' Counsel attorney's fees, not the members of the Settlement Class (*See* Dkt. #197-1 at p. 55 (providing that "class members are NOT individually responsible for attorney's fees or litigation expenses. Any award of attorney's fees and litigation expenses will be paid by Schwab.")). Thus, if the Court were to reduce the award of fees for Plaintiffs' Counsel, it would not confer a greater benefit upon the Settlement Class, but rather would only benefit Defendant. *See DeHoyos*, 240 F.R.D. at 322 (noting that because the attorney's fees were separate and apart from the class settlement, any reduction in fee would only benefit defendants and not the members of the class). Second, the amount of attorney's fees Plaintiffs' Counsel would seek were not negotiated or discussed until *after* the parties executed the Settlement (Dkt. #197-2 at ¶¶ 18–19 (providing that the parties executed the Settlement on December 12, 2024 but did not discuss the issue of the amount of attorney's fees Plaintiffs' Counsel would seek until the mediation before Judge Atlas on January 24, 2025)). Thus, these factors indicate a presumption of reasonableness in the request for an attorney's fee award. Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

### 4.    Agreements required to be identified under Rule 23(e)(3)

The fourth Rule 23(e)(2)(C) consideration—any agreement required to be identified under Rule 23(e)(3)—does not apply in this case since there are no other agreements between the parties beyond those which are set forth in the Settlement. *See Kostka*, 2022 WL 16821685 at *13 (finding that Rule 23(e)(3) is not applicable in this case, and thus weighs in favor of finding that the proposed

40

25-40774.2480

settlement is adequate, where no party has identified any such agreement). Accordingly, the Court finds that this factor favors approving the Settlement.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires that the proposed settlement treat class members equitably. *See* FED. R. CIV. P. 23(e)(2)(D). Here, the Court finds that the equitable-treatment factor is easily met in this case. The Settlement provides that the requested injunctive relief—the antitrust compliance program—applies uniformly to all members of the Settlement Class (*See* Dkt. #197-1 at pp. 55–56 (providing that if you are a Settlement Class Member you are bound by the Settlement and entitled to the injunctive relief provided therein)). Thus, all members of the Settlement Class are entitled to the same relief. *See ODonnell*, 2019 WL 6219933 at *14 (finding this factor is satisfied where the settlement requires defendant to take "action that applies to all class members equally."); *see also C.C. & L.C.*, 2022 WL 4477316 at *5 (finding this factor supports approving the settlement where "each class member, save the Class representatives, will receive the same amount.") (citing *Hays v. Eaton Grp. Att'ys., LLC*, 2019 WL 427331, at *5 (M.D. La. Feb. 4, 2019)). The only differential in recovery among the members of the Settlement Class is that Defendant has agreed not to object to Plaintiffs motion for service awards of up to $5,000 each (Dkt. #197-1 at p. 21). However, these awards are not inconsistent with Rule 23(e)(2)(D)'s equitable-treatment requirement. *See Moses v. New York Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023) (finding that Rule 23(e)(2)(D)'s mandate "is harmonious with, and promoted by, our clear precedent that permits district courts to approve fair and appropriate incentive awards to class representatives."). Additionally, an incentive award of $5,000 per Plaintiff is consistent with what other courts in the Fifth Circuit have awarded to class representatives. *See Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) (explaining that "[d]istrict courts in the Fifth Circuit *routinely award* $5,000-

$10,000 per named plaintiff.") (emphasis added) (citing *DeHoyos*, 240 F.R.D. at 339). Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

### E.    The Opinions of Class Counsel, Class Representatives, and Absent Class Members

The final *Reed* factor—the opinions of the class counsel, class representatives, and absent class members—supports approval of the Settlement. The Fifth Circuit has repeatedly recognized that "a settlement can be approved despite opposition from class members, including named plaintiffs." *See Ayers*, 358 F.3d at 373 (collecting cases). In determining whether to approve a class action settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Jones*, 865 F.3d at 300 (citation modified). Indeed, because class counsel tends to be the most familiar with the intricacies of the class action lawsuit and the settlement, "[s]ignificant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel." *Marcus*, 2017 WL 6590976 at *3 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997)). Here, the Court finds that this factor weighs in favor of approving the Settlement for several reasons. First, this case has had the benefit of experienced attorneys on both sides, each of whom have litigated and negotiated settlements in other complex antitrust class actions (*See* Dkt. #197-2 at ¶¶ 26, 30). Second, Plaintiffs unanimously agree that the Settlement is a fair, reasonable, and adequate resolution of the dispute (*See* Dkt. #197-3 at ¶ 18; Dkt. #197-4 at ¶ 18; Dkt. #197-5 at ¶ 18). Third, only a very small number of objections have been received (approximately 70 out of over 25,000,000 Settlement Class members), several of which pertain only to the amount of attorney's fees and not the actual relief provided for in the Settlement. Thus, the opinion of the personnel who were actively involved in the reaching the Settlement has been overwhelmingly positive which

25-40774.2482

the Court considers to weigh heavily in favor of finding that the Settlement is a fair, reasonable, and adequate. *See Halleen v. Belk Inc.*, 2018 WL 6701278, at *3 (E.D. Tex. Dec. 20, 2018) (finding that this factor is satisfied where the settlement was negotiated by "experienced attorneys on both sides" and "the parties and their attorneys agree that the settlement is a fair and reasonable resolution of a *bona fide* dispute."); *see also Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *14 (N.D. Tex. Aug. 4, 2011) (finding that this factor is satisfied where, among other things, only "a few small number of objections had been  received" several of which only pertain to "the amount of the attorneys' fees requested by counsel."). Accordingly, the Court finds that this factor weighs in favor of approving the Settlement.

## VI.    Objectors' Arguments

As discussed above, after notice was sent to each member of the Settlement Class, the Court received approximately seventy objections from certain class members regarding the proposed Settlement.[11] Before addressing the substance of the objections in more detail, the Court notes that the fact that the objectors only make up approximately 0.00028% of the entire Settlement Class is a fact, on its own, that weighs in favor of approving the Settlement. *See Vaughn*, 627 F. Supp. 2d at 748 (explaining that the fact that so few objections were filed—82 total—in light of the massive size of the class—more than 6 million class members—was particularly significant to the court's finding that the proposed class action settlement was fair, reasonable, and adequate). Nevertheless, none of the objections raised by the Objectors have merit and thus should be overruled by the Court.

---

[11] As of July 17, 2025, the Court had received approximately two dozen (24) objections from the class members regarding the proposed Settlement. However, as of August 14, 2025, two days before the scheduled fairness hearing, the Court had received approximately seventy (70) objections out of approximately 25 million class members properly noticed.

25-40774.2483

The Court will now consider the objections that were filed in response to the Settlement. Generally, the approximately seventy objections filed by the members of the Settlement Class focused on the following issues: (1) Plaintiffs lacked Article III standing to seek the injunctive relief provided for in the Settlement;[12] (2) the Settlement Class did not receive adequate notice of the Settlement;[13] (3) the Settlement provided no monetary benefit to the class;[14] and (4) the class counsel's attorney's fees are disproportionate to the class benefit.[15] The Court addresses each category of objection in turn. In short, the Court finds that none of the objections have merit and thus do not prevent the Court from approving the Settlement.

## A.     Article III Standing

Two of the Objectors—Theodore Frank and Shiyang Huang—argue that Plaintiffs lack Article III standing to seek the injunctive relief provided for in the Settlement (*See* Dkt. #215 at pp. 3–6; Dkt. #251 at pp. 5–6). Both objectors argue that Plaintiffs have failed to sufficiently allege an "imminent" injury sufficient to establish standing to seek the injunctive relief provided for in the Settlement (*See* Dkt. #215 at pp. 3–6; Dkt. #251 at pp. 5–6). More specifically, both objectors contend that Plaintiffs have only alleged harm for *past* injuries, which is insufficient to satisfy the injury in fact requirement for Article III standing (*See* Dkt. #215 at pp. 3–6; Dkt. #251 at pp. 5–6).

---

[12]  *See* Dkt. #251; Dkt. #278.

[13]  *See* Dkt. #219; Dkt. #235; Dkt. #242; Dkt. #245; Dkt. #256.

[14]  *See* Dkt. #160–61; Dkt. #163–68; Dkt. #171–73; Dkt. #176; Dkt. #179–81; Dkt. #187–88; Dkt. #192–94; Dkt. #201–02; Dkt. #206–08; Dkt. #210; Dkt. #213; Dkt. #217; Dkt. #220; Dkt. #224–27; Dkt. #233–34; Dkt. #236–37; Dkt. #240; Dkt. #245–46; Dkt. #248; Dkt. #251–53; Dkt. #255; Dkt. #257; Dkt. #259–60.

[15]  *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245; Dkt. #246; Dkt. #248; Dkt #251–52; Dkt. #255–57.

25-40774.2484

The Court disagrees. As already discussed at length by the Court above, Plaintiffs have Article III standing to seek the injunctive relief provided for in the Settlement. *See supra* Section I.

Because the Objectors only contest the "imminent" requirement the Court need not address the other two Article III standing requirements—i.e., "fairly traceable to the challenged action" and "redressable by a favorable ruling." To demonstrate an "imminent" injury a plaintiff must show a "certainly impending" injury. *See Clapper*, 568 U.S. at 409. As explained by the Supreme Court in *Clapper*, the purpose of this requirement is to ensure that "the alleged injury is not too speculative for Article III purposes." *Id*. However, where, as here, Plaintiffs request forward-looking injunctive relief, the Supreme Court later clarified that they must face "a real and immediate threat of repeated injury." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citation omitted). Thus, "an allegation of future injury may suffice if the threatened injury is certainly impending *or* there is a substantial risk that the harm will occur." *Id*. (emphasis added) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (providing that "a person exposed to a risk of *future harm* may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.") (emphasis added) (citation omitted).

Here, the Court finds that Plaintiffs have shown a sufficiently "imminent" injury to establish standing because the injunctive relief seeks to prevent a future harm from occurring. Plaintiffs' central theory in this case is that the Merger has substantially lessened competition in an asserted ROFM, which has harmed Schwab brokerage customers in the form of reduced price improvement on trades (Dkt. #1 at ¶ 35). The harm from the anticompetitive Merger at issue is ongoing and, thus, without implementing the injunctive relief requested in the Settlement, current

25-40774.2485

Schwab brokerage customers will continue to suffer harm. Indeed, each named Plaintiff has submitted a sworn affidavit to this Court attesting that they "intend to remain a retail brokerage customer of Schwab" and "intend to execute additional trades in the near future" (*See* Dkt. #197-3 at ¶ 4; Dkt. #197-4 at ¶ 4; Dkt. #197-5 at ¶ 4). As a result, Plaintiffs, like all other class members who are current Schwab brokerage customers, will continue to receive reduced price improvements on their trades due to the anticipative effects of the Merger. Thus, there can be no question that each named Plaintiff has standing to seek the injunctive relief requested in the Settlement. Accordingly, the two objections relating to the lack of Article III standing are **OVERRULED**.

## B.    Adequate Notice

The Court will now address the objections that the Settlement Class did not receive adequate notice. More specifically, several Objectors have complained about the timing of the class notice, contending that they were not given sufficient time to meaningfully object to the terms of the Settlement (*See* Dkt. #219 at pp. 1–2; Dkt. #235 at p. 1; Dkt. #242 at p. 2; Dkt. #245 at pp. 25–26; Dkt. #256 at p. 2). The Court disagrees. As already discussed at length by the Court above, the notice provided to the Settlement Class satisfies both the broad reasonableness standards imposed by due process and with the Rule 23 requirements. *See supra* Section IV.

In determining the reasonableness of the notice, "receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution." *DeHoyos*, 240 F.R.D. at 296 (citation modified); *see also In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected means likely to apprise interested parties."). Rather, the type of notice to which a member of a class is entitled "depends

46

upon the information available to the parties about that person and the possible methods of identification." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1098.

Here, the Court finds that the notice provided to the class members met, or exceeded, the broad reasonableness standards imposed by due process and with the requirements of Rule 23 for several reasons. First, the timing of the notices was more than reasonable. The first batch of initial notices were sent on April 14, 2025, to a total of 19,586,731 members of the Settlement Class (Dkt. #197-7 at ¶ 24). Of the 19,586,731 notices sent 18,333,070 were confirmed as successfully delivered to the members of the Settlement Class (Dkt. #197-7 at ¶ 24). Thus, a majority of the class members (73.6%) received direct notice of the Settlement at least 136 days before the Fairness Hearing. *See Erica P John Fund, Inc.*, 2018 WL 1942227 at *3 (finding a gap of more than 75 days between when notice was first sent out and the fairness hearing was adequate); *see also Welsh*, 2018 WL 7283639 at *10 (finding that a gap of 115 days between the date of notice and the date of the fairness hearing supports a finding of reasonableness). Second, the notices successfully reached more than a reasonable number of members from the Settlement Class. Indeed, by July 15, 2025—six weeks before the Fairness Hearing—a total of 24,165,364 members (97.0% of the Settlement Class) received direct notice of the Settlement. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1061 (finding Rule 23(e)(1)'s reasonableness requirement was satisfied where the notice reached 81.4 percent of the class members); *see also Welsh*, 2018 WL 7283639 at *11 (finding Rule 23(e)(1)'s reasonableness requirement was satisfied where the notice reached 90 percent of the class members). Thus, based on the number of Settlement Class members who received direct notice of the Settlement and the small number of members who submitted objections, the Court finds that the Settlement Class received "reasonable" notice of

25-40774.2487

the Settlement. Accordingly, the objections relating to the adequacy of the notice are **OVERRULED**.

### C.    Adequacy of the Relief Provided in the Settlement

The Court will now address the objections that the Settlement should not be approved since it provides no monetary benefit to the Settlement Class. Nearly all the objections received by the Court criticized the absence of monetary relief in the Settlement.[16] However, the Court disagrees with these objections. As already discussed at length by the Court above, the Settlement, and the relief provided therein, is fair, reasonable, and adequate. *See supra* Section V.

It is well-established that "a district court has discretion to approve a class-action settlement under Rule 23(e) if the settlement is fair, reasonable, and adequate." *Ayers*, 358 F.3d at 368. In making this determination, there are several considerations that the Rule imposes, including: "(1) adequate representation by the class representatives; (2) arm's length negotiations; (3) the relief takes into account the costs of litigation, the effectiveness of distributing relief, and how attorneys fees are distributed; and (4) that the proposal treats class members equitably relative to each other." *Garcia v. Matson*, 2022 WL 6935303, at *3 (5th Cir. Oct. 12, 2022) (citing FED. R. CIV. P. 23(e)(2)). Additionally, the Fifth Circuit had previously articulated a six-factor test, the *Reed* Test, "that district courts should consider in determining whether the settlement is adequate." *Id.*[17] Approval of a settlement under this standard is "not to be upset unless the [district] court *clearly*

---

[16] *See* Dkt. #160–61; Dkt. #163–68; Dkt. #171–73; Dkt. #176; Dkt. #179–81; Dkt. #187–88; Dkt. #192–94; Dkt. #201–02; Dkt. #206–08; Dkt. #210; Dkt. #213; Dkt. #217; Dkt. #220; Dkt. #224–27; Dkt. #233–34; Dkt. #236–37; Dkt. #240; Dkt. #245–46; Dkt. #248; Dkt. #251–53; Dkt. #255; Dkt. #257; Dkt. #259–60.

[17] The six-factors under the *Reed* Test include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

25-40774.2488

*abused* its discretion." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981) (citation modified).

Here, after closely weighing the relevant factors, the Court finds that the lack of monetary relief does not prevent final approval of the Settlement. *See Garcia*, 2022 WL 6935303 at *3 (affirming the district court's approval noting that "the standard of review is highly deferential" and where "the district court here thoroughly engaged with both the Rule 23(e)(2) and *Reed* factors."). As discussed above, although the Settlement does not provide immediate monetary relief, the prospective injunctive relief in the Settlement still provides meaningful relief to the entire Settlement Class by directly addressing the anticompetitive behavior at issue (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvement between $10.7 million and $14.5 million per month for Schwab brokerage customers.)). Additionally, courts have routinely found class action settlements to be fair and reasonable where, as here, the injunctive-only Settlement does not force the Settlement Class to release their individual damages claims. *See In re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *3 (C.D. Cal. May 28, 2024) (finding that the injunctive relief provided in the settlement is fair and reasonable where it does not force the settlement class to release such claims); *see also Campbell v. Facebook Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (affirming the district court's final approval of an injunctive-only settlement because "it provided a benefit – information about Facebook's monitoring practices – in return for a release of *non-monetary* claims.") (emphasis added). Accordingly, the objections relating to the adequacy of the relief provided in the Settlement are **OVERRULED**.

25-40774.2489

### D.    Attorney's Fees

The last category of objections raised by several of the Objectors—which is that the class counsel's attorney's fees and costs are disproportionate to the class benefit[18]—will be addressed by the Court in a separate memorandum opinion and order ruling on Plaintiffs' Counsels' Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). However, similar to each of the abovementioned objections, the Objectors' arguments relating to the requested fees are without merit and thus does not prevent the Court from approving Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #197).

### CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #197) is hereby **GRANTED**.

The Court accordingly **ORDERS** that for the purposes of this Settlement only, the prerequisites for a class action under Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiffs are typical of the claims of the Settlement Class they seek to represent; and (d) Plaintiffs and Class Counsel have and will continue to fairly and adequately represent the interests of the Settlement Class.

It is further **ORDERED** that for the purposes of this Settlement only, the requirements of certification of a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure have been

---

[18] *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245; Dkt. #246; Dkt. #248; Dkt 251–52; Dkt. #255–57.

25-40774.2490

satisfied in that the party opposing the class has acted or intends to act on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate representing the class as a whole.

It is further **ORDERED** that pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purpose of this Settlement only, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams are appointed as Class Representatives of the Settlement Class.

It is further **ORDERED** that pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purposes of this Settlement only, Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP are appointed as Class Counsel for the Settlement Class.

It is further **ORDERED** that the Court gives its final approval to parties' Stipulation and Agreement of Settlement dated December 12, 2024 (the "Stipulation") (Dkt. #154-1) and directs the parties to consummate the Settlement in accordance with the terms and provisions contained therein.

It is further **ORDERED** that, without affecting the finality of this Order and Final Judgment in any way, this Court retains exclusive jurisdiction over all parties to this Action and the Settlement Class members for all matters relating to this action including, but not limited to, the administration, interpretation, effectuation, and enforcement of the Stipulation.

It is further **ORDERED** that if the Settlement is not consummated in accordance with the terms of the Stipulation, then the Stipulation and this Order and Final Judgment (including any amendment(s) thereof, and except as expressly provided in the Stipulation or order of this Court) shall be null and void, of no further force or effect, and without prejudice to any of the parties, and may not be introduced as evidence or used in any action or proceeding by any person against the

25-40774.2491

parties, and the parties shall be restored to their respective litigation positions as they existed as of October 1, 2024.

It is further **ORDERED** that this action is hereby **DISMISSED** with prejudice and all parties to this action shall bear their own costs, except as otherwise provided in the Stipulation.

**IT IS SO ORDERED.**

 **SIGNED this 24th day of November, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

25-40774.2492

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JONATHAN CORRENTE, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-470 |
| | § | Judge Mazzant |
| THE CHARLES SCHWAB | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The background of this lawsuit is more thoroughly set forth in the Court's Memorandum Opinion and Order on the Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #285). On June 2, 2022, Plaintiffs Jonathan Corrente, Charles Shaw, and Leo Williams (collectively, "Plaintiffs"), each individually and on behalf of approximately twenty-five million members, filed a class action lawsuit challenging the merger between Charles Schwab ("Schwab") and TD Ameritrade Holding Corporation ("TD Ameritrade") (the "Merger") under Section 7 of the Clayton Act, seeking monetary damages and injunctive relief (Dkt. #1). More specifically, Plaintiffs allege that the Merger substantially lessened competition in an asserted Retail Order Flow Market ("ROFM"), which harmed Schwab customers in the form of reduced price improvements on trades (Dkt. #1 at ¶ 35).

On December 12, 2024, after more than five months of negotiations in front of an experienced mediator, the Honorable Nancy F. Atlas, the parties notified the Court that they had executed a Stipulation and Agreement of Settlement (the "Settlement" or the "Settlement Agreement") which they would later submit to the Court for preliminary approval (Dkt. #149 at p. 2). On January 24, 2025, more than one month after the execution of the Settlement, the parties mediated the issue of attorney's fees and litigation expenses before Judge Atlas. As a result, the parties agreed to cap their attorney's fees and expense reimbursement application at an amount decided during the mediation and also agreed on a set service award amount to be paid to Plaintiffs pending the Court's final approval of the Settlement. On February 4, 2025, Plaintiff filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. #154). On February 19, 2025, the Court granted Plaintiffs' motion and preliminarily approved the Settlement and scheduled the fairness hearing for August 28, 2025 (Dkt. #157 at pp. 4–5). On August 28, 2025, the Court held the fairness hearing at which counsel for both parties appeared and argued in favor of final approval of the Settlement. On July 7, 2025, Plaintiffs filed their Motion for Final Approval of Class Action Settlement arguing that the Settlement meets the requirements under Rule 23(e) of the Federal Rules of Civil Procedure (*See* Dkt. #197). On November 24, 2025, the Court entered an order granting Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. #285).

On July 17, 2025, Plaintiffs' counsel Bathaee Dunne LLP, Burke LLP, Korein Tillery PC, and Capshaw DeRieux LLP (collectively, "Plaintiffs' Counsel") filed this Unopposed Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199). Plaintiffs' Counsel's motion requests that the Court approve an award of attorney's fees in the amount of $8,250,000, litigation expenses in the amount of $686,492.60, and service awards of $5,000 to

each of the three named Plaintiffs for their services as the Class Representatives in this case (Dkt. #199 at p. 7).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Rule 23(h) "requires that claims for attorney-fee awards be made by motion under Rule 54(d)(2) and that notice of the motion must be served on all parties and, for motions by counsel, directed to class members in a reasonable manner." *Morrow v. Jones*, 140 F.4th 257, 261 (5th Cir. 2025) (citing FED. R. CIV. P. 23(h)(1)). This notice provision allows "a class member, or a party from whom payment is sought the opportunity to object to the motion." *Id.* (citation modified) (citing FED. R. CIV. P. 23(h)(2)).

In the Fifth Circuit, attorney's fees in class action suits are calculated using the lodestar method. *See Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). The lodestar is calculated by multiplying "the number of hours reasonably expended by an appropriate hourly rate." *Cruz v. Maverick Cnty.*, 957 F.3d 563, 573 (5th Cir. 2020) (citation omitted). A reasonable hourly rate is the "prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skills, experience, and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The relevant legal market is "the community where the district court sits." *Alvarez v. McCarthy*, 2022 WL 822178, at *3 (5th Cir. Mar. 18, 2022) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). The lodestar is presumptively reasonable. *See Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016).

3

25-40774.2495

The party seeking attorney's fees "must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *see also Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*, 23 F.4th 408, 415–16 (5th Cir. 2022) (explaining that "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). Using this time as a benchmark, "the court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* (citations omitted). The hours surviving this vetting process are "those reasonably expended under the litigation." *Id.*

After the lodestar is calculated, the Fifth Circuit then uses a twelve-factor test (the "Johnson Factors") to determine "whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *see also Cruz*, 957 F.3d at 574 ("After the lodestar method is applied, courts use a twelve-factor test to determine whether counsel's performance requires an upward or downward adjustment from the lodestar."). The *Johnson* Factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged fore those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client of the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Migis*, 135 F.3d at 1047 (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be

4

double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citation modified). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *See Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation omitted).

## ANALYSIS

Plaintiffs, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, request that the Court enter an order granting: (1) an award of attorney's fees in the amount of $8,250,000; (2) payment of Plaintiffs' Counsel's litigation expenses in the amount of $686,492.60; and (3) service awards of $5,000 to class representatives Jonathan Corrente, Charles Shaw, and Leo William (the "Class Representatives") in connection with litigating the claims in this action on behalf of the Settlement Class (Dkt. #199 at p. 7). The Court addresses each request in turn.

## I.    Attorneys' Fees Under Lodestar Method

The Court must first determine what a reasonable attorney's fee award is in this case. To do this, the Court starts with the lodestar calculation which is "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community of similar work." *Fessler*, 23 F.4th at 415 (citation omitted). In their Motion for Attorney's Fees, Plaintiffs' Counsel requests a fee award of $8,250,000, which accounts for the more than 14,000 hours of time (calculated conservatively) spent litigating this case since June 2, 2022, through the lodestar cutoff date of June 30, 2025 (Dkt. #199 at pp. 11, 14). Defendant does not object to the attorneys' fees requested by Plaintiffs' Counsel since it does not exceed the cap that the parties mutually agreed to during their mediation. Plaintiffs' Counsel calculated the requested attorney's fee award by adding up the total

25-40774.2497

number of hours spent on this case—which includes time reports from four different law firms—multiplied by each of the attorneys' respective hourly rates (*See* Dkt. #199-1 at p. 12; Dkt. #199-2 at p. 4; Dkt. #199-3 at p. 6; Dkt. #199-4 at p. 3 (providing a lodestar timekeeper report for Bathae Dunne LLP, Burke LLP, Korein Tillery PC, and Capshaw DeRieux LLP)).[1] The fee breakdown is: (1) Bathae Dunne LLP spent a total of 7,068.5 hours for a lodestar of $6,605,398.50 (Dkt. #199-1 at p. 12); (2) Burke LLP spent a total of 230.3 hours for a lodestar of $291,115 (Dkt. #199-2 at p. 4); (3) Korein Tillery LLC spent a total of 7,434.30 hours for a lodestar of $3,886,120.00 (Dkt. #199-3 at p. 6); and (4) Capshaw Derieux LLP spent a total of 41.4 hours for a lodestar of $21,330.00 (Dkt. #199-4 at p. 3).

Based upon the above calculation, Plaintiffs' Counsel requests $8,250,000 in attorney's fees. According to Plaintiffs' Counsel, the requested attorney's fees of $8,250,000 applies a 0.763 lodestar multiplier, which reduces Plaintiffs' Counsel's billed hours in this case by nearly 24% (*See* Dkt. #199 at p. 11; Dkt. #268 at p. 7). Plaintiffs' Counsel does not expressly request an upward adjustment to the lodestar amount (*See* Dkt. #199). Plaintiffs' Counsel did, however, still include an analysis of the *Johnson* factors  in their Motion, which they argue would support their request for an award of the lodestar amount without the application of the 0.763 multiplier: $10,800,000 (Dkt. #199 at pp. 18–24).[2] Plaintiffs' Counsel's analysis did not address all twelve of the *Johnson* factors. Rather, Plaintiffs' Counsel only addresses the *Johnson* factors that they deemed relevant to their analysis (Dkt. #199 at p. 19). The relevant factors included a total of six *Johnson* factors: (1)

---

[1]  The lodestar timekeeper reports for each of the firms includes work from partners, associates, of counsel, staff attorneys, legal analysts, and litigation support (*See* Dkt. #199-1 at p. 12; Dkt. #199-2 at p. 4; Dkt. #199-3 at p. 6; Dkt. #199-4 at p. 3).

[2]  Plaintiffs' Counsel contends that without applying the 0.763 multiplier, which reduces the hours billed on this case by nearly twenty-four percent (24%), the lodestar amount would around $10,803,933.50 (*See* Dkt. #199 at p. 11).

25-40774.2498

the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly and the experience, reputation, and ability of Plaintiffs' Counsel; (4) the customer fee and awards in similar cases; (5) the amount involved and the results obtained; and (6) the undesirability of the case (Dkt. #199 at pp. 19–24).

As discussed above, Defendant does not object to any of the fee awards requested by Plaintiffs' Counsel in this instant motion, since the fees do not exceed the cap that the parties mutually agreed to during their January 24, 2025 mediation. The Court did, however, receive objections about the requested fee awards from some of the members of the Settlement Class. Generally, the Objectors took issue with the following: (1) the value of the relief to the class in relation to the requested attorney's fees and costs;[3] (2) the fairness of the requested service award of $5,000 for each Class Representative;[4] (3) the hourly rates charged by Plaintiffs' Counsel;[5] and (4) the notice provided to the class of Plaintiffs' Counsel's request for attorney's fees.[6] The Court will address each of these objections in more detail later in this Order. In short, the Court finds that none of the objections prevent the Court from awarding the attorney's fees, litigation expenses, and service awards requested by Plaintiffs' Counsel.

---

[3]  *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245–46; Dkt. #248; Dkt. #251–52; Dkt. #255–57.

[4]  *See* Dkt. #171; Dkt. #173; Dkt. #176; Dkt. #242; Dkt. #245; Dkt. #248.

[5]  Only one Objector—the State of Iowa—objects to Plaintiffs' Counsel's lodestar calculation and the 0.763 multiplier requested in Plaintiffs' Counsel's fee application arguing that a 0.33 multiplier is more appropriate (*See* Dkt. #245 at pp. 24–25).

[6]  Similarly, the State of Iowa is the sole Objector who argues that the members of the Settlement Class had insufficient time to object to Plaintiffs' Counsel's attorney's fee request (*See* Dkt. #245 at pp. 25–26).

25-40774.2499

## A.    Reasonableness of Plaintiffs' Counsel's Hours Billed

The first step in the lodestar calculation requires the Court to determine the "compensable hours listed in the attorney's time records." *Yin Invs. USA, LP v. Aspen Specialty Ins. Co.*, 2022 WL 2528244, at *2 (E.D. Tex. July 7, 2022) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993)). The Fifth Circuit has made clear that the "documentation supporting a factual finding regarding the amount of attorney's fees must be sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017). To facilitate this determination, courts ordinarily expect that the fee request submitted to the courts should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Lewallen v. City of Beaumont*, 2009 WL 2175637, at *2 (E.D. Tex. July 20, 2009) (citation omitted). However, "the lack of records is *not* necessarily fatal to a fee request as long as the evidence produced is adequate to determine reasonable hours." *Portillo*, 872 F.3d at 742 (emphasis added).

Plaintiffs' Counsel argues that the hours they have expended in this case, which total more than 14,000 hours, are reasonable (Dkt. #199 at p. 13). In support of their lodestar calculation, Plaintiffs' Counsel provides the Court with the following documentation: (1) affidavits from each attorney providing, among other things, a detailed description of the work they have done on the case;[7] (2) timesheets which include the position, hours spent, and respective billing rate for each timekeeper involved in this case;[8] and (3) a declaration by Warren T. Burns, a disinterested attorney who practices in the Eastern District of Texas, attesting to the reasonableness of both the total

---

[7]    *See* Dkt. #199-1; Dkt. #199-2; Dkt. #199-3; Dkt. #199-4.

[8]    *See* Dkt. #199-1 at p. 12; Dkt. #199-2 at p. 4; Dkt. #199-3 at p. 6; Dkt. #199-4 at p. 3.

25-40774.2500

amount of hours spent litigating this case and the billing rates of Plaintiffs' Counsel. Moreover, Plaintiffs' Counsel also argues that the reasonableness of their hours is further supported by the following facts: the case was staffed leanly, lead counsel discussed and assigned tasks according to the needs of the case to prevent duplicative and redundant work, and tasks were efficiently allocated based on complexity (Dkt. #199 at p. 13).

Here, the Court finds that the evidence provided by Plaintiffs' Counsel supports a finding that the hours expended in this case are reasonable. Plaintiffs' Counsel's Declarations highlight the complexity and undesirability of this case, the extensive factual and legal investigation undertaken before Plaintiffs' Counsel even filed the Complaint, and the significant amount of work required to reach a settlement in this case (*See* Dkt. #199-1; Dkt. #199-2; Dkt. #199-3; Dkt. #199-4). This is a complex class action case involving a private challenge of the Merger between two of the largest brokerage firms in the United States. The case was litigated for more than three years before the parties were able to reach a meaningful settlement. The briefing involved complicated antitrust and securities issues including post-merger Section 7 challenges and challenges relating to Defendant's payment-for-order-flow practices.[9] Indeed, this case required Plaintiffs' Counsel to analyze and review voluminous amounts of complex financial information—which included more than 218,319 documents (totaling more than 950,021 pages) and 6.5 terabytes of electronic data—to prepare for trial.  If the 282 docket entries and 103-page, 488 paragraph complaint are any indication, this Settlement was the result of litigious and hard-fought negotiations that required a considerable amount of work from all parties involved.

---

[9]  In further support of their Attorney's fee award, Plaintiffs' Counsel contends that this lawsuit is one of only two successful post-merger Section 7 challenges this century and would also be the only successful challenge relating to payment-for-order-flow practices (Dkt. #199 at pp. 15–16).

25-40774.2501

Additionally, despite Plaintiffs' Counsel use of block billing[10] in the timesheets they submitted in support of their requested award, the Court does not believe that a reduction to the hours billed in this case is warranted. Generally, block billing is disfavored because "it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Peterson*, 2021 WL 4956244 at *6. When the records contain block billing, a reduction to the hours billed may, although not required, be warranted "where the records presented are inadequate to determine reasonable hours." *Id.* However, the Fifth Circuit has recognized that the practical considerations of the practice of law today may prevent attorneys from avoiding the use of block billing in its entirety. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) ("[W]e are mindful that the practical consideration of the daily practice of law in this day and age preclude writing a book to describe in excruciating detail the professional services rendered for each hour or fraction of an hour."). Here, the Court finds that a reduction for block billing in this case is unnecessary because Plaintiffs' Counsel already reduced their total hours billed in this case by nearly 24% (*See* Dkt. #199 at p. 11; Dkt. #268 at p. 7). Indeed, this voluntary percentage reduction is consistent with the reduction routinely applied for block billing by both the Fifth Circuit and this Court. *See Peterson*, 2021 WL 4956244 at *6 ("When making a reduction because of block billing courts in the Fifth Circuit reduce a percentage of the hours or the lodestar figure, and this amount usually ranges from 10% to 30%.") (collecting cases). Accordingly, the more than 14,000 hours billed in this case were reasonable and necessary given the nature, length, and complexity of this case.

---

[10] "Block billing refers to a time-keeping method by which each lawyer and legal assistant enter the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Peterson v. Tenant Tracker, Inc.*, 2021 WL 4956244, at *6 (E.D. Tex. Sept. 30, 2021) (citation modified)

25-40774.2502

### B.    Reasonableness of Plaintiffs' Counsel's Hourly Rates

Having determined that the hours expended by Plaintiffs' Counsel in this case are reasonable, the Court turns to the hourly rates. There are several hourly rates at issue: (1) Bathaee Dunne LLP's rates range from $500 for staff attorneys, $650 for associates, $850 to $900 for of counsels, and $1,095 to $1,295 for partners and senior partners (Dkt. #199-1 at p. 12); (2) Burke LLP's rates range from $350 for legal analysts, $800 for of counsels, and $1,500 for partners and senior partners (Dkt. #199-2 at p. 4); (3) Korein Tillery LLC's rates range from $350 legal analysts, $400 for paralegals and staff attorneys, $800 to $850 for associates, and $900 to $1,700 for partners and senior partners (Dkt. #199-3 at p. 6); and (4) Capshaw Derieux LLP's rates range from $200 for paralegals and $700 for partners (Dkt. #199-4 at p. 3).[11]

Plaintiffs' Counsel argues their hourly rates charged in litigating this case are reasonable (Dkt. #199 at p. 14). In support of their rates, Plaintiffs' Counsel provided the Court with a Declaration from Warren T. Burns, a disinterested attorney from Burns Charest LLP who actively practices in the Dallas-Forth Worth area, including the Eastern District of Texas, who attests to the reasonableness of the hourly rates at issue (*See* Dkt. #199-5). Specifically, Mr. Burns states that his firm's rates—ranging from $1,100 to $1,500 for partners and $700 to $900 for associates—have been approved by numerous federal jurisdictions around the country (Dkt. #199-5 at ¶ 7).[12] In further support of the hourly rates at issue, Mr. Burns emphasizes that there are only a few firms in the Eastern District of Texas, Plaintiffs' Counsel being one of them, who are capable of handling

---

[11] In general, the hourly rates Plaintiffs' Counsel charged in this case range from $400 for attorneys focused on document review to $1,500 for senior partners with the exception of a senior partner at Korein Tillery LLC who charges $1,750 per hour.

[12] In addition, Mr. Burns also states that his firm applies the same rates without regard to jurisdiction (Dkt. #199-5 at ¶ 7).

25-40774.2503

complex, nationwide antitrust class actions (Dkt. #199-5 at ¶¶ 8–9). He also contends that the number of firms capable of handling this case is dwindled even further when the nature and risk of this litigation is taken into consideration—i.e., private enforcement of the Clayton Act to challenge the Merger of large financial institutions on a purely contingent basis (Dkt. #199-5 at ¶ 8).

The reasonable hourly rate is determined by the "prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain*, 649 F.3d at 381. The relevant legal market is "the community where the district court sits." *Alvarez*, 2022 WL 822178 at *3. This Court, however, has previously found that, despite falling within the Northern  rather than the Eastern District, the "Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates." *Solferini v. Corradi USA, Inc.*, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases). Typically, "the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Cunningham v. Concentrix Sols. Corp.*, 2023 WL 11946468, at *11 (E.D. Tex. Jan. 10, 2023) (citing *Tollet*, 285 F.3d at 368)). Importantly, "a party requesting attorneys' fees must do more than provide an affidavit from its own attorney to support the proposed hourly rate." *Id.* (citation omitted). However, "[t]he trial court itself is also considered an expert as to the reasonableness of the fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees." *Bevill v. City of Quitman*, 2025 WL 2470073, at *5 (E.D. Tex. Aug. 27, 2025) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)).

Here, the Court finds that the hourly rates Plaintiffs' Counsel charged in litigating this case are reasonable. To begin, the fact that Defendant does not contest the reasonableness of the hourly

25-40774.2504

rates charged by Plaintiffs' Counsel is, on its own, significant. Indeed, where the reasonableness of the hourly rates are not contested by Defendant, they are considered *prima facie* reasonable. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2018 WL 1602460, at *7 (E.D. Tex. Apr. 3, 2018) (citation omitted) (finding that plaintiff's rates are *prima facie* reasonable where defendants do not contest the reasonableness of plaintiff's rates); *Regions Equip. Fin. Corp. v. AT 2400 Off. No. 530775*, 2018 WL 4856776, at *3 (E.D. Tex. Sept. 18, 2018) (citation omitted) (finding that plaintiff's rates are presumptively reasonable where defendant did not respond at all, much less oppose plaintiff's hourly rates). Even if the Court does not treat the rates as *prima facie* reasonable, a finding of reasonableness of the hourly rates at issue is still warranted. Specifically, courts throughout this district—including this Court—have commonly held that rates similar to those charged by Plaintiffs' Counsel are reasonable. *See, e.g.*, *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding that a range from $450 to $860 per hour to be reasonable rates); *Imperium IP Holdings (Cayman), Ltd.*, 2018 WL 1602460 at *7–8 (approving rates as great as $1,100 per hour in a complex commercial litigation); *Cruson v. Jackson Nat'l Life Ins. Co.*, 2021 WL 3702483, at *3 (E.D. Tex. June 4, 2021) (awarding attorney's fees at rates of $823.94 and $951.22, respectively, for two McKool Smith attorneys in a complex commercial case). For the higher hourly rates that Plaintiffs' Counsel seeks to recover—ranging from $1,295 to $1,750—the Court has been unable to find any other similar complex cases in either the Eastern or Northern District of Texas that have awarded attorneys' fees at these higher billing rates (i.e., $1,295 to $1,750).[13] This does not, however, prevent the Court from awarding Plaintiffs' Counsel's

---

[13] The highest hourly rate that this Court could find in a complex commercial case was up to $1,100 an hour. *See Imperium IP Holdings (Cayman), Ltd.*, 2018 WL 1602460 at *7–8.

25-40774.2505

attorney's fees at those higher rates. Indeed, the district court "itself is also considered an expert as to the reasonableness of the fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees." *Bevill*, 2025 WL 2470073, at *5 (citation omitted). Here, the Court finds that the higher billing rates (ranging from $1,250 to $1,750 per hour) charged by Plaintiffs' Counsel in this case are reasonable considering the novelty and complexity of the issues in this case.[14] Indeed, according to Mr. Burns, an experienced litigator who focuses on complex class action cases, Plaintiffs' Counsel is one of the few, if not the only, firms that could handle this type of complex, nationwide antitrust class action litigation (*See* Dkt. #199-5 at ¶ 8).

### C.    The *Johnson* Factors

Typically, after determining the lodestar the Court would need to determine whether the lodestar value should be adjusted either upwards or downwards based on the twelve *Johnson* factors. *See Cruz*, 957 F.3d at 574 (citation modified) (explaining that "[a]fter the lodestar method is applied, courts use a twelve-factor test to determine whether counsel's performance requires an upward or downward adjustment from the lodestar."). However, neither Plaintiffs' Counsel nor Defendant argue for an adjustment to the lodestar in this case (*See* Dkt. #199 at pp. 18–19 (arguing that the Johnson factors *would* support a fee award in the amount of the lodestar without the multiplier they applied to their requested award, however, Plaintiffs' Counsel is not requesting an award for that amount)). Indeed, Plaintiffs' Counsel seeks an award for *less* than the lodestar amount in this case. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *13 (N.D.

---

[14] *See* Dkt. #199-1 at ¶ 28 (proving that "[t]his suit is one of only two successful post-merger Section 7 challenges this century—and also appears to be the only antitrust class action with an outcome favorable to a plaintiff in the Fifth Circuit in the last twenty years, as well as the first successful class action challenging practices related to payment for order flow.").

Tex. Apr. 25, 2018) ("Because there is a strong presumption that the lodestar represents a reasonable fee . . . the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable."). Accordingly, the Court finds that Plaintiffs' Counsel's requested fee of $8,250,000, which is 76.3% of their lodestar, is reasonable.

* * *

In sum, the Court finds that an award of Plaintiffs' Counsel's attorney's fees in the amount of $8,250,000 is warranted in this case. More specifically, both the total hours and the hourly rates charged by Plaintiffs' Counsel are more than reasonable given the complexity and novelty of the issues in this case. Moreover, the fact that Plaintiffs' Counsel's requested fee award is both unopposed by Defendant and less than their lodestar weighs heavily in favor of a finding of reasonableness. Accordingly, Plaintiffs' Counsel's request for an attorney's fees award of $8,250,000 is hereby **GRANTED**.

## II.    Litigation Expenses

The Court now  turns to Plaintiffs' Counsel's request for the litigation expenses they incurred in this case. Plaintiffs' Counsel requests an award of $686,492.60 for the costs incurred in connection with litigating this case (Dkt. #199 at p. 25). These expenses include the costs incurred for filing fees, e-discovery, expert witnesses and consultants, court reporting and videographers for depositions, and travel (*See* Dkt. #199-1; Dkt. #199-2; Dkt. #199-3; Dkt. #199-4). A significant amount—87% of the requested expenses, or $596,547.81—was spent on the fees for the expert services they retained for this case (Dkt. #199-4 at p. 8). Plaintiff's Counsel argues that their costs are reasonable and reflect the usual and customary charges for expenses that are part of the costs that would have been billed to the client if this case had been a non-contingency matter (Dkt. #199-3 at ¶ 10). Plaintiffs' Counsel emphasizes that their expert expenses, in particular, are

25-40774.2507

appropriate and modest given the complexity of the case, the volume of the data analyzed, and the difficulty inherent to financial markets (Dkt. #199 at p. 25). At the time of the Settlement, Plaintiffs' experts were working on a statistical analysis to the test their hypothesis that the Merger caused reduced price improvements on trades, which required a review of 6.5 terabytes of trade data (encompassing 6.4 billion trades) from 2019 to 2023 (Dkt. #199 at p. 25).

Rule 54 of the Federal Rules of Civil Procedure permits a prevailing party to collect the fees, other than attorney's fees, incurred by counsel in connection with prosecuting the case. *See* FED. R. CIV. P. 54(d)(1) ("Unless a federal statue, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). To determine which expenses are compensable, courts in the Fifth Circuit "adhere to the principle that reasonable out-of-pocket expenses that are part of the costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award." *Copeland v. Alamo Billing Co.*, 2021 WL 7500786, *10 (E.D. Tex. Dec. 17, 2021) (citation omitted).

Here, the Court finds that Plaintiffs' Counsel are entitled to a reimbursement of $686,492.60 for the reasonable and necessary costs they incurred in prosecuting this case and achieving the Settlement. Each of the expenses that Plaintiffs' Counsel seeks to recover—which include the costs incurred for filing fees, e-discovery, expert witnesses and consultants, court reporting and videographers for depositions, and travel—have routinely been found to be reasonable out-of-pocket expenses incurred in connection with the prosecuting a case. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *34 (N.D. Tex. Nov. 8, 2005) (awarding plaintiffs' counsel their reasonable expenses in the amount of $541,203.77 which included expenses for transportation, means and lodging, in-house and outsourced photocopying, computerized and on-

25-40774.2508

line research, court reporting fees and depositions transcripts, telephone and facsimile, overnight courier service, purchase of special materials, postage, and other services). Indeed, courts in this circuit have approved expense awards for significantly higher amounts than are at issue here. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *14 (awarding plaintiff's counsel their reasonable expenses in the amount of $5,969,540.84 which included expenses for experts and consultants, document maintenance, legal research, and mediation fees). Accordingly, Plaintiffs' Counsel's request for an award of $686,492.60 in litigation expenses is hereby **GRANTED**.

### III.    Service Awards

Lastly, the Court turns to Plaintiffs' Counsel's final request which seeks a service award of $5,000 for each of the Class Representatives in connection with litigating the claims in this action on behalf of the Settlement Class (Dkt. #199 at p. 26). Plaintiffs' Counsel argues that the service awards the Class Representatives request are fair and reasonable in light of their efforts and diligence that they have expended over the last three years in litigating this case (Dkt. #199 at pp. 26–27). More specifically, the Class Representatives have meaningfully participated in discovery, including working with counsel to identify and produce detailed financial records from all retail brokerages where they had accounts over a multi-year period, responding to one set of interrogatories and requests for admissions, and preparing responses to a second set of interrogatories that ultimately were not served due to the case settling (Dkt. #199 at pp. 26–27). Additionally, the Class Representatives also reviewed pleadings, motions, and other documents and frequently communicated with Plaintiffs' Counsel concerning the status of the case, court documents, strategy, and the Settlement (Dkt. #199 at p. 27). Moreover, Plaintiffs' Counsel emphasizes that the amount requested is consistent with, or less than, awards granted in similar

cases including those where only injunctive relief was obtained by the class (Dkt. #199 at p. 27). The Court agrees with Plaintiffs' Counsel.

In class action lawsuits, "[c]ourts may approve service awards to named plaintiffs if the awards are fair and reasonable." *Roberts v. Baptist Healthcare Sys., LLC*, 2023 WL 5163374, at *7 (E.D. Tex. June 29, 2023) (citation modified). However, "service awards are not always merited." *Id.* (citation omitted). To decide whether a service award is warranted, courts consider: "(1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citation omitted). Courts may also look to the "percentage of the service award compared to the common fund or compare the amount to awards given in similar litigation." *Id.* (citation omitted).

Here, the Court finds that the requested service award of $5,000 to each of the Class Representatives in this case is fair and reasonable and thus warrants its approval. Over the last three years that this case has been litigated the Class Representatives have expended a considerable amount of time and effort to ensure that a meaningful result was achieved not only for themselves but also for each and every member of the Settlement Class. Their efforts have included, among other things, participating in discovery, reviewing important court documents, frequently communicating with counsel about the status of the case and the strategy relating to same, and making recommendations as to whether or not to accept a particular settlement offer (*See* Dkt. #197-3 at ¶¶ 9–10; Dkt. #197-4 at ¶¶ 9–10; Dkt. #197-5 at ¶¶ 9–10). *See Lee v. Metrocare Servs.*, 2015 WL 13729679, at *4 (N.D. Tex. July 1, 2015) ("Courts have awarded incentive payments to class representatives to compensate them for activities including participation in the settlement process,

25-40774.2510

oral and written discovery, depositions, and hearings."); *see also Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving incentive payments as compensation to lead plaintiffs for responding to discovery and evaluating settlement proposals among other things). Additionally, the Settlement Class has significantly benefited from the actions of the Class Representatives. Specifically, the antitrust compliance program provided for by the Settlement will result in a substantial monetary benefit to the Settlement Class (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvements between $10.7 million and $14.5 million per month for Schwab brokerage customers)). Moreover, the amount requested ($5,000 for each Class Representative) is consistent with award amounts routinely approved by district courts in the Fifth Circuit. *See Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) (citation modified) (finding that "[d]istrict courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff" to compensate named plaintiffs for the services they provide). Accordingly, Plaintiffs' Counsel's request for a service award of $5,000 to each Class Representative is hereby **GRANTED**.

## IV.    Objectors' Arguments

As discussed above, Defendant does not object to any of the fee awards requested by Plaintiffs' Counsel in this instant motion. The Court did, however, receive objections about the requested fee awards from some members of the Settlement Class. Generally, the Objectors took issue with the following: (1) the value of the relief to the class in relation to the requested attorney's fees and costs; (2) the fairness of the requested service award of $5,000 for each Class Representative; (3) the hourly rates charged by Plaintiffs' Counsel and (4) the notice provided to the class of Plaintiffs' Counsel's request for attorneys' fees. The Court addresses each category of

19

objection in turn. Ultimately, the Court finds that none of the objections have merit and thus does not prevent the Court from approving Plaintiffs' Counsel's request fees.

A.    **The Value of the Relief to the Class in Relation to the Requested Attorney's Fees and Costs**

Most of the fee-related objections, in some form or another, take issue with the value of the relief to the class in relation to the requested attorney's fees and costs.[15] Some of the objections are couched in boilerplate language (*See e.g.*, Dkt. #166 at p. 1; Dkt. #181 at p. 1; Dkt. #187 at p. 1; Dkt. #188 at p. 1; Dkt. #192 at p. 1; Dkt. #210 at p. 1; Dkt. #234 at p. 1; Dkt. #261 at p. 1 ("While I understand attorneys are entitled to compensation, the amount requested appears grossly disproportionate to the actual, practical benefit delivered to the class members.")). Other objections, including those submitted by Gavin Rossi[16] and the State of Iowa[17], are more fully developed. Regardless of the wording, it appears each of these objections relate to the eighth *Johnson* factor: "[t]he amount involved and the results obtained." *Johnson*, 488 F.2d at 718 (citation modified). Put simply, the Objectors argue that Plaintiffs' Counsel's requested fee award is unfair given the lack of a tangible monetary benefit to the class members under the Settlement.

The Court finds that the objections relating to the value of the relief provided to the class in relation to the requested attorney's fees and costs are without merit and thus does not prevent the Court from approving Plaintiffs' Counsel's requested fees. Where, as here, the class action

---

[15]  *See* Dkt. #161; Dkt. #165–69; Dkt. #171–73; Dkt. #176; Dkt. #179; Dkt. #181; Dkt. #187–88; Dkt. #192–94; Dkt. #208; Dkt. #210; Dkt. #217; Dkt. #220; Dkt. #223–27; Dkt. #234–38; Dkt. #240; Dkt. #242; Dkt. #245–46; Dkt. #248; Dkt. #251–52; Dkt. #255–57.

[16]  Arguing that "[t]he request for $8.25 million in Attorney's fees and $700,000 in expenses is not tethered to any tangible, monetary, or measurable benefit for the class" (Dkt. #176 at pp. 8–9).

[17]  Arguing that "Plaintiffs achieved none of the goals they set forth in their complaint, yet Plaintiffs' counsel seeks $8,250,000 in fees at a rate of more than $731 per hour" (Dkt. #245 at p. 15).

25-40774.2512

settlement contains injunctive only relief, making it difficult to value the monetary benefit provided to the class, the requested fee award cannot be justified (or undermined) based upon a comparison of the speculative dollar value of the injunctive relief provided by the settlement. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 337 (W.D. Tex. 2009) (citation omitted); *Stiner v. Brookdale Senior Living*, 2025 WL 1676276, at *5 (N.D. Cal. June 13, 2025) (citing *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)) ("Because injunctive relief is inherently difficult to monetize . . . courts tend to use the lodestar method in injunctive relief class actions."). Instead, to determine the appropriate attorney's fee award in a case with injunctive only relief, courts use the lodestar method, which compensates the attorneys based on their reasonable time and rates. *DeHoyos*, 240 F.R.D. at 337. As already discussed at length by the Court above, Plaintiffs' Counsel's properly justified their requested fee award using the lodestar method, which the Court found adequately reflected their reasonable hours and rates in this case. *See supra* Section I. Thus, the Objectors attempt to undermine the requested fee award by comparing it to the speculative value of the injunctive relief provided by the Settlement is not a proper basis to object. *See id.* at 336–37 (overruling the objections to the requested attorneys' fees that were based on a comparison between the requested fees and the value of the injunctive only relief provided in the class action settlement). Nevertheless, even if Plaintiffs' Counsel had to justify their attorney's fee award based on the value of the injunctive relief provided by the Settlement, the Court finds that Plaintiffs' Counsel has easily done so in this case (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price improvements between $10.7 million and $14.5 million per month for Schwab brokerage customers)). Accordingly, the objections to the requested attorney's fees based on the value of the relief provided to the class are **OVERRULED**.

25-40774.2513

**B.    The Fairness of the Requested Service Award of $5,000 to Each Class Representative**

The Court will now address the objections relating to the requested service award of $5,000 to each of the Class Representatives.[18] Most of the objections (5 out of the 6 objections) oppose the requested service awards on the grounds of fairness, not reasonableness. Generally, these Objectors argue that a service award of $5,000 to each Class Representative is unfair considering that the remaining class members receive no direct financial benefit from the Settlement (*See* Dkt. #171 at p. 1; Dkt. #173 at p. 1; Dkt. #176 at pp. 9–10; Dkt. #242 at pp. 1–2; Dkt. #245 at pp. 8–9). One objector, David Simon, however, objects to the reasonableness of the requested service award at issue. More specifically, Simon argues that "[t]he proposed service awards lack clear documentation or rationale. Without evidence of substantial time and effort invested by the named plaintiffs, awarding such bonuses is unjustified, particularly when other class members receive little to no compensation" (Dkt. #248 at p. 1). The Court addresses each of these service award objections in turn.

Turning first to the objections relating to the fairness of the requested service fee award in this case, the Court finds that the Objectors' fairness objections are without merit. Specifically, these Objectors fail to consider, address, or rebut that the service award requested in this case is consistent with the award amounts that are routinely approved by the district courts in the Fifth Circuit. *See Duncan*, 2016 WL 4419472, at *16 (citation modified) (finding that "[d]istrict courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff."). Nor do these Objectors provide any argument as to why the Court should depart from the service awards granted in cases

---

[18]   *See* Dkt. #171; Dkt. #173; Dkt. #176; Dkt. #242; Dkt. #245; Dkt. #248.

25-40774.2514

similar to this one (*See* Dkt. #199 at p. 27 (citing cases approving service awards of $5,000, $15,000, $9,900, $40,000, and $80,000 in injunctive-only class action settlements)). *See Roberts*, 2023 WL 5163374, at *7 (citation omitted) (explaining that to determine whether a service award is warranted to the representative plaintiffs, courts consider, among other things, the amount to awards given in similar litigation). Accordingly, the objections relating to the requested service award of $5,000 for each Class Representative are **OVERRULED**.

Next, the Court addresses Simon's objection that the requested service awards "lack clear documentation or rationale" (Dkt. #248 at p. 1). Here, the Court similarly finds that this objection is without merit. As discussed in more detail above, the Class Representatives have submitted affidavits demonstrating that they have spent a considerable amount of time and effort in litigating this case. Indeed, these affidavits describe, in detail, the work they have done on this case over the last three years (*See* Dkt. #197-3 at ¶¶ 9–10; Dkt. #197-4 at ¶¶ 9–10; Dkt. #197-5 at ¶¶ 9–10 (providing that the Class Representatives have participated in extensive discovery, reviewed important court documents, frequently communicated with counsel about the status of the case and strategy relating to same, and made recommendations as to whether to accept a particular settlement or not)). *See Lee*, 2015 WL 13729679, at *4 ("Courts have awarded incentive payments to class representatives to compensate them for activities including participation in the settlement process, oral and written discovery, depositions, and hearings."). Additionally, the Class Representatives' Declarations include an estimate of the total hours they have each spent working on this case (*See* Dkt. #266-5 at ¶ 5; Dkt. #266-6 at ¶ 5; Dkt. #266-7 at ¶ 5 (providing that the Class Representative estimate they have spent a total of 30–40 hours of time working on this case with

25-40774.2515

counsel from its inception to present)). Accordingly, the objection relating to the requested service award of $5,000 for each Class Representative is **OVERRULED**.

## C.    Reasonableness of Plaintiffs' Counsel's Hourly Rate

The State of Iowa is the only Objector to challenge the calculation of Plaintiffs' Counsel's lodestar provided in Plaintiffs' Counsel's fee application (*See* Dkt. #245 at pp. 22–25). Specifically, this objection attacks the reasonableness of the hourly rates, the number of hours submitted, and the 0.763 multiplier applied by Plaintiffs' Counsel. The State of Iowa starts by arguing that Plaintiffs' Counsel's hourly rates in this case—ranging from $400 for attorneys focused on document review to $1,500 for senior partners (a blended rate of $731 per professional)—are "far out of range for the market in the Eastern District of Texas" (Dkt. #245 at p. 23). To support its argument, the State of Iowa relies solely on Judge Gilstrap's opinion in *Morrow v. City of Tenaha Deputy City Marshal Barry Washington*, 2020 WL 5534486 (E.D. Tex. Sept. 15, 2020) (*See* Dkt. #245 at pp. 22–24). According to the State of Iowa, the court in *Morrow* found that rates of $500 per hour are excessive for a partner in a complex class action civil rights case (Dkt. #245 at pp. 22–23). Thus, the State of Iowa argues that Plaintiffs' Counsel's blended rate of more than $731 per professional in this case is unreasonable and should be reduced (*See* Dkt. #245 at pp. 22–25).[19] Next, the State of Iowa argues, without providing any support, that the total "hours [worked by Plaintiffs' Counsel] are unreasonable" (Dkt. #245 at p. 24). Lastly, the State of Iowa argues that "given that most generously Plaintiffs achieved one of the three goals they pleaded in their complaint (no

---

[19] The State of Iowa contends that Plaintiffs' Counsel fee award should be $1,492,104.90 instead of their requested fee award of $8,250,000 (Dkt. #245 at pp. 23–25).

25-40774.2516

damages, no divestment or segregation) a lode-star adjustment multiplier of 0.33" is more appropriate in this case (Dkt. #245 at p. 25).

The Court finds that the State of Iowa's objection that Plaintiffs' Counsel's hourly rates in this case are unreasonable is without merit and thus does not prevent the Court from approving the requested fees. The State of Iowa's reliance on *Morrow* is misplaced for several reasons. First, the State of Iowa ignores the other, more recent, decisions in the Eastern District of Texas approving hourly rates similar to those rates at issue in this case. *See Cruson*, 2021 WL 3702483, at *3 (awarding attorneys fees at rates of $823.94 and $951.22 per hour in a complex commercial case after finding that "they are within the range of prevailing market rates for similar lawyers for similar services."). Second, the facts in *Morrow* are distinguishable from the facts in this case. In *Morrow*, the court held that rates of $500 per hour were excessive only after finding that the complexity of the case in more recent years has diminished with the attorney's bills being "currently for much less complex tasks that must be performed under the Consent Decree [which] do not require the skill—or billing rates—of a highly accomplished complex class action litigator." 2020 WL 5534486, at *4 (citation modified). This is not the case here. Plaintiffs' Counsel made sure to efficiently allocate the tasks so that the skilled complex class action litigators with the higher rates worked only on the complex tasks (i.e., key briefing and analysis) with the lower billing rate attorneys handling the less complex tasks (i.e., preliminary stage discovery and document review) (*See* Dkt. #199 at p. 13; Dkt. #199-1 at ¶ 31). Moreover, the lodestar calculation has a cutoff date of June 30, 2025, which means that unlike the attorney's bills in *Morrow*, Plaintiffs' Counsel's bills will not include fees for the less complex tasks that must be performed under the Settlement (*See* Dkt. #199-1 at ¶ 30 (providing that Plaintiffs' Counsel will not be seeking compensation for work performed after the

25

cut off date or for any future work in this matter including, but not limited to, assisting the Settlement Class and overseeing the design and implementation of Defendant's antitrust compliance program)). Accordingly, the State of Iowa's objection relating to the reasonableness of Plaintiffs' Counsel's hourly rates is **OVERRULED**.

The Court also finds that the State of Iowa's objections relating to the reasonableness of Plaintiffs' Counsels hours worked on this case (over 14,000 hours) and their requested 0.763 loadstar multiplier are similarly without merit and thus do not prevent the Court from approving the requested fees. The State of Iowa's objection to the reasonableness of the hours that Plaintiffs' Counsel have expended in this case seems to ignore several key facts: (i) the case has been litigated for over three years, which excludes a 15 month pre-suit investigation;[20] (ii) the complexity and novelty of the issues involved in this case;[21] and (iii) the extensive discovery conducted, which included approximately 218,319 documents (950,021 pages) and 6.5 terabytes of electronic data containing complex financial information.[22] Indeed, other courts in this Circuit have found significantly higher total hours billed in other complex class actions to be reasonable. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *13 (approving 67,721.5 hours billed by class counsel in a complex class action case). Thus, there is no question that the time spent by Plaintiffs' Counsel on

---

[20] *See* Dkt. #199-1 at ¶¶ 3–4 (providing that Plaintiffs' Counsel conducted an extensive pre-suit investigating, lasting approximately fifteen months, before filing the complaint in this case on June 2, 2022).

[21] *See* Dkt. #199-1 at ¶ 28 (proving that "[t]his suit is one of only two successful post-merger Section 7 challenges this century—and also appears to be the only antitrust class action with an outcome favorable to a plaintiff in the Fifth Circuit in the last twenty years, as well as the first successful class action challenging practices related to payment for order flow.").

[22] *See* Dkt. #199-1 at ¶¶ 8, 10 (providing that Defendant produced "approximately 218,319 documents comprising 950,021 pages, of which Plaintiffs have conducted a thorough review" and Defendant also produced "6.5 terabytes of financial data comprising approximate 6.4 trillion individual trades placed by Schwab and Ameritrade customers between 2019 and 2023."); Dkt. #199-1 at ¶ 13 (providing that Plaintiffs' Counsel "reviewed and analyzed nearly one million pages of discovery produced by Schwab, as well as public filings and reports lodged with the United States Securities Exchange Commission.").

25-40774.2518

this case (totaling more than 14,000 hours) is reasonable. The State of Iowa also objects to Plaintiffs' Counsel's requested 0.763 lodestar multiplier arguing that it should be reduced to a 0.33 lodestar multiplier (a reduction of more than half), because Plaintiffs' Counsel only achieved one of the three goals pleaded in the Complaint: no damages, no divestment, and no segregation (Dkt. #245 at p. 25). The Court disagrees. Although the Settlement does not achieve all three of the goals pleaded in the Complaint, Plaintiffs' Counsel have been able to reach a Settlement that provides a substantial monetary benefit to the class members going forward and, more importantly, prevents Defendant from engaging in the anticipative conduct that necessitated this lawsuit. Accordingly, the State of Iowa's objections relating to the reasonableness of Plaintiffs' Counsel's hours worked on this case (over 14,000 hours) and their requested 0.763 lodestar multiplier are **OVERRULED**.

### D.    Notice of the Plaintiffs' Counsel's Request for Attorney's Fees

Similarly, the State of Iowa is the sole objector to argue that the Settlement Class did not receive reasonable notice of Plaintiffs' Counsel's request for attorney's fees (*See* Dkt. #245 at pp. 25–26). Specifically, the State of Iowa argues that the Objectors did not have reasonable notice of the attorney's fees, nor did they have reasonable time to object to those fees because Plaintiffs' Counsel failed to post their attorney's fees motion on the Settlement website by the July 29th objection deadline (Dkt. #245 at pp. 25–26).[23] The Court disagrees.

Here, the Court finds that the State of Iowa's objection relating to notice of Plaintiffs' Counsel's request for attorney's fees is without merit and thus does not prevent the Court from approving Plaintiffs' Counsel's requested fees. Indeed, since March 5, 2025, the settlement website

---

[23] Indeed, the State of Iowa also contends that Plaintiffs' Counsel promised to post their Attorney's fee request on the settlement website by July 17 but failed to do so (Dkt. #248 at p. 25).

27

25-40774.2519

had a copy of the Notice of Proposed Class Action Settlement, which clearly stated that Plaintiffs' Counsel would "move for an award of up to $8,250,000 in attorney's fees, plus payment of no more than $700,000 for litigation expenses" (Dkt. #268-9 at ¶¶ 15–16). The settlement website also informed all class members that Plaintiffs' Counsel would be filing their attorney's fee motion by July 17, 2025, which, once published, would become part of the public record available to any and all persons (including non-class members) for review (Dkt. #268-9 at ¶ 15). However, even if the Court assumes that this did not provide the class members with reasonable notice of Plaintiffs' Counsel's request for attorney's fees, Plaintiffs' Counsel has agreed to treat all objections filed by August 13, 2025, as timely—which is an additional two weeks after the July 29th deadline (Dkt. #268 at p. 19). Thus, there is no question that the notice of Plaintiffs' Counsel's attorney's fee motion satisfied the broad reasonableness standards imposed by Rule 23 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(h)(1) (providing that in a certified class action, the notice of a party's motion for attorney's fees must be "directed to class members in a reasonable manner."). Accordingly, the State of Iowa's objection relating to receiving reasonable notice of Plaintiffs' Counsel's request for attorney's fees is **OVERRULED**.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards (Dkt. #199) is hereby **GRANTED**. Accordingly, the Court **ORDERS** that Plaintiffs' Counsel's request for an award of attorney's fees in the amount of $8,250,000 is hereby **GRANTED**. It is further **ORDERED** that Plaintiffs' Counsel's request for an award of litigation expenses in the amount of $686,492.60 is hereby **GRANTED**. It is further **ORDERED** that Plaintiffs' Counsel's request for service awards of $5,000 to each of

25-40774.2520

the Class Representatives in connection with litigating the clams in this action on behalf of the Settlement Class is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 24th day of November, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

25-40774.2521