No. 25-40774

IN THE

# United States Court of Appeals for the Fifth Circuit

JONATHAN CORRENTE; CHARLES SHAW; LEO WILLIAMS,
*Plaintiffs – Appellees*,

v.

THE CHARLES SCHWAB CORPORATION,
*Defendant – Appellee,*

v.

STATE OF IOWA, OBJECTOR; SHIYANG HUANG, OBJECTOR
*Appellant*.

On Appeal from the United States District Court
for the Eastern District of Texas
4:22-cv-00470
(The Honorable Amos L. Mazzant, III)

## RESPONSE TO PLAINTIFF-APPELLANT'S MOTION TO DISMISS

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov

March 6, 2026

*Counsel for Appellant State of Iowa*

## TABLE OF CONTENTS


TABLE OF CONTENTS .......... i
TABLE OF AUTHORITIES .......... ii
INTRODUCTION .......... 1
BACKGROUND .......... 2
I. Statutory Background .......... 2
II. Factual Background .......... 4
ARGUMENT .......... 6
I. Settlement Approval Harmed Iowa Consumers, Conferring Article III Standing on Iowa And Iowa's Attorney General .......... 6
A. The Class Action Fairness Act Recognizes Protectable Interests to Grant Iowa Standing .......... 6
1. This Settlement May Extinguish Iowa's Claims .......... 7
2. Iowa has Protectable Interests Under CAFA .......... 8
B. The Iowa Attorney General speaks as *parens patriae* for the interests of harmed class members and Iowa consumers .......... 14
C. Because Iowa timely objected, *Chapman v. Tristar* is distinguishable .......... 17
CONCLUSION .......... 22

## TABLE OF AUTHORITIES

Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
458 U.S. 592 (1982) .......... 14, 15, 16
*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) .......... 2, 7, 8, 13
*Chapman v. Tristar*,
940 F.3d 299 (6th Cir. 2019) .......... 16, 17, 18
*Huyer v. Njema*,
847 F.3d 934 (8th Cir. 2017) .......... 20
*In re Deepwater Horizon*,
857 F.3d 246 (5th Cir. 2017) .......... 21
*In re Flonase Antitrust Litig.*,
879 F.3d 61 (3d Cir. 2017) .......... 20
*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20,*
*2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) .......... 19, 20
*In re Packaged Ice Antitrust Litig.*,
No. 17-2137, 2018 WL 4520931 (6th Cir. May 24, 2018) .......... 18
*Knight v. Carrollton R. Co.*,
9 La. Ann. 284 (1854) .......... 4, 13
*Kurtz v. Kimberly-Clark Corp.*,
142 F.4th 112 (2d Cir. 2025) .......... 11, 16
*Paterson v. Texas*,
308 F.3d 448 (5th Cir. 2002) .......... 19
*Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1047 (8th Cir. 2013) .......... 8
*Sierra Club v. Robertson*,
960 F.2d 83 (8th Cir. 1992) .......... 14
*Terwilliger v. Reyna*,
4 F.4th 270 (5th Cir. 2021) .......... 21
*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) .......... 16
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 4, 13, 18

*Zimmerman v. GJS Group, Inc.*,
2017 WL 4560136 (D. Nev. Oct. 11, 2017) .......................................... 14

Statutes

28 U.S.C. § 1332(d) ........................................................................ 3
28 U.S.C. § 1715 ........................................ 2, 3, 8, 9, 11, 16, 17, 18, 19, 20
Iowa Code § 13.2 ........................................................................ 15
Iowa Code § 714.16(7) ........................................................................ 15

Rules

Fed. R. Civ. P. 23 ........................................................ 4, 6, 8, 13, 15, 16
Iowa R. Civ. P. 1.262–1.263 ........................................................................ 15

## INTRODUCTION

This motion to dismiss raises a threshold question at the core of State sovereignty in the framework Congress established for class action proceedings: Can a State Attorney General object and appeal the confirmation of a final class action approval to thwart a settlement that contravenes the Class Action Fairness Act ("CAFA"), violates Rule 23, and leaves the nationwide class worse off while class counsel makes millions of dollars?

Objection and appeal are warranted based not only on the harm the settlement does to consumer class members—it reflects the active role the Iowa Attorney General is playing in class action settlement approvals across the country. Congress has expressly asked Attorneys General to help ensure compliance with CAFA's requirements and drive increased value to consumers. And Iowa has heeded that call.

In many ways this is precisely the type of class action settlement proceeding in which intervention is warranted because absent intervention and appeal, there will be no appellate review or correction of the patent settlement approval errors. The active engagement of State

Attorneys General is perhaps most important where (as here) the proposed settlement fails to serve the interests of absent class members.

Finally, some circuit courts have found that a failure to object or intervene can extinguish a State's own claims arising from the same conduct. *California v. IntelliGender, LLC*, 771 F.3d 1169, 1181 (9th Cir. 2014). It would be perverse to find that a State lacks standing to object and also lacks standing later if it seeks to enforce its own consumer fraud laws.

This is an important issue antecedent to the appeal that this Court should resolve in favor of State's authority to stand up to ensure class action fairness: in their own stead, on behalf of their citizens, and at the invitation of Congress.

## BACKGROUND

### I. Statutory Background

The Class Action Fairness Act tasks Attorneys General with monitoring and protecting their citizens from class actions that violate Rule 23. *See* 28 U.S.C. § 1715(b). Indeed, even a cursory review of the statute's context shows the vital role Congress anticipated States would play in the class action process. S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3,

5 (requirement "that notice of class action settlements be sent to appropriate state and federal officials" exists "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens"); *id.* at 35 ("[N]otifying appropriate state and federal officials . . . will provide a check against inequitable settlements"); *id.* ("Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties.").

CAFA included codifying 28 U.S.C. § 1715, which created a new role for State Attorneys General in class action settlements. *See* Pub. L. No. 109-2, 119 Stat. 4 (2005). CAFA amended Title 28 of the U.S. Code to expand federal diversity jurisdiction over class actions (via 28 U.S.C. § 1332(d)), impose stricter scrutiny on class settlements (*e.g.*, via 28 U.S.C. §§ 1712-1714, limiting coupon settlements and attorneys' fees), and require notifications to government officials about proposed settlements (28 U.S.C. § 1715).

The statute addressed perceived abuses in class action litigation, including settlements that gave little value to class members while enriching attorneys, and state-court forum shopping that disadvantaged defendants and consumers alike. *See* 2005 U.S.C.C.A.N. at 14 (CAFA

protects consumers from settlements where "the attorneys receive excessive attorneys' fees with little or no recovery for the class members themselves."). The law helps "assure fairer settlements" in part by "providing notice to state Attorneys General so they can better protect their citizens against unfair settlement agreements." *Id.* at 63.

The Class Action Fairness Act's notice section can only be read as an invitation to States to participate in the class action settlement process and to preserve their right to object going back to the misty origins of class action settlements found in the bill of peace. *See Trump v. CASA, Inc.*, 606 U.S. 831, 847–48 (2025) ("The bill of peace lives in modern form . . . evolved into the modern class action, which is governed in federal court by Rule 23 of the Federal Rules of Civil Procedure."); *see also Knight v. Carrollton R. Co.*, 9 La. Ann. 284, 286 (1854) (citing *Mayor of York v. Pilkington*, 1 Atk. 284 (1737) (in which a government official in his official capacity used the bill of peace)).

## II. Factual Background

This appeal follows a class action settlement that rewards Plaintiffs' counsel with $9 million in attorneys' fees and costs brought against The Charles Schwab Corporation for its purchase of a competitor

formerly known as TD Ameritrade. *See* Dkt. 245 at 6. "Plaintiffs allege that, as a result of the anticompetitive effects of the merger, they pay higher prices for securities transactions due to reduced price improvements and rebates . . . and that they suffer diminished consumer choices." Dkt. 40 at 12. The typical equitable relief—albeit normally reserved for anticompetition actions brought by the federal government—is "divestiture." *Id.* The district court approved a settlement that compensated Plaintiffs for their damages claims—and gives no relief from the long-consummated merger. *See* Dkt. 245 (citing Dkt. 197).

Ultimately, the district court accepted Iowa as an objector and addressed Iowa's objections. The district court denied Iowa's objections, along with the other objections filed by class members. *See* Dkt. 285. The district court's opinion, in both approving final settlement and the $9 million in attorneys' fees, treated Iowa as a valid objector while overriding Iowa's objections. *See id.*; Dkt. 286.

## ARGUMENT

### I. Settlement Approval Harmed Iowa Consumers, Conferring Article III Standing on Iowa and Iowa's Attorney General.

This settlement is imbalanced, leaving millions of consumers worse off, and the Iowa Attorney General, through *parens patriae*, CAFA, and historical practice, is a proper party to serve the interests of the State of Iowa and Iowa consumer class members by intervening and appealing here. Iowa's interests here turn on the harm to consumers from the settlement, which sends most of the settlement value to class counsel (including all available cash), rewards named plaintiffs with settlement payments for damages claims that are unavailable to absent class members, and leaves the remaining 99% of class members worse off.

The harm to consumers, and the concomitant lack of compliance with Rule 23 and CAFA, give Iowa standing adequate to pursue an appeal to reverse the settlement approval. Indeed, credible allegations of consumer harm here justify standing.

#### A. The Class Action Fairness Act Recognizes Protectable Interests to Grant Iowa Standing.

The Iowa Attorney General has two independent, protectable interests apart from *parens patriae* that render the denial of intervention

legal error: protectable interests arising from: (1) CAFA specifically inviting participation, and (2) participation in the district court.

### 1. This Settlement May Extinguish Iowa's Claims.

At least one circuit court has held failure to object or intervene in a class action as an objector precludes later restitution or disgorgement relief by the State in an action brought by the Attorney General. *California v. IntelliGender, LLC*, 771 F.3d 1169, 1181 (9th Cir. 2014). In *IntelliGender*, California sought restitution different from the relief achieved in the class action settlement. *Id.* at 1180. Despite that, the court found that it was "axiomatic that final, court-approved settlements preclude class members from seeking the same relief for the same claims a second time"—and extended that principle to subsequent consumer actions brought directly by the State. *Id.* at 1180–81. Indeed, the Court recognized a participatory role in the class action settlement process and "in ensuring that citizens are equitably compensated in class action settlements." *Id.* at 1173.

In denying California's restitution, the Ninth Circuit held that its decision "does not deprive the State of the ability to protect its citizens—quite the contrary." *Id.* at 1182. Indeed, the Court continued, "CAFA's

notification requirements, § 1715, safeguards the State's ability to participate, comment, or object during the Rule 23 class action settlement approval process, fulfilling CAFA's purpose to 'provide a check against inequitable settlements.'" *Id.* (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1047, 1064 (8th Cir. 2013)).

That court elaborated that although "§ 1715 imposes [no] obligation on the State" it does not "expand the authority of" the State by allowing a subsequent recovery after a class action is settled. *Id.*

To the extent there is a reasonable chance that Iowa's own potential claim is extinguished, that deprivation of rights is direct and clear enough to justify standing alone. After all, if a State risks having a remedy and potential cause of action extinguished by resolution of a case, that direct interest justifies the State's interest to intervene (or here, object) in that case.

### 2. Iowa has Protectable Interests Under CAFA.

Beyond the direct harm to Iowa's potential and assertable rights, there are several reasons to read the Class Action Fairness Act as authorizing States to object in class actions.

First, CAFA establishes an express consumer protection role for State Attorneys General to perform in the federal class action settlement realm that mirrors the general citizen protection role that they have long played in myriad other contexts.. To facilitate State Attorney General participation, CAFA includes a mandatory notice provision that alerts the appropriate state officials (usually, the State's Attorney General) of proposed class action settlements that may affect their citizens. *See* 28 U.S.C. § 1715. And CAFA mandates that notice includes information detailing the state-specific number of class members, and prevents courts from approving a settlement "earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate state official are served with the notice required." *See* 28 U.S.C. § 1715. But these statutory requirements are meaningless if State Attorneys General did not also possess the authority to act on these notices.

Thus these CAFA requirements are more accurately read to convey to the States' Attorneys General a specific legal, statutory interest in speaking on behalf of class members against class-action settlements that are contrary to their citizens' interests. Legislative history and floor statements are clear on the intended role for a State Attorney General

who receives a CAFA notice. *See* S. Rep. 109-14, at 32 (2005) *reprinted in* 2005 U.S.C.C.A.N. 3, 32 (notice provision "is designed to ensure that a responsible state and/or federal official . . . is in a position to react if the settlement appears unfair to some or all class members"); *id.* at 33 (officials "have an opportunity to get involved if they think it is appropriate").

Indeed, bipartisan Senators recognized that CAFA authorizes State Attorneys General to weigh in on these vital matters of consumer protection. *See* Class Act. Fair. Act Legis. His. 31-B. Arnold & Porter LLP Legislative History P.L. 109-2, Class Action Fairness Act, Debate, Congressional Records – Senate (February 8, 2005) at *21 (remarks of Sen. Chuck Grassley of Iowa) ("We included [the notification] provision to help protect class members because such notice would provide State officials with an opportunity to object if the settlement terms are unfair to their citizens"); *id.* at *35 (remarks of Sen. Herb Kohl of Wisconsin) ("[T]his bill provides that state attorneys general are notified of proposed class action settlements. This encourages a neutral third party to weigh in on whether a settlement is fair for the plaintiffs and to alert the court if they do not believe that it is.").

The explicit tie of final approval to the timing of notification of State officials provides even more evidence of the anticipated role of State participation. 28 U.S.C. § 1715(d). "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate . . . State official are served with the notice required under subsection (b)." *Id.* That notice is clearly intended to give States, and their federal counterparts, time to weigh in and, if needed, timely object to settlement.

Consistent with CAFA and the intended role for state officials, State Attorneys General have stepped in on a wide variety of settlements. *See*, *e.g.*, *Kurtz*, 142 F.4th at 121 (vacating class settlement following argument from State coalition led by Iowa); *In re Google Inc. Cookie Placement*, No. 17-1480, Dkt. 29 (3d Cir. July 10, 2017) (brief of bipartisan state Attorney General coalition urging reversal of cy pres-only settlement). And those efforts have helped generate meaningful outcomes for consumers. *See*, *e.g.*, *Allen v. Similasan Corp.*, No. 12-cv-376, Dkts. 219, 223, 257, 261, 268 (S.D. Cal.) (after Arizona-led coalition filed amicus brief and District Court rejected initial deal, revised

settlement was reached that increased the cash recovery to the class from $0 to ~$700,000).

The active engagement of State Attorneys General is perhaps most important where (as here) the proposed settlement fails to serve the interests of absent class members and there is no mechanism for pro se objectors to modify the effect of the deal. CAFA is precisely "intended to combat the 'clientless litigation' problem." S. Rep. 109-14 at 34. And one of the sharpest manifestations of that problem is where a settlement benefits all the attorneys and parties except the absent class members—the kind of case (as here) in which the class counsel and defense counsel reach a deal that provides outsized compensation to class representatives, a broad release to the defendants, and millions in fees to class counsel, yet generates almost no consumer benefit.

Because "few (if any) plaintiffs closely monitor the progress of the case or settlement negotiations," Attorneys General have an ongoing responsibility under CAFA to protect their citizens when class counsel and the class representatives fail to protect the interests of absent class members—even if that requires appeal. S. Rep. 109-14 at 33. But absent intervention here, the duty that Congress has imposed on the Iowa

Attorney General will be thwarted in precisely the type of case where those interests are most important. *See IntelliGender*, 771 F.3d at 1172–73, 1182.

That also reflects the historical role of the ancient Bill of Peace. Indeed, CAFA's notice section can only be read as an invitation to States to participate in the class action settlement process and to preserve their right to object going back to the misty origins of class action settlements found in the bill of peace. *See CASA*, 606 U.S. at 847–48 (2025) ("The bill of peace lives in modern form . . . evolved into the modern class action, which is governed in federal court by Rule 23 of the Federal Rules of Civil Procedure."); *see also Knight v. Carrollton R. Co.*, 9 La. Ann. 284, 286 (1854) (citing *Mayor of York v. Pilkin*gton, 1 Atk. 284 (1737) (in which a government official in his official capacity used the bill of peace)).

CAFA requires that class action settlement notices be sent to State Attorneys General to give States an opportunity to participate in the settlement process. Here, Iowa timely filed an objection and timely appealed. This Court should not split from the other courts that have denied relief to States for failing to follow the Rule 23 process as Iowa did here.

### B. The Iowa Attorney General speaks as *parens patriae* for the interests of harmed class members and Iowa consumers.

Given the harm done by the as-approved settlement, and the settlement's imbalanced nature, the State's interests in the economic welfare of its citizens supports standing that is adequate to allow intervention for purposes of appeal. The State of Iowa, through the Iowa Attorney General, has protectable, quasi-sovereign interests in protecting Iowa consumers in this settlement—the Supreme Court has long recognized that each State has a "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). And the settlement here impairs the economic well-being of Iowan consumer class members. The State's interests in the economic welfare of its citizens thus supports standing for purposes of this appeal. *See*, *e.g.*, *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) ("[T]he State has an interest in protecting and promoting the state economy on behalf of all of its citizens."); *Zimmerman v. GJS Group, Inc.*, 2017 WL 4560136, at *5 (D. Nev. Oct. 11, 2017) (Nevada had "protectable

"interest[s] in the health and well-being—both physical and economic—of its residents in general.").

Iowa has a broad interest in protecting its consumers. The Supreme Court has explained that "[o]ne helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Snapp*, 458 U.S. at 607.

Indeed, Iowa law imposes an affirmative duty on the Attorney General to "[p]rosecute and defend" in all courts "all actions or proceedings, civil or criminal, in which the state may be a party or *interested*, when, in the attorney general's judgment, the interest of the state requires such action." Iowa Code § 13.2 (emphasis added).

And Iowa has done just that, enacting laws to protect its consumers from economic harm. *See*, *e.g.*, Iowa Code § 714.16(7) (authorizing disgorgement). For example, Iowa enacted its own version of Rule 23, which similarly requires a settlement to be fair, reasonable, and adequate for consumers. Iowa R. Civ. P. 1.262–1.263. By enacting unquestionably constitutional legislation and legal rules directly relating

to the fairness of class-action settlements, and consumer protection, the State has strong evidence that it possesses "standing . . . as *parens patriae*." *Snapp*, 458 U.S. at 607. And as this Court has recognized, when a statute creates an interest or procedural right, that weighs in favor of finding special solicitude for *parens patriae*-related standing. *See Texas v. United States*, 50 F.4th 498, 517 (5th Cir. 2022).

Indeed, most recently, the U.S. Court of Appeals for the Second Circuit agreed with the State of Iowa as amicus curiae, vacated a class-action settlement, and remanded to the district court to reassess that settlement. *See Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 121 (2d Cir. 2025).

Unlike in *Chapman v. Tristar*, 940 F.3d 299 (6th Cir. 2019), Iowa timely objected and the district court overruled Iowa's objections. *Compare* Dkts. 285, 286 (responding to Dkt. 245) *with Chapman*, 940 F.3d at 303 ("In the alternative, Arizona asked the court to recognize it as an objector to the settlement."). The district court's acceptance of Iowa's objection and obligation to respond to that objection conform with Rule 23 and with 28 U.S.C. § 1715.

### C. Because Iowa timely objected, *Chapman v. Tristar* is distinguishable.

*Chapman v. Tristar Products, Inc.* is the only post-CAFA case by a circuit court ruling on the propriety of State intervention in the class action settlement process. Unlike here, though, Arizona did not timely file an objection. Instead, Arizona moved to intervene and only objected in the alternative. 940 F.3d at 303. The appeal thus focused on intervention rather than standing as a State to object.

That is an important formal distinction for each of the two shared arguments that Iowa presents here today: standing authorized by CAFA and *parens patriae*. Of course, *Chapman* did not address and thus did not contemplate the *IntelliGender* issue of extinguishing the State's own rights. As movants recognize, 28 U.S.C. § 1715(f) is not "construed to expand the authority of, or impose any obligations, duties, or responsibilities upon Federal or State officials." *Chapman*, 940 F.3d at 307. In *Chapman*, that was a basis to deny Arizona special solicitude to intervene or to file an objection untimely. But here, Iowa is not seeking to intervene as a separate party—instead, Iowa merely asserted its rights under § 1715 and timely filed its *own* objection. That is a significant basis to depart from *Chapman*'s reasoning. Indeed, even the Sixth Circuit has

recognized (albeit in an unpublished opinion) that 28 U.S.C. § 1715 authorizes Attorneys General to file "objections to [a] proposed settlement agreement." *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *7 (6th Cir. May 24, 2018).

So too for the logic of *parens patriae* for intervention as opposed to standing either as an objector or through the vehicle of a settlement-foreclosed consumer protection action under Iowa's own chapter 714. *Cf. Chapman*, 940 F.3d at 305–06. While the rights asserted by would-be intervenor Arizona in *Chapman* put Arizona in the same place as "a nominal party," as an objector here, Iowa is playing the prescribed role of an interested monitor in the fairness of class actions. *Id.* at 305.

Subsequent developments also undermine *Chapman*, such as the United States Supreme Court's consideration of the historical basis of Rule 23 in the Bill of Peace, which weighs more strongly in favor of finding a role for the State to participate. *See CASA*, at 847–48 (citing *How v. Tenants of Bromsgrove*, 1 Vern. 22, 23 Eng. Rep. 277 (1681) (referring to a suit brought by a lord against collective tenants)). The Court highlighted all the procedural requirements and import of those requirements to avoid "forging a shortcut to relief"—and, of course, as

codified in CAFA, that includes the notification and potential State participation through their Attorneys General. *See* 28 U.S.C. § 1715.

Plaintiffs' reliance on pre-CAFA *Paterson v. Texas*, 308 F.3d 448 (5th Cir. 2002) and the district court's judgment relying on *Paterson* in *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) fare no better. *See Mot. to Dismiss at 8*–9. Each case Plaintiffs point to, aside from *Deepwater Horizon*, predate CAFA and CAFA's explicit codification of § 1715—and with it an explicit role for States to play in class actions.

Plaintiffs' reliance on *Deepwater Horizon*, which denied the Gulf States standing to object, because they "are obviously not members of the settlement class," relied exclusively on cases that predate CAFA. *Deepwater Horizon*, 910 F. Supp. 2d at 943. That outdated reasoning should not persuade this Court. The Court rejected Louisiana and Mississippi's claims that forcing them to spend more was enough to create standing to object, because such a result would allow States to frequently object. *Id.* While the result is correct, the analysis is flawed. And it likely flows from the equally flawed analysis finding that 28 U.S.C.

§ 1715 was not intended to authorize State objections or interventions in settlement disputes. *Id.*

Indeed, while Louisiana was denied the opportunity to intervene in *Deepwater Horizon*, in a different case, a federal circuit court implied that Louisiana could have chosen to intervene in a class action lawsuit—and that had it done so, it would have implicated sovereign immunity. *See In re Flonase Antitrust Litig.*, 879 F.3d 61, 68 (3d Cir. 2017). Relevant here, the Third Circuit's decision not to abrogate Louisiana's sovereign immunity depended in part on Louisiana's lack of action after receiving CAFA notice. *Id.* at 70.

Analytically, that requires the Court to have found that some action could have been possible—otherwise there would be no reason to expand on the point at all. The Court recognized that Louisiana could have entered the fray "as a litigant" but "fail[ed] to act." *Id.* at 69. It could have entered the fray because of the same interests at issue here.

The Eighth Circuit also recognized that a challenge to the notice provided under 28 U.S.C. § 1715(b) could not be appealed because the challenge was waived. *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017). Here, Objector Iowa timely raised its concern with the faulty notice in

the district court. *See* Dkt. 245. And as for waiver, Objector Iowa affirmatively explained why it had standing to object in its filing. *See id.* Yet neither party responding to objections nor the district court challenged Iowa's standing then.

Thus, while *Chapman* is not binding in this Court, the differences between the procedural posture in *Chapman* and this case warrant different results. This Court should deny the motion to dismiss for lack of standing—if Iowa cannot object that defeats not only CAFA's purpose but also risks extinguishing Iowa's own potential claims.

And finally, Objector Iowa raised the potential standing issues in its objection but those arguments were not raised by Plaintiffs in their response to the objection. Nor did the district court address standing in its order granting final approval and fees. *See* Dkts. 285, 286. An argument "not raised before the district court . . . is . . . waived and cannot be raised for the first time on appeal." *Terwilliger v. Reyna*, 4 F.4th 270, 279 n.2 (5th Cir. 2021) (quoting *In re Deepwater Horizon*, 857 F.3d 246, 251 (5th Cir. 2017) (cleaned up). Here, the standing argument was not raised below and thus should be considered forfeit.

## CONCLUSION

This Court should deny the motion to dismiss.

## REQUEST FOR ORAL SUBMISSION

Objector-Appellant State of Iowa recognizes that this antecedent issue to the appeal is important and risks creating a circuit split. Thus, Objector-Appellant respectfully requests to be heard at argument on this motion to dismiss. *See* Fed. R. App. P. 27(e).

Respectfully submitted,


BRENNA BIRD
*Attorney General*

*/s/ Eric H. Wessan*
ERIC H. WESSAN
*Solicitor General*
BREANNE STOLTZE
*Assistant Solicitor General*
IOWA ATTORNEY GENERAL'S OFFICE
1305 E. Walnut St.
Des Moines, IA 50319
Phone: (515) 823-9117
eric.wessan@ag.iowa.gov

## CERTIFICATE OF COMPLIANCE

Consistent with Rule 27(d)(2) of the Federal Rules of Appellate Procedure, this brief contains 4,218 words, excluding the parts of the document exempted by Rule 32(f), and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6), as required by Rule 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Eric H. Wessan*
Eric H. Wessan