No. 25-40774

# In the United States Court of Appeals for the Fifth Circuit

JONATHAN CORRENTE; CHARLES SHAW; LEO WILLIAMS,

*Plaintiffs – Appellees*,

v.

THE CHARLES SCHWAB CORPORATION,

*Defendant – Appellee*,

v.

SHIYANG HUANG, OBJECTOR; STATE OF IOWA, OBJECTOR,

*Appellants*.

On Appeal from the United States District Court for the Eastern District of Texas
Hon. Amos L. Mazzant, III, No. 4:22-cv-470

# PLAINTIFFS-APPELLEES' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE APPEAL OF THE STATE OF IOWA


CHRISTOPHER M. BURKE
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
(619) 369-8244

ALLISON WATSON
**BATHAEE DUNNE LLP**
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
(213) 458-7075

BRIAN J. DUNNE
EDWARD M. GRAUMAN
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, Texas 78746
(512) 575-8848

YAVAR BATHAEE
PRISCILLA GHITA
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, New York 10022
(332) 322-8835

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. IOWA HAS NOT IDENTIFIED ANY INJURY TO THE STATE .......... 2

A. CAFA Did Not Confer a Legally Protected Right on Iowa, Let Alone Constitutional Injury. .......... 3

B. Even If CAFA Had Conferred a Right, It Would Not Substitute for Article III Injury. .......... 5

II. IOWA'S *PARENS PATRIAE* THEORY FAILS .......... 6

A. Iowa's Supposed Interest Is Undifferentiated from Those of Class Members .......... 6

B. Iowa's Counterarguments Do Not Withstand Scrutiny. .......... 9

III. THERE HAS BEEN NO FORFEITURE .......... 11

CONCLUSION .......... 11

CERTIFICATE OF COMPLIANCE .......... 13

## TABLE OF AUTHORITIES

### Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*,
458 U.S. 592 (1982) ....... 7, 9

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ....... 6

*Audler v. CBC Innovis Inc.*,
519 F.3d 239 (5th Cir. 2008) ....... 2

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) ....... 6, 8, 9

*Chapman v. Tristar Products, Inc.*,
940 F.3d 299 (6th Cir. 2019) ....... 4, 8, 11

*Dominion Ambulance, LLC v. Azar*,
968 F.3d 429 (5th Cir. 2020) ....... 3

*Escalante v. Lidge*,
34 F.4th 486 (5th Cir. 2022) ....... 10

*Huyer v. Njema*,
847 F.3d 934 (8th Cir. 2017) ....... 7

*In re Deepwater Horizon*,
857 F.3d 246 (5th Cir. 2017) ....... 7

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*,
910 F. Supp. 2d 891 (E.D. La. 2012) ....... 8

*In re Packaged Ice Antitrust Litig.*,
No. 17-2137, 2018 WL 4520931 (6th Cir. May 24, 2018) ....... 9

*Iowa ex rel. Miller v. Block*,
771 F.2d 347 (8th Cir. 1985) ....... 8

*Kurtz v. Kimberly-Clark Corp.*,
142 F.4th 112 (2d Cir. 2025) ....... 5

## TABLE OF AUTHORITIES

**Cases**
(*continued*)

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................6

*Paterson v. Texas*,
308 F.3d 448 (5th Cir. 2002) .......................................................................2

*People ex rel. Hartigan v. Cheney*,
726 F. Supp. 219 (C.D. Ill. 1989) .................................................................8

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
45 F.4th 816 (5th Cir. 2022) .........................................................................5

*Robertson v. Intratek Computer, Inc.*,
976 F.3d 575 (5th Cir. 2020) .......................................................................4

*Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*,
32 F.3d 205 (5th Cir. 1994) .......................................................................10

*Russello v. United States*,
464 U.S. 16 (1983).......................................................................................3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................5

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....................................................................................6

*Terwilliger v. Reyna*,
4 F.4th 270 (5th Cir. 2021) ..........................................................................7

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) .......................................................................10

## TABLE OF AUTHORITIES

### Cases
(*continued*)

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4, 5

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 11

### Statutes and Rules

28 U.S.C. § 1715(f) .......... 3

IOWA CODE § 13.2 .......... 9

IOWA CODE § 714.16(7) .......... 10

IOWA R. CIV. P. 1.262-1.263 .......... 9

### Other Sources

S. Rep. No. 109-14 (2005) .......... 4

## INTRODUCTION

The State of Iowa lacks Article III standing for its appeal. It was not a party to the underlying litigation, it is not a class member, and it has identified no concrete injury to itself from the challenged settlement. Plaintiffs-Appellees' opening brief on this motion confronted a series of dubious bases the state raised in its objection below—supposed CAFA notice injury, a generic Iowa statute, and mine-run *parens patriae* principles—and explained why that "spaghetti-at-the-wall" litany simply didn't support injury and standing in this case, for this appeal. (Mot. at 13–16.)

Iowa's response is now in, and (bad news for the wall) it's the same spaghetti. Iowa again points to CAFA's notice requirements, 28 U.S.C. § 1715 *et seq.*, and argues they confer upon the State a procedural injury that allows it to sue. But this argument is foreclosed by the actual text of section 1715, which expressly creates a limited, defined remedy for violation of notice requirements, *id.* § 1715(e), confers it upon "class members" only, *id.*, and states that "[n]othing in this section shall be construed to expand the authority of . . . Federal or State officials," *id.* § 1715(f). Moreover, even if CAFA—contrary to its express terms—did somehow create an enforceable procedural right for state enforcers, that alone would not confer upon Iowa constitutional standing and injury, as the Supreme Court (and this one) has repeatedly emphasized.

Iowa's *parens patriae* rationale for jurisdiction fares no better. The state interests Iowa offers are entirely undifferentiated from those of class members, who are parties to this case and have themselves participated in the objection and certification process, both here and below. Every court to confront the sweeping *parens patriae* theory offered here by Iowa has rejected it as failing the Supreme Court's *Snapp* test—and they have been right to do so.

Perhaps recognizing the weakness of its substantive footing, Iowa also claims forfeiture. But it is axiomatic that subject matter jurisdiction can be neither manufactured nor waived. Iowa did not have constitutional standing below; it does not have it here; and no principle of preservation or forfeiture can change that.

Iowa's appeal should be dismissed.

**ARGUMENT**

## I. IOWA HAS NOT IDENTIFIED ANY INJURY TO THE STATE

There appears to be no dispute that Iowa's theory of standing rests entirely on supposed economic harm to Iowa consumers who are members of the certified class—individuals who are already parties to this case. *See* Opp. at 6, 14–16. Article III does not permit a litigant to "merely champion the rights of another." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008). This Court applied that principle in *Paterson v. Texas*, 308 F.3d 448 (5th Cir. 2002), dismissing a state's appeal from class settlement approval because the state "ha[d] not itself suffered an

actual or imminent injury" and had "no authority" to appear in a representative capacity for its citizens. *Id.* at 451; *see also* Mot. at 6–8. Iowa fails to respond to this fatal problem with its appeal. Instead, it makes a series of collateral arguments, none of which are sufficient to confer Article III injury and standing.

### A. CAFA Did Not Confer a Legally Protected Right on Iowa, Let Alone Constitutional Injury.

As an initial matter, Iowa has no legally protected right at issue here—not even a bare statutory right, let alone constitutional injury. Specifically, Iowa argues that it has been granted the right to object and appeal under CAFA's § 1715. Opp. at 6–13. But CAFA's text forecloses that theory. Section 1715(f) provides: "Nothing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials." 28 U.S.C. § 1715(f). Iowa cites this provision once, Opp. at 17, yet never explains how a statute that expressly disclaims any expansion of state authority simultaneously creates a basis for Article III standing for state attorneys general.

The rest of the statute confirms this point. Congress created an enforcement mechanism for CAFA notice violations in subsection (e)(1)—"a class member may refuse to comply with and may choose not to be bound by a settlement agreement. . . ." 28 U.S.C. § 1715(e)(1)—and gave that right to ***class members***, not state officials. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that

Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983); *see also Dominion Ambulance, LLC v. Azar*, 968 F.3d 429, 435 (5th Cir. 2020) (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1984)). Iowa asks this Court to read into the statute a right Congress deliberately chose not to grant. *See* Mot. at 11–12.

Moreover, even accepting Iowa's atextual reading of § 1715 would not allow Iowa's actual appeal. Section 1715(b) requires defendants to serve "the appropriate State official of each State in which a class member resides" with notice of a proposed class action settlement. 28 U.S.C. § 1715(b). To the extent § 1715 creates any participatory role for states at all, that role is limited to § 1715's own subject matter—notice timing, content, and compliance. *See* 28 U.S.C. §§ 1715(b)–(d); *Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 306–07 (6th Cir. 2019). Iowa's appeal, however, contests whether the settlement is fair, reasonable, and adequate under Rule 23. *See* Opp. at 6, 14 (Iowa arguing the settlement "impairs the economic well-being of Iowan consumer class members" and "sends most of the settlement value to class counsel"). Nothing in § 1715 addresses Rule 23 adequacy, and Iowa does not argue otherwise.

Iowa's legislative history argument fares no better. Opp. at 9–10. Floor statements cannot override unambiguous statutory text, *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 582 (5th Cir. 2020), let alone Article III of the United

States Constitution, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). More, Iowa invokes *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112 (2d Cir. 2025), as proof that state participation in class action proceedings can benefit consumers, Opp. at 11, 16, but Iowa participated in *Kurtz* as *amicus curiae*—not as a party with appellate standing. *See* No. 24-425 (2d Cir.), Dkt. 53 (Iowa amicus brief). The settlement in *Kurtz* was vacated on a class member's appeal.

### B. Even If CAFA Had Conferred a Right, It Would Not Substitute for Article III Injury.

Even if CAFA had conferred some procedural right on Iowa (and it did not) a violation of that right would not on its own create Article III standing. "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "[A]n injury in law is not an injury in fact," and Congress "may not simply enact an injury into existence." *TransUnion*, 594 U.S. at 426–27 (2021). "Article III standing requires a concrete injury even in the context of a statutory violation," and creation of a statutory right "does not relieve courts of their responsibility to independently decide whether [a] plaintiff has suffered concrete harm under Article III." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822, 826 (5th Cir. 2022). Iowa identifies no such harm to its own interests.

No state program has been impaired. No state treasury has been depleted. No state enforcement authority has been curtailed. Iowa's asserted right under CAFA is

divorced entirely from any concrete injury to the State. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). That is—at most—the case here.

Iowa's fallback is equally unavailing. It invokes *California v. IntelliGender, LLC*, 771 F.3d 1169, 1181 (9th Cir. 2014), to argue the settlement "may extinguish Iowa's claims." Opp. at 7–8. But Iowa identifies no pending or contemplated enforcement action against Schwab, and thus no such "claims," actual or nascent. The Schwab–TD Ameritrade merger closed in October 2020. ROA.46 ¶ 52. A "conjectural or hypothetical" injury does not satisfy Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). And as explained in Section II of this brief, Iowa's asserted interest is indistinguishable from that of individual class members—meaning Iowa never possessed independent claims for any settlement to extinguish. *IntelliGender* cannot rescue a preclusion theory built on claims the state never had. *See* 771 F.3d at 1172–73, 1180–81 (preclusion arose from California's own enforcement action, brought under California's consumer protection statutes).

## II. IOWA'S *PARENS PATRIAE* THEORY FAILS

### A. Iowa's Supposed Interest Is Undifferentiated from Those of Class Members

Iowa's retreat to *parens patriae* does not rescue it. To invoke *parens patriae*, a state "must articulate an interest apart from the interests of particular private

parties" and "must be more than a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982). Iowa's asserted interest, as Iowa itself has described it, is precisely what *Snapp* prohibits. *See* Mot. at 13–15.

Iowa's district court objection rested on a single claimed harm: "the proposed settlement impairs the economic well-being of Iowa consumer class members." ROA.1968. That is the financial interest of every Iowa resident with a Schwab brokerage account—the same individuals who are already before this Court as certified class members. "[I]nterests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Snapp*, 458 U.S. at 602. Iowa's objection is "indistinguishable from the objections which individual [Iowans] might raise," making Iowa "merely a nominal party." *Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 306 (6th Cir. 2019). Every court to consider identical arguments has rejected them. *See* Mot. at 9–13; *see also Paterson*, 308 F.3d at 451; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp. 2d 891, 943–44 (E.D. La. 2012) (rejecting CAFA standing, *parens patriae*, and indirect injury theories for state AG objectors); *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989).

Iowa's own conduct confirms the absence of a genuine quasi-sovereign stake. Iowa filed a written objection and then did not appear at the August 28, 2025 fairness hearing. Mot. at 4 (citing ROA.3121). A state pressing genuine quasi-sovereign interests does not skip the only opportunity to press them in open court. The approximately seventy class member objectors who argued the settlement was inadequate, ROA.2121, made the same claims as Iowa. The district court addressed each objection in detail in its final approval opinion. ROA.2241–92; ROA.2483–89. Iowa's position was different in vehicle, not in kind.

Iowa's *parens patriae* failure also forecloses its *IntelliGender* theory. *IntelliGender* held that a class action settlement could preclude the California AG's subsequent enforcement action because California had asserted its own independent state-law claims before the question of preclusion arose. 771 F.3d at 1172–73. That holding presupposes what Iowa cannot show here: that the State possesses claims of its own, distinct from the interests of class members, that the settlement might extinguish. Because Iowa's asserted interest is indistinguishable from the private interests of class members already before this Court—as *Snapp* requires and *Chapman* confirms—Iowa has no independent claims for any settlement to extinguish. *See Snapp*, 458 U.S. at 607; *Chapman*, 940 F.3d at 306. A preclusion theory built on claims the State never possessed cannot confer standing. *See IntelliGender*, 771 F.3d at 1172–73, 1180–81.

### B. Iowa's Counterarguments Do Not Withstand Scrutiny.

Iowa argues that Iowa Code § 13.2—which directs the Attorney General to "prosecute and defend" in all courts "all actions or proceedings, civil or criminal, in which the state may be a party or interested, when, in the attorney general's judgment, the interest of the state requires such action"—creates the necessary quasi-sovereign interest. Opp. at 15 (internal quotation omitted). The Sixth Circuit rejected analogous arguments in *Chapman*, finding that Arizona's objections remained "indistinguishable from the objections which individual Arizonans might raise." 940 F.3d at 306.[1] And Iowa's reading would have remarkable implications: if Iowa Code § 13.2 conferred Article III standing, Iowa's Attorney General could appear as a party in any federal lawsuit in the country on the basis of her own "judgment." That is exactly what *Snapp* forbids. *See* Mot. at 14.

Iowa's invocation of Iowa Code § 714.16(7) (disgorgement) and Iowa R. Civ. P. 1.262–1.263 (Iowa's own class action rules) fares no better. Opp. at 15. Iowa's class action rules govern Iowa courts. Iowa brought no state consumer protection claim here and was not a party to the underlying litigation. These provisions create

[1] *In re Packaged Ice Antitrust Litig.*, 2018 WL 4520931, at *1 (6th Cir. May 24, 2018), predates *Chapman*'s published assessment, 940 F.3d at 305–07, and does not change the analysis.

no quasi-sovereign interest in the settlement of a federal antitrust class action between private parties.

Iowa invokes *Texas v. United States*, 50 F.4th 498 (5th Cir. 2022), as "special solicitude" for *parens patriae* standing. Opp. at 16. But *Texas* concerned a state's challenge to a federal immigration policy that imposed direct, concrete costs on Texas. *Id.* at 517–18. Iowa, here, is merely a stranger to a private antitrust settlement. The special solicitude analysis that applies when states challenge government action directed at them has no application here.

Iowa argues *Chapman* is distinguishable because Iowa filed a timely written objection rather than an untimely intervention motion. Opp. at 17–18. This conflates participation with standing. "Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court." *Escalante v. Lidge*, 34 F.4th 486, 491 (5th Cir. 2022) (quoting *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994)). The district court's decision to address Iowa's objection on the merits no more created Article III standing than accepting an amicus brief creates standing for the amicus. *Chapman*'s holding that *parens patriae* objections are

"indistinguishable from the objections which individual [citizens] might raise," 940 F.3d at 306, applies regardless of how Iowa styled its participation below.[2]

## III. THERE HAS BEEN NO FORFEITURE

Finally, Iowa argues that Plaintiffs forfeited a constitutional standing challenge by not raising it below. Opp. at 21. This is wrong; subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Iowa's cases apply forfeiture to non-jurisdictional merits arguments, not to Article III standing, which is non-waivable. *See Terwilliger v. Reyna*, 4 F.4th 270, 279 n.2 (5th Cir. 2021) (non-jurisdictional argument not raised below forfeited); *In re Deepwater Horizon*, 857 F.3d 246, 251 (5th Cir. 2017) (same); *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (CAFA notice objection forfeited).

## CONCLUSION

Iowa's appeal should be dismissed.

[2] Iowa's invocation of *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), and the historical "bill of peace" are non-sequiturs.

Date: March 13, 2026

Respectfully submitted,


s/ Brian J. Dunne

BRIAN J. DUNNE
EDWARD M. GRAUMAN
**BATHAEE DUNNE LLP**
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, Texas 78746
(512) 575-8848

YAVAR BATHAEE
PRISCILLA GHITA
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, New York 10022
(332) 322-8835

CHRISTOPHER M. BURKE
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
(619) 369-8244

ALLISON WATSON
**BATHAEE DUNNE LLP**
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
(213) 458-7075


*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.2, this document contains 2588 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

s/ Brian J. Dunne

*Counsel for Plaintiffs-Appellees*