**No. 25-40774**

# In the United States Court of Appeals for the Fifth Circuit

Jonathan Corrente; Charles Shaw; Leo Williams

*Plaintiffs-Appellees*

v.

The Charles Schwab Corporation

*Defendant-Appellee*

v.

Shiyang Huang, Objector; State of Iowa, Objector

*Movants-Appellants*

On Appeal from the United States District Court
for the Eastern District of Texas
No. 4:22-cv-470
Honorable Amos Mazzant, III

## OPENING BRIEF OF APPELLANT SHIYANG HUANG

Shiyang Huang
2813 SW Rother Rd.
Topeka, KS 66614
defectivesettlement@gmail.com

*Objector-Appellant Shiyang Huang*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Members of this Court may evaluate possible disqualification or recusal.

1. The Charles Schwab Corporation - Defendant
2. Alan Schoenfeld - Counsel for Defendant
3. Wilmer Cutler Pickering Hale and Dorr LLP - Counsel for Defendant
4. Andrew Thompson (Tom) Gorham - Counsel for Defendant
5. Gillam & Smith LLP - Counsel for Defendant
6. Chris Casamassima - Counsel for Defendant
7. Cynthia Richman - Counsel for Defendant
8. Gibson, Dunn & Crutcher LLP - Counsel for Defendant
9. Daniel Glen Swanson - Counsel for Defendant
10. David Charles Marcus - Counsel for Defendant
11. Harry Lee Gillam, Jr - Counsel for Defendant
12. Jeffrey Liu – Counsel for Defendant
13. James Travis Underwood - Counsel for Defendant
14. Jason Jacob Mendro - Counsel for Defendant
15. Jennifer Milici - Counsel for Defendant
16. John O'Toole - Counsel for Defendant
17. Melissa Richards Smith - Counsel for Defendant
18. Veronica Smith Moye - Counsel for Defendant
19. King & Spalding - Counsel for Defendant
20. Nancy Atlas - Mediator
21. Christopher Kirk Harris - Objector
22. David Ray Whipple - Objector
23. Gavin Rozzi - Objector
24. Richard Farri - Objector
25. Shiyang Huang – Objector-Appellant
26. State of Iowa – Objector-Appellant

27. Brenna Bird - Counsel for Objector-Appellant
28. Eric H. Wessan - Counsel for Objector-Appellant
29. Breanne Stoltze - Counsel for Objector-Appellant
30. Theodore H. Frank - Objector
31. Joseph Scott St John - Counsel for Objector
32. Michael Frank Bednarz - Counsel for Objector
33. Cameron L Hess - Objector
34. Williams Grubbs - Objector
35. Maria Demelo - Objector
36. Taylor Rengel - Objector
37. Eric Wrage - Objector
38. Richard H Kalin - Objector
39. Richard & Tanii Hunt - Objector
40. Shmuel Klein - Objector
41. Daniel Hallman Jr. - Objector
42. Brandon Stanley - Objector
43. Susan Sheridan - Objector
44. Corey Zinn - Objector
45. Michael Witten - Objector
46. Melville Webster, III - Objector
47. Nathan Simon - Objector
48. John Tucker - Objector
49. Nancy & George Ludwig - Objector
50. Fredrick Mattox - Objector
51. Wenjing Jiang - Objector
52. Nick Kephalos - Objector
53. Carol Galinski - Objector
54. Aldo Barreras - Objector
55. Christopher Madden - Objector
56. Matthew Gordan - Objector
57. Matthew Bosco - Objector
58. James Tylman - Objector
59. Bryan Poynter - Objector
60. Aji Kim Seung Poynter - Objector
61. Mark West - Objector
62. David Wilkie - Objector
63. Pamela Kummer - Objector
64. Dorian Bilik - Objector
65. Brent Rockwell - Objector
66. Craig West - Objector
67. Thomas Patrick Malone - Objector
68. Wendy Marquez - Objector
69. Stephan & Karen Frantzen - Objector
70. Agnes Elwell - Objector
71. Nicholas E Dobos - Objector
72. Michael Freduenberg - Objector
73. Craig Matson - Objector
74. Wesley Nash - Objector
75. Jay Vaughn - Objector
76. Stephen V Donohue - Objector
77. Siddharth Bhavsar - Objector
78. Aaron Bromberg - Objector
79. John D Tolliver II - Objector
80. Charles Valinotti - Objector
81. Jenrilyn Phippeny - Objector
82. Ingrid Eisenstadter - Objector
83. Anthony Capowski - Objector

84. Weinan Chen - Objector
85. Michael & Pamela Stelman - Objector
86. John C & Gloria Crivello - Objector
87. John Crivello, Sr. - Objector
88. Jetta Bastyr - Objector
89. Jonathan Hogan - Objector
90. Susana Bowen - Objector
91. Stephen A & Marian R. Barker - Objector
92. Mark Bond - Objector
93. Rita Johnston - Objector
94. Jonathan Corrente - Plaintiff
95. Leo Williams - Plaintiff
96. Charles Shaw - Plaintiff
97. Adam Ernette - Counsel for Plaintiffs
98. Bathaee Dunne LLP - Counsel for Plaintiffs
99. Allison Watson - Counsel for Plaintiffs
100. Andrew Chan Wolinsky - Counsel for Plaintiffs
101. Brian James Dunne - Counsel for Plaintiffs
102. Chad Emerson Bell - Counsel for Plaintiffs
103. Korein Tillery - Counsel for Plaintiffs
104. Christopher M Burke - Counsel for Plaintiffs
105. Burke LLP - Counsel for Plaintiffs
106. Edward Maxwell Grauman - Counsel for Plaintiffs
107. Elizabeth L DeRieux - Counsel for Plaintiffs
108. Capshaw DeRieux, LLP - Counsel for Plaintiffs
109. Priscilla Ghita - Counsel for Plaintiffs
110. S. Calvin Capshaw, III - Counsel for Plaintiffs
111. Yavar Bathaee - Counsel for Plaintiffs
112. Priscilla Ghita – Counsel for Plaintiffs
113. Allison Watson – Counsel for Plaintiffs
114. Amos Mazzant, III - Judge

Pursuant to FRAP 26.1, Huang is an individual.

Date: March 25, 2026

Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang

## STATEMENT REGARDING ORAL ARGUMENT

Objector-Appellant Huang respectfully requests oral argument.

This consolidated appeal concerns the proper legal standards for Article III standing and Rule 23 procedures in class-action settlements. The outcome of this case will have long-lasting consequences for millions of past and current Charles Schwab brokerage customers nationwide.

Oral argument will assist the Court in resolving specific questions within the district court's orders presented for appellate review.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................... i

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF AUTHORITIES ........................................................... iv

INTRODUCTION ............................................................................ 1

JURISDICTIONAL STATEMENT ..................................................... 2

ISSUES PRESENTED ..................................................................... 3

STATEMENT OF THE CASE ............................................................ 4

I. Legal Background ..................................................................... 4

A. Article III Jurisdiction ............................................................ 4

B. Class-Action Procedures Under Rule 23 ..................................... 6

II. District Court Proceedings ......................................................... 9

A. Plaintiffs alleged insufficient price improvements in equity and options trades after Schwab's merger ........................ 9

B. Plaintiffs agreed to settle with $5,050 cash per plaintiff, $0 for the mandatory Rule 23(b)(2) class, ~$9 million cash for counsel, and a "compliance program" ...................... 10

C. Huang objected to Plaintiffs' standing, Rule 23 compliance and filed a *Daubert* motion for Plaintiffs' expert report ... 14

D. The district court granted settlement approval, Plaintiffs' full fee request, and overruled all objections .................. 16

SUMMARY OF THE ARGUMENT ................................................... 21

STANDARD OF REVIEW....................25

ARGUMENT....................28

I. Plaintiffs and the class lack Article III standing....................28

A. The district court lacked Article III powers to certify an injunctive class with speculative 'some day' intentions....28

B. The district court erred to accept past harms for standing to seek future injunctive relief....................30

C. Countless class members lack standing....................32

II. A mandatory class cannot be certified when notice is deficient and representatives are inadequate....................34

A. The class notice violated Due Process by not affirmatively disclosing loss of tolling for absentees' damage claims ...35

B. Rule 23(b)(2) cannot "shoehorn" individualized monetary recoveries into a mandatory class....................37

C. The settlement is not adequate because Named Plaintiffs "opted out" of class members' zero-dollar outcome........40

D. The settlement violates Rule 23(e) and the Rules Enabling Act because $5,000 service awards created improper "preferred positions"....................43

III. Under *Torres,* "the district court abused its discretion in explicitly disclaiming use of the Johnson factors"....................46

IV. This Court should reverse and remand....................51

CONCLUSION....................52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................ 16, 28, 31, 32

*Allison v. Citgo Petro. Corp*. 151 F.3d 402 (5th Cir. 1998) ........... 1, 3, 22, 39

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................ 7, 9, 41

*Arizonans for Official English v. Ariz.*, 520 U.S. 43 (1997) ........................... 23

*Center for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006) 25

*China Agritech Inc., v. Resh*, 584 U.S. 732 (2018) ........................... 7, 35, 42

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................ 31

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................ 4

*Comcast Corp.* v. *Behrend*, 569 U.S. 27 (2013) ............................................ 6

*Crawford v. Equifax Payment Svcs., Inc.*,
201 F.3d 877 (7th Cir. 2000) .................................................. 35, 41

*Cruson v. Jackson Nat. Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020) .. 23, 27, 32

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ............................. 45

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ......................................................... 2

*Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022) ........................... 28, 33, 51

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) ....................... 40

*Fessler v. Porcelana Corona de Mexico, S.A.*, 23 F.4th 408 (5th Cir. 2022) ... 27

*Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020) ........... 3, 5, 6, 21, 32

*Frank v. Gaos*, 586 U.S. 485 (2019) ........................................... 2, 7, 30, 34

*Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973) .................. 1, 3, 22, 40, 42

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ........... 25, 26, 30, 32

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ................ 40, 44

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
517 F.3d 220 (5th Cir. 2008) ........................................ 8, 9, 48, 50

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) ........................................ 1, 27, 35, 36

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010)................3

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)..............37, 38

*In re Optical Disk Drive Prods. Antitrust Litig.*,
959 F.3d 922 (9th Cir. 2020) ....................................................51

*In re Walgreens Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016) .........51

*Johnson v. Gen. Motors Corp.*, 598 F.2d 432 (5th Cir. 1979) ...............22, 35

*Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020)..............44

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) ..............................................7, 9, 18

*Kincade v. Gen. Tire & Rubber Co.*
635 F.2d 501 (5th Cir. 1981) ................................. 1, 17, 22, 41, 43

*Kincade v. Gen. Tire & Rubber Co.* 635 F.2d 501 (5th Cir. 1981) .................3

*Klier v. Elf Atochem N. Am.*, 658 F.3d 468 (5th Cir. 2011)...................25, 39

*La. Generating, LLC v. Il. Union Ins. Co.*, 831 F.3d 618 (5th Cir. 2018).......51

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)...................... 1, 3, 22, 29, 34

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012)............26, 38

*McClain v. Lufkin Indus., Inc.*, 519 F.3d 264 (5th Cir. 2008) .........46, 48, 50

*Morrow v. Jones*, 140 F.4th 257 (5th Cir. 2025)............ 3, 26, 37, 46, 48, 52

*Muransky v. Godiva Chocolatiers*, 979 F.3d 917 (11th Cir. 2020) ..............24

*Murthy v. Missouri*, 603 U.S. 43 (2024) ........................................30, 34

*Oscar Priv. Equity Inv., Allegiance Telecom*, 487 F.3d 261 (5th Cir. 2007).....8

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .........................................29, 31

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) .............................. 41, 43

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) .................................. 19

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ........ 24, 40

*Piambino v. Bailey*, 610 F.2d 1306 (5th Cir. 1980) .................................. 50

*Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020) ....................... 29

*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024) ........................................ 27

*Romaguera v. Gegenheimer*, 162 F.3d 893 (5th Cir. 1998) ......................... 25

*Sambrano v. United Airlines, Inc.*,
_F.4th_, No. 24-10708 (5th Cir. Mar. 9, 2026) ................................ 25

*Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022) .................................. 37, 49

*Scott v. Dart*, 99 F.4th 1076 (7th Cir. 2024) ............................................ 45

*Smith v. Miorelli*, 93 F.4th 1206 (11th Cir. 2024) ..................................... 24

*Soadjede v. Ashcroft*, 324 F.3d 830 (5th Cir. 2003) .................................. 26

*Sosna v. Iowa*, 419 U.S. 393 (1975) ......................................................... 23

*Spokeo Inc.* v. *Robins*, 578 U.S. 330 (2016) .............................................. 5

*Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013) ..................................... 40

*Strong v. BellSouth Telecom.*, 137 F.3d 844 (5th Cir. 1998)........ 9, 19, 37, 50

*Torres v. SGE Mgmt., L.L.C.*,
945 F.3d 347 (5th Cir. 2019) .............................. 1, 19, 23, 27, 46, 47

*Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347 (5th Cir. 2019) .......................... 3

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .. 2, 3, 4, 16, 18, 28, 29, 31

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .............................. 33

*United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980) ..................... 9

*United States v. Marine Shale Processors*, 81 F.3d 1361 (5th Cir. 1996) ...... 51

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020)................................ 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................ 3, 22, 38

*Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023) .............24

*Wilson v. Centene Mgmt. Co.*,
144 F.4th 780 (5th Cir. 2025) ............................ 3, 5, 6, 16, 28, 33, 34

*Wittman v. Personhuballah*, 578 U.S. 539 (2016) .......................................5

**Rules**

Fed. R. App. P. 28(i) ...................................................................21

Fed. R. Civ. P. 23(a) ....................................................................6

Fed. R. Civ. P. 23(h) ...................................................................3, 8

Fed. R. Civ. P. 23(h), Advisory Committee Notes—2003 Amendment .......49

Fed. R. Civ. P. 82 .........................................................................7

**Statutes**

15 U.S.C. § 15b ..........................................................................8, 44

28 U.S.C. § 1291 .........................................................................2, 28

28 U.S.C. § 2072(b) .....................................................................44

**Other Authorities**

7A Charles Alan Wright et al., *Fed. Prac. and Proc.* (3d ed. 2005) .............32

Brief for the United States, *Frank v. Gaos*,
No. 17-961, 2018 WL 3456069 (U.S. Jul. 16, 2018) .....................6, 24

Brief for the United States, *Lab'y Corp. of Am. Holdings v. Davis,*
No. 24-304 (U.S. Mar. 12, 2025) ..............................................21, 32

**Constitutional Provisions**

U.S. Const. amend. V ....................................................................35

U.S. Const. art. III ........................................................................4

## INTRODUCTION

This appeal arises from a **non-opt-out** class-action at its worst**.** Counsel will exit with **$8,936,492** in fees and expenses. Each Plaintiff will cash out **$5,050** (ROA.1340, 1350). Class members will **lose tolling rights without clear notice** (ROA.1093, 2156 n.24), get **$0** for compliance program brochures projecting "conjecture." ROA.2088. Better yet, more individuals will lose tolling rights for no notice or benefit. ROA.1011.

The district court's approval fails on three independent grounds:

1. **Article III standing** precludes "'some day' intentions" under *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992), such as Named Plaintiffs' "inten[tion] to" trade "in the near future." ROA.2199–2203.

2. Plaintiffs who **gave up absentees' tolling rights with no notice, in a mandatory class, and settled their own damage claims,** cannot represent a class. *Allison v. Citgo Petro. Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981); *Gonzales v. Cassidy*, 474 F.2d 67, 76 (5th Cir. 1973). *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010).

3. The court **declined to apply the *Johnson* factors for fees**. ROA.2507. *Contra Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 352 (5th Cir. 2019).

## JURISDICTIONAL STATEMENT

1. This Court has jurisdiction to review "final decision[s]" of district courts. 28 U.S.C. § 1291.

2. Appellant Huang is a class member who timely objected to settlement approval. ROA.1244-1265, 1831-1843. Huang timely appealed. ROA.2522. Huang has standing to appeal. *Devlin v. Scardelletti,* 536 U.S. 1, 14 (2002) ("[N]onnamed class members ... who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening.").

3. The district court "is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute[.]" *Frank v. Gaos,* 586 U.S. 485, 492 (2019). Objector appeals require a review of Named Plaintiffs' standing in district courts and class members' standing. *Id.*; *Flecha v. Medicredit, Inc.,* 946 F.3d 762, 768-69 (5th Cir. 2020); *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431, 442 (2021).

4. The State of Iowa likely has *parens patriae* standing to represent individuals who *were* "narrow[ed]" out by the current class definition, ineligible for notice but also face loss of tolling. ROA.1011, 2156 n.24. *Compare* ROA.1017 ("36 million") *with* ROA.2121 ("25 million") class size.

## ISSUES PRESENTED

I. Can a court have Article III jurisdiction to approve a class-action settlement that includes class members who lack any Article III injury? ROA.2447-2449, 2484-2486. *See TransUnion,* 594 U.S. at 431, 442; *Flecha,* 946 F.3d at 768-69.

   a. Can "'some day' intentions" satisfy Article III standing for Plaintiffs? *Lujan,* 504 U.S. at 564. ROA.2199-2203, 2485-2486.

II. Can Rules 23(a)(4), and 23(e) permit a lack of tolling loss notices, in a (b)(2) class settling damages, while the class gets $0? ROA.1340, 2443, 2459-60. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *Allison v. Citgo Petro. Corp*. 151 F.3d 402, 415 (5th Cir. 1998); *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 196 (5th Cir. 2010); *Gonzales v. Cassidy*, 474 F.2d 67, 76 (5th Cir. 1973); *Kincade v. Gen. Tire & Rubber Co.* 635 F.2d 501, 506 n.5 (5th Cir. 1981).

III. Can a court "disclaim[] the use … of the *Johnson* factors for assessing the reasonableness of fee awards"? *Torres v. SGE Mgmt., L.L.C.,* 945 F.3d 347, 352 (5th Cir. 2019). ROA.2506-07. (The district court owed an "independent duty," and a pure question of law is reviewable under *Morrow v. Jones,* 140 F.4th 257, 261-62 (5th Cir. 2025)).

## STATEMENT OF THE CASE

### I. LEGAL BACKGROUND

#### A. Article III Jurisdiction

**1.** "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies' ... no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper,* 568 U.S. at 408 (cleaned up). "Relaxation of standing requirements is directly related to the expansion of judicial power[.]" *Clapper,* 568 U.S. at 408-09. "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

**2.** Each plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the Defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion,* 594 U.S. at 423. "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion,* 594 U.S. at 431. When an injury is forward-looking,

"[t]hreatened injury must be *certainly impending* to constitute injury in fact, and … allegations of *possible* future injury are not sufficient." *Clapper,* 568 U.S. at 408-09 (cleaned up). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Lujan,* 504 U.S. at 565 n.2. "When challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman v. Personhuballah,* 578 U.S. 539, 545 (2016).

**3.** "A class action ... adds nothing to the question of standing[.]" *Spokeo Inc. v. Robins*, 578 U.S. 330, 337 n.6 (2016) (cleaned up). "Standing is an inherent prerequisite to the class certification inquiry[.]" *Wilson v. Centene Mgmt. Co.,* 144 F.4th 780, 787 (5th Cir. 2025). "[T]he class representative must have standing to represent a class … 'if the class representative lacks standing, then there is no Article III suit to begin with — class certification or otherwise.'" *Id.* (quoting *Flecha,* 946 F.3d at 769).

### B. Class-Action Procedures Under Rule 23

**1.** "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). Class actions must meet "threshold requirements" under Fed. R. Civ. P. 23. *Amchem,* 521 U.S. at 613. Rule 23(a) tests "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *Id.* at 626 n.20. Fed. R. Civ. P. 23(b)(2) applies when "injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". Plaintiffs "must also satisfy [Rule 23(b)] through evidentiary proof". *Comcast,* 569 U.S. at 33. A "fear of underenforcement is no justification for class certification." *Flecha,* 946 F.3d at 769. "[C]ourts must certify class actions based on proof, not presumptions." *Id.* at 768. *Wilson,* 144 F.4th at 790 (courts "must … review the merits [if] relevant to class certification.")

**2.** "[C]lass action lawsuits are likely to settle." Brief for the United States, *Frank v. Gaos*, 2018 WL 3456069, at 3 (U.S. Jul. 16, 2018). "Unlike a typical settlement, however, a class-action settlement inherently involves a potential conflict of interest, because it 'compromises the claims of absent

class members, litigants not themselves part of the settlement negotiations.'" *Id.* "Worse, the class representatives and class counsel litigating on behalf of those absent class members may have incentives to settle which conflict with the class's interests." *Id.* *Amchem* rejected the view "that if a settlement is 'fair,' then certification is proper." 521 U.S. at 622. Rule 23(e) requires court approval of class-action settlements. *Frank,* 586 U.S. at 492. In this circuit, "district judges must . . . exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions to consider whether the settlement is fair, adequate, and reasonable, and not a product of collusion." *Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 300 (5th Cir. 2017) (cleaned up). A "heightened standard of care" is required. *Id.* at 295. "[R]ules shall not be construed to extend [] subject-matter jurisdiction[.]") *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (cleaned up, quoting Fed. R. Civ. P. 82). A court "is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing." *Frank,* 586 U.S. at 492.

**3.** "[T]he timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech Inc., v. Resh,* 584 U.S. 732, 735 (2018). "Upon denial of class

certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no." *Id.* at 735-36. "Time to file a class action falls outside the bounds of *American Pipe*." *Id.* at 748.

As relevant for this case, ROA.47, the statute of limitations is 4 years for antitrust claims. 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.").

**4.** "In a certified class action, the court may award reasonable attorney's fees[.]" Fed. R. Civ. P. 23(h). "When a district court awards attorneys' fees it must explain how each of the Johnson factors affects its award." *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 228-29 (5th Cir. 2008).

**5.** District courts are tasked with enormous responsibilities in evaluating class-action settlements, despite a typical lack of adversarial presentations after parties agree to a settlement. District courts must conduct a "rigorous analysis" to weigh factors "both for and against" class certification. *Oscar Private Equity Invs. v. Allegiance Telecom,* 487 F.3d 261,

267–68 (5th Cir. 2007). District courts are "fiduciar[ies] serving as guardian for the unrepresented class members[.]" *United States v. City of Miami,* 614 F.2d 1322, 1331 (5th Cir. 1980). "[D]istrict judges must exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions[.]" *Jones,* 865 F.3d at 293 (cleaned up). "[U]ndiluted, even heightened, attention" is required for class-action settlements before certification. *Amchem,* 521 U.S. at 620. A court's "examination of attorneys' fees guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Strong v. BellSouth Telecom.,* 137 F.3d 844, 849 (5th Cir. 1998). District courts "must scrutinize a fee award under the *Johnson* factors and not merely 'ratify a pre-arranged compact.'" *High Sulfur*, 517 F.3d at 228.

## II. DISTRICT COURT PROCEEDINGS

### A. Plaintiffs alleged insufficient price improvements in equity and options trades after Schwab's merger

On October 26, 2020, Charles Schwab ("Schwab") completed its acquisition of TD Ameritrade. ROA.43. In June 2022, Plaintiffs filed a complaint against Defendant Schwab under the Clayton Act. ROA.34-139. Plaintiffs alleged the merger caused "substantial lessening of competition", "create[d] a monopoly in the relevant market for Retail Order Flow" related

to "stock and options trades", and harmed Schwab customers with "a lesser amount of the payment for order flow associated with their trades than they would have absent the anticompetitive Merger." ROA.137. Plaintiffs *intended* to certify classes under Rule 23(b)(2) and/or Rule 23(b)(3) to include "[a]ll persons, entities, and/or corporations in the United States who purchased or sold equities or equity options through TD Ameritrade, Schwab, or any of their affiliates from October 26, 2020, through the present." ROA.133-34. Named Plaintiffs only traded "equities", and/or "exchange traded funds", but no Plaintiff traded options. ROA.44-45.

Schwab moved to dismiss the complaint, unsuccessfully. ROA.410-423. The court did not address Schwab's passing arguments (ROA.183-84, 197-98) that Plaintiffs lack constitutional standing. ROA.420-421.

### B. Plaintiffs agreed to settle with $5,050 cash per plaintiff, $0 for the mandatory Rule 23(b)(2) class, ~$9 million cash for counsel, and a "compliance program"

Parties conducted discovery, mediations, and one month before the statute of limitations would expire absent tolling, ROA.1106, 43, Plaintiffs and Schwab agreed to settle as a class action. ROA.1001-34 (Motion); ROA.1331-1361 (Settlement Agreement). Plaintiffs switched their class definition to "persons, entities, and corporations who are current U.S.

brokerage customers of Schwab or any of its affiliates, including customers who previously held accounts at TD Ameritrade." ROA.1338. Because Plaintiffs changed the class definition, notice only reached ***current Schwab customers***. ROA.1338. ***Past Schwab customers*** become non-class members, although their claims were tolled as a part of the Plaintiffs' original complaint for damages. ROA.1011.

"Schwab []has agreed to pay each of the three Plaintiffs $50 in return for releasing their individual damages claims." ROA.1340, ROA.1013. "The Settlement does not release any right of absent class members to bring damages claims, either individually or on behalf of a class." ROA.1013.

36 million[1] members will get $0 in cash. *Id.* "The parties agreed to jointly retain an independent consultant at Schwab's expense to design an antitrust compliance program that Schwab will implement." ROA.1011. "Schwab will be released from all obligations under the terms of this Stipulation" after Schwab certifies the implementation of the program for four years. ROA.1340-43. "Plaintiffs' antitrust economics expert(s)"

[1] Plaintiffs used both figures. *Compare* ROA.1258, 1017 ("Schwab's records … 36 million members") *with* ROA.46 (31.9 million accounts), ROA.2121 ("properly noticed class of approximately 25 million"). The district court relied on the 25-million figure. ROA.2441.

(ROA.1316) "speculate[d]" (ROA.2943) future price improvement savings of over $100 million per year. ROA.1317, 2489. But Schwab has clarified:

> Schwab does not endorse that report's recommendations and has not agreed to adopt the measure it outlines. Since Schwab is not bound by the report's premature proposals, its value calculations are conjecture.

ROA.2088. The State of Iowa also described the expert report as "conjecture." ROA.1973. Huang also filed a motion to exclude the report on admissibility grounds. ROA.2832-2862. That motion has not been denied, but the district court already relied on that expert report. ROA.2489.

On fees: "Plaintiffs' Counsel will seek an award of attorney's fees in an amount not exceeding $8,250,000 and reimbursement of litigation expenses and costs in an amount not exceeding $700,000 [and] service awards of up to $5,000 for each Plaintiff". ROA.1014.

On releases, "The Settlement releases the claims of the members of the Settlement Class as to all injunctive and other equitable or non-monetary claims or remedies asserted or that could have been asserted in the action, including any claim for divestiture." ROA.1013 and its web view, web.archive.org/web/20250717011000/https://www.schwabcorrentesettlement.com/faq (accessed March 18, 2026), states clearly that "Settlement Class Members are not releasing claims for money damages against

Schwab." *See* ROA.1093. "Not releasing" is repeated in FAQ section about "What Am I Giving Up to Receive Injunctive Relief?" *Id.* ROA.1093 (same). The word tolling is not mentioned in either. Mr. Yavar Bathaee for Plaintiffs also specified the outcomes of absent class members' claims:

> **Huang (in an earlier email):** … Let's consider the hypothetical that I'd like to settle my monetary claims for $50 too like named plaintiffs chose to. Pretty sure a 23b2 class can't do that for me under Walmart v. Dukes. Is that wrong anyhow?
>
> **Mr. Bathaee for Plaintiffs:** You are free to settle your damages claims with Schwab for any amount you deem fit. This settlement does not do so on your behalf. As I've mentioned and stressed repeatedly, this is not a settlement of your damages claims. You retain them after the settlement is approved and can bring them, settle them, or do whatever else you wish with them for whatever price.
>
> You would either need to bring your own lawsuit on behalf of a damages class or file an arbitration individually with FINRA (because non-class claims are subject to binding arbitration under your account agreements).

*See* ROA.1842 (quoting the second paragraph).[2]

Named Plaintiffs filed similar declarations supporting the settlement, stating they "each will receive $50 in consideration of Schwab releasing our

---

[2] Huang shares his query as context for Mr. Bathaee's statements, partially reproduced at ROA.1842. Huang surely attests that they are genuine, and can declare under penalty of perjury that these are authentic email exchanges with Mr. Bathaee for Plaintiffs.

individual damages claims", "Schwab will not be releasing the damages claims of other putative class members", they "intend to continue as a brokerage customer of Schwab indefinitely". ROA.1122-30. Each claim "the settlement is … in the best interest" for them and the class. ROA.1124-30.

### C. Huang objected to Plaintiffs' standing, Rule 23 compliance and filed a *Daubert* motion for Plaintiffs' expert report

Class member Huang received his notice in a Gmail *spam* inbox, and Huang timely filed objections. ROA.1831-43, 1244-65. Huang argued Plaintiffs' exclusive $50 payments violated binding Rule 23(b)(2) precedents. ROA.1838-1839. Huang opposed both $50 payments and $5,000 "service awards" for Named Plaintiffs. ROA.1841-1843 (quoting *Kincade*, 635 F.2d at 506 n.5) ("by choosing to bring their action as a class action, the named plaintiffs disclaimed any right to a preferred position in the settlement [or] preferred treatment simply by reason of his status as a class representative."); ROA.1263 (same basis against service awards).

Huang noted that Plaintiffs and the Class lack Article III standing—Plaintiffs' past trading habits (ROA.44-45) cannot generate imminent risk of future harm for an entire Class. ROA.1833-1836. Huang also moved to exclude Plaintiffs' redacted testimony (*e.g.,* ROA.2851-54) as inadmissible. ROA.1861-71. (Without deciding on Huang's motion to exclude, the district

court relied on the expert testimony that Schwab rejected as "conjecture", ROA.2088, to find "prospective injunctive relief in the Settlement still provides meaningful relief to the entire Settlement Class[.]" ROA.2489.)

Other objectors included co-appellant the State of Iowa (ROA.1956-1983), and Ted Frank, a well-known class-action critic. Frank agreed with Huang: Plaintiffs lack Article III standing. ROA.2001-02.

Frank independently argued the class notice is "misleading":

> "The proposed class settlement does not release or resolve any damages claims available under Section 4 of the Clayton Act." Dkt. 197 at 1. This is technically true, but misleading, because a court approval of the settlement will foreclose future class claims for damages. Individual class member claims are tolled by the class action, but it is now impossible to bring class claims for damages where the four-year statute of limitations has expired, because class actions are not tolled. (ROA.1999-2001)

"[N]one of the class representatives' declarations in support of the settlement indicate any understanding of the effect of *China Agritech* on the class if the settlement is approved." ROA.2001. In response, Plaintiffs admit "the statute of limitations for classwide damages claims filed after approval of the Settlement would not receive the benefit of tolling." ROA.2156 n.24. Also in rebuttal after the objection deadline, Plaintiffs submitted latebreaking "supplemental declarations," with the same language for each:

> I have executed trades with Schwab as a retail brokerage customer, including online, and intend to execute additional trades in the future. (ROA.2199-2203).

### D. The district court granted settlement approval, Plaintiffs' full fee request, and overruled all objections

The district court approved the settlement in November 2025, stating "the Fifth Circuit has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative." ROA.2445-46. *Contra* Huang Obj., ROA.1832 (quoting *Wilson,* 144 F.4th 780 as circuit law); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009) ("preponderance of evidence" standard under Rule 23). It held,

> each of the three named Plaintiffs satisfy the elements of standing by identifying an injury in fact—i.e., underpayment of their order flow, in the form of reduced price improvement on their trades—which is traceable to the Merger and susceptible to redress by the injunctive relief provided by the Settlement. Under the *Kohen* test, this is the end of the inquiry . . . (. . . for purposes of Article III standing of named plaintiffs during class certification under Rule 23 it is "sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.")

ROA.2448. *Contra TransUnion,* 594 U.S. at 431 ("plaintiffs must demonstrate standing … **for each form of relief** that they seek (for example, **injunctive relief and damages**).") Then, "by limiting the Settlement Class to only '***current*** U.S. brokerage customers of Schwab or

any of its affiliates' the class includes only persons, entities, and corporations that have ***suffered*** the same injury in fact as the three named Plaintiffs which is traceable to the Merger and susceptible to redress by the injunctive relief provided by the Settlement." ROA.2448 (emphasis added).

The court covered class certification factors, not any objections to it. ROA.2449-2462. Plaintiffs "releas[ed] their individual damages claims [but] any damages claims of the absent class members are not being released under the Settlement." ROA.2459 & n.7. Thus, their interests remained "identical to the members of the Settlement Class." ROA.2460. *Contra Kincade,* 635 F.2d at 506 n.5 (class representatives must "disclaim [any] preferred position") "[A]ll members of the Settlement Class ***have been harmed*** in the exact same way." ROA.2461 (emphasis on tense). Therefore, "the Court need not delve into whether the injunctive relief 'predominates' over monetary damages claims where, as here, injunctive relief is the only relief sought." ROA.2461-62. *Contra* ROA.1340 ($50 for damages). It held:

> The harm from the anticompetitive Merger at issue is ongoing and, thus, without implementing the injunctive relief requested in the Settlement, current Schwab brokerage customers will continue to suffer harm. Indeed, each named Plaintiff has submitted a sworn affidavit to this Court attesting that they "intend to remain a retail brokerage customer of Schwab" and "intend to execute additional trades in the near future" As a result, Plaintiffs, like all other class members who are current

> Schwab brokerage customers, will continue to receive reduced price improvements on their trades due to the anticipative effects of the Merger. Thus, there can be no question that each named Plaintiff has standing to seek the injunctive relief requested in the Settlement.

ROA.2485-86 (cleaned up). *Contra TransUnion,* 594 U.S. at 431.

The court approved the settlement. It found the "only relief proposed in the Settlement is injunctive relief which need not be distributed to the individual members of the Settlement Class." ROA.2478. *Contra* ROA.1340, 1350 ($50 for each Named Plaintiff's damage claims before service awards). "[O]nly a very small number of objections have been received … [t]hus the opinion of [plaintiffs and their counsel] weigh heavily in favor" of approving the settlement. ROA.2482. *Contra Jones,* 865 F.3d at 300 ("it is … the quality of their objections that should guide the court's review.").

The court relied on a still-*redacted* testimony that Plaintiffs' experts "speculate[d]" (ROA.2943) and Defendant Schwab rejected as "conjecture" (ROA.2088) to find the settlement will provide "meaningful relief":

> although the Settlement does not provide immediate monetary relief, the prospective injunctive relief in the Settlement still provides meaningful relief to the entire Settlement Class by directly addressing the anticompetitive behavior at issue (See [redacted at ROA.2862] (providing, in an expert report, that the compliance program will yield additional price improvement between $10.7 million and $14.5 million per month for Schwab brokerage customers.)). Additionally, courts have routinely

> found class action settlements to be fair and reasonable where, as here, the injunctive-only Settlement does not force the Settlement Class to release their individual damages claims.

ROA.2489. The court also approved $5,000 incentive awards for each named plaintiff, and just under $9 million in fees and expenses. ROA.2493-2521. Because "attorney's fees were not negotiated or discussed until after the parties executed the Settlement[,]… [it] indicate[s] a presumption of reasonableness in the request for an attorney's fee award." ROA.2480. *Contra Strong,* 137 F.3d at 850 ("Even if the plaintiffs attorney does not consciously or explicitly bargain for a higher fee … this situation has indirect or subliminal effects on the negotiations.") (cleaned up); *Pearson v. NBTY, Inc.,* 772 F.3d 778, 786 (7th Cir. 2014) (Posner, J.) ("That claim is not realistic.") The district court expressly declined to use this circuit's *Johnson* factors to determine a fee award. ROA.2506 ("Typically … the Court would need to [apply the] twelve Johnson factors … However, neither Plaintiffs' Counsel nor Defendant argue for an adjustment to the lodestar in this case.") ROA.2507 ("the fact that Plaintiffs' Counsel's requested fee award is both unopposed by Defendant and less than their lodestar weighs heavily in favor of a finding of reasonableness.") *Contra Torres,* 945 F.3d at 352 (The "statement that it was 'unnecessary['] …

prevents us from concluding that the district court properly utilized the *Johnson* framework.")

Huang timely appealed. ROA.2522. Iowa also timely appealed.

## SUMMARY OF THE ARGUMENT

Plaintiffs' Counsel requests $8.9 million in *immediate* cash for a 'compliance program' that the Defendant rejects as mere "conjecture." ROA.2088. But to Plaintiffs, it may be a victory. They are immune from absent class members' loss of tolling, because their class membership led to $5,050 each. They need not know why (b)(2) classes are mandatory, why past customers *cannot* get notice, why tolling loss matters to anyone, or why Schwab dismissed their expert reports as "conjecture." ROA.2088. They also need not prove *anything*—just the *intent* to trade *something* again is enough.

But Iowa is right: "the value of that settlement to anyone but the named Plaintiffs … is zero." ROA.1976. Huang adopts Iowa's arguments by reference. Fed. R. App. P. 28(i). Worse, class notice shared *nothing* about tolling losses in "What am I giving up[?]". ROA.1093. Reversal is warranted.

**1.** "**Countless unnamed class members lack standing**." *Flecha,* 946 F.3d at 768 (emphasis added); *accord* Brief for the United States, *Lab'y Corp. of Am. Holdings v. Davis,* No. 24-304, at 5 (U.S. Mar. 12, 2025) (Rule 23 classes cannot "contain[] members who lack Article III injuries."). "[A]ll class members must share the same injury, which necessarily includes a cognizable Article III injury." *Id.* Named Plaintiffs themselves cannot rest on

mere "inten[tions] to execute additional trades in the near future." ROA.2199-2203, or "'some day' intentions" that *Lujan* rejected as speculative for standing. 504 U.S. at 564. Named *Plaintiffs*' *individualized equity trading patterns* cannot help bootstrap a 36-million mandatory class by pretending millions of class members—who can *independently* decide to trade a variety of other asset classes—must mimic 3 Plaintiffs' unique trading behaviors.

**2. Named Plaintiffs fail multiple grounds under Rule 23.** Class representatives cannot get "preferred position(s)[.]" *Kincade,* 635 F.2d at 506 n.5, Rule 23(e)(2)(D), while leaving class members with loss of tolling for future damages classes, ROA.2156 n.24, without fully sharing "What am I giving up[?]". ROA.1093. *Johnson v. Gen. Motors Corp.,* 598 F.2d 432, 438 (5th Cir. 1979). The record suggests a systemic notice failure, ROA.1017, 2121, leading to undisclosed tolling right losses for millions of individuals.

*Dukes* holds "claims for individualized relief … do not satisfy the Rule[23(b)(2)]." 564 U.S. at 360. Nor did the court scrutinize whether it is "sufficiently incidental to the injunctive and declaratory relief being sought to permit certification under (b)(2)." *Allison*, 151 F.3d at 417. Rule 23(a)(4) prohibits Plaintiffs from settling their damages claims while leaving $0 for class members. *Gonzales*, 474 F.2d at 75–76.

**3. The district court abused its discretion by awarding $8.25 million in attorney's fees without applying this Court's *Johnson* factors.** The court replaced the *Johnson* factors with "the fact that Plaintiffs' Counsel's requested fee award is both unopposed by Defendant and less than their lodestar weighs heavily in favor of a finding of reasonableness." ROA.2507. But "[t]his statement is at odds with our decision in *High Sulfur* and prevents us from concluding that the district court properly utilized the *Johnson* framework." *Torres,* 945 F.3d at 352; *High Sulfur*, 517 F.3d at 228.

* * *

All the issues are *symptoms*, not the root cause: a "case or controversy" must exist "at the time the class action is certified by the District Court pursuant to Rule 23." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). Otherwise, "absent a genuine adversary issue between parties, [a] federal court may not safely proceed to judgment[.]" *Arizonans for Official English v. Ariz.,* 520 U.S. 43, 71 (1997) (cleaned up). "Absent class certification, there is no justiciable controversy between the defendant and the unnamed putative class members." *Cruson v. Jackson Nat. Life Ins. Co.,* 954 F.3d 240, 251 (5th Cir. 2020). But a non-opposition to class certification means a court loses "the free-wheeling energies of counsel and places them in adversary

confrontation before a detached judge[.]" *United States v. Sineneng-Smith*, 590 U.S. 371, 375 n.3 (2020). That questions whether jurisdiction existed. *See* ROA.2952; *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978) ("the settlement process is more susceptible than adversarial adjudications to certain types of abuse"); *accord Amchem*, 521 U.S. at 621.

In *Frank v. Gaos* and a trio of Eleventh Circuit objector appeals, parties routinely bury standing problems after settlement. Brief for the United States, 2018 WL 3456069, at 11; *Muransky v. Godiva Chocolatiers*, 979 F.3d 917 (11th Cir. 2020) (en banc); *Smith v. Miorelli*, 93 F.4th 1206 (11th Cir. 2024); *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1255 (11th Cir. 2023). Here, the pattern repeats itself: Parties *do not disagree* about class certification; they even *stipulated a step that required the exercise of federal judicial powers* in certifying a Rule 23 class. ROA.1351-1352 ("the Parties stipulate and agree that the settlement class should be certified").

For the foregoing reasons, the Court should reverse the district court's orders approving class certification, settlement approval, and the fee award.

## STANDARD OF REVIEW

**Article III jurisdiction: *de novo***. "We review all questions of subject matter jurisdiction, including the justiciability issues of standing, ripeness, and mootness, *de novo." Ctr. for Individual Freedom v. Carmouche,* 449 F.3d 655, 659 (5th Cir. 2006).

**Interpretation of Rule 23 and the settlement agreement: *de novo.*** The Court "review[s] *de novo* a district court's interpretation of the Federal Rules of Civil Procedure". *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998). "[O]ur review is de novo [for] the district court's interpretation of an unambiguous settlement agreement." *Klier v. Elf Atochem N. Am.,* 658 F.3d 468, 474 (5th Cir. 2011).

**Class certification and settlement approval:** "The abuse-of-discretion standard governs this court's review of both the district court's certification of the class and its approval of the settlement under Rule 23." *In re Deepwater Horizon,* 739 F.3d 790, 798 (5th Cir. 2014). While "[a]n abuse of discretion occurs only when all reasonable persons would reject the view of the district court[,]" *Sambrano v. United Airlines,* _F.4th_, No. 24-10708, slip op., *7 (5th Cir. Mar. 9, 2026), "[t]he district court must exercise its broad discretion over whether to certify a class within the

framework of Rule 23. We review *de novo* whether the district court applied the correct legal standards." *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 836 (5th Cir. 2012) (cleaned up). "Whether the district court applied the correct legal standard in its consideration of the settlement is reviewed de novo." *Deepwater Horizon,* 739 F.3d at 798.

**On Potential Forfeiture:** Since Rule 23 can implicate Due Process protections under the Constitution, "[t]his Court reviews constitutional challenges *de novo." Soadjede v. Ashcroft,* 324 F.3d 830, 831 (5th Cir. 2003). **"**We do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal. Still, we have discretion to address a forfeited issue if it involves a pure question of law, and our refusal to address it would result in a miscarriage of justice." *Morrow,* 140 F.4th at 261 (cleaned up). *Cf. id.* at 262 ("Declining to address the Rule 23(h) notice issue here would thus be inconsistent with these "general policies embodied in' Rule 23.")

**Fee award determination:** "We review[] an award of attorneys' fees for abuse of discretion, reviewing factual findings for clear error and legal conclusions *de novo*." *Morrow,* 140 F.4th at 261. "That the record does not clearly reflect that the district judge utilized the *Johnson* framework is

error." *Torres,* 945 F.3d at 355 (citation omitted). "This requires that we decide whether … the district court has utilized the *Johnson* framework as the basis of its analysis[.]" *Id.* (citation omitted).

**Plaintiffs bear all burdens of proof:** Plaintiffs "bear[] the burden of proving that standing exists." *Reule v. Jackson,* 114 F.4th 360, 367 (5th Cir. 2024). "[T]he party seeking certification [] bears the burden of establishing that the requirements of Rule 23 have been met." *Cruson,* 954 F.3d at 253. "[T]he burden is on the settlement proponents to persuade the court[.]" *Katrina,* 628 F.3d at 196. "[T]he fee applicant bears the burden [.]" *Fessler v. Porcelana Corona de Mexico, S.A.,* 23 F.4th 408, 416-17 (5th Cir. 2022) (cleaned up).

# ARGUMENT

## I. PLAINTIFFS AND THE CLASS LACK ARTICLE III STANDING

### A. The district court lacked Article III powers to certify an injunctive class with speculative 'some day' intentions

*Frank* requires Plaintiffs to have standing to settle a class action. 586 U.S. at 492. Because "[s]tanding is not dispensed in gross[,]" *TransUnion,* 594 U.S. at 431, and must be demonstrated by "each form of relief sought", *id.,* this Court must reverse class certifications when Plaintiffs failed to satisfy the "irreducible minimum" of injury-in-fact. *Earl v. Boeing Co.,* 53 F.4th 897 (5th Cir. 2022).

"The preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d at 228. While *Wilson* decided that "the class-certification stage [is] beyond the motion-to-dismiss stage[,]" 144 F.4th at 792, this appeal reviews a final judgment under 28 U.S.C. § 1291. Under *Lujan*, the evidentiary burden to establish jurisdiction rises at each successive stage: at this "final stage," standing must be "'supported adequately by the evidence adduced at trial" or by "competent proof" in the record. 504 U.S. at 561. *TransUnion*—also reviewing a final judgment under

*28 U.S.C. § 1291*, held that "[e]very class member must have Article III standing in order to recover damages." 594 U.S. at 431.

The District Court's analysis—relying on Named Plaintiffs' status "to remain" as customers—fails to bridge the gap between their "ongoing" relationship and the specific injury alleged. ROA.2485-86. Because Named Plaintiffs seek only forward-looking injunctive relief for the class, they must show a "real and immediate" threat of the specific PFOF injury recurring, not merely that they "intend to trade again." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *TransUnion*, 594 U.S. at 435. ***The Named Plaintiffs here failed to specify an intent to trade the particular assets subject to the order flow payment ("PFOF") arrangements alleged to generate the harm.*** ROA.2199-2203. Their threadbare declarations are equally compatible with trading risk-free money market funds or mutual funds (ROA.38, 90)—transactions involving ***zero*** PFOF routing and, thus, ***zero*** injury. Under *Flowserve*, Plaintiffs failed to prove by a preponderance of evidence that their future trades would even trigger the alleged harm. Their assertions that they "intend to execute additional trades in the near future" are exactly the "'some day' intentions" the Supreme Court rejected in *Lujan*. 504 U.S. at 564. Recent guidance reinforces this necessity: standing requires

a "concrete link" between the complained-of conduct and the specific plaintiff, which cannot be forged through speculative future conduct. *Murthy v. Missouri,* 603 U.S. 43, 76 (2024); *cf. Ghedi v. Mayorkas*, 16 F.4th 456, 465 (5th Cir. 2021) (distinguishing specific professional travel from speculative leisure).

A declaration logically indistinguishable from that of an uninjured party cannot satisfy the "hard floor" of Article III. Because "[a]n appellate court may not consider new evidence furnished for the first time on appeal." *In re Deepwater Horizon*, 739 F.3d 790, 805 (5th Cir. 2014) (collecting cases), **this jurisdictional defect is now incurable.** Because *Wilson* requires Plaintiffs to have standing for class certification, Named Plaintiffs' failure to establish it ends the inquiry. *Frank*, 586 U.S. at 492. Moreover, the class definition sweeps in countless members who cannot demonstrate the requisite injury, making class certification improper. *See infra,* Part I.C.

### B. The district court erred to accept past harms for standing to seek future injunctive relief

The district court erred in its legal conclusion that Named Plaintiffs have an "imminent" future risk of harm because the Merger causes "ongoing harm" and Plaintiffs "intend to remain" Schwab customers who will "continue to receive reduced price improvements on their trades."

ROA.2485-86. The error is fundamental. *First,* the district court conflated standing for ***retrospective*** damages with standing for ***prospective*** injunctive relief. *TransUnion,* 594 U.S. at 431 ("Plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek [for example, injunctive relief and damages]."). The court's reliance on damages-only cases cannot supply standing for prospective relief. Even if the Merger previously impacted execution quality, such injury only generates damages claims. It does not supply standing for prospective injunctive relief, which requires a separate, "forward-looking" showing that the specific PFOF injury is "certainly impending.". *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea,* 414 U.S. at 495-96. Named Plaintiffs cannot bridge the jurisdictional gap with a "once injured, always standing" theory.

*Second,* the district court accepted Named Plaintiffs' latebreaking declarations as sufficient without applying the requisite preponderance of the evidence standard. *Frank* reaffirmed that bare allegations cannot suffice at the settlement stage. 586 U.S. at 492. *Flowserve,* 572 F.3d at 228.

The district court relied on *cases seeking damages,* claiming "it is sufficient … that the plaintiffs seek recovery for an economic harm that they

allege they have suffered." ROA.2448. But *Deepwater Horizon* was not certifying a class to stop oil spills *tomorrow*; it was a damages settlement redressing past harms. This *Corrente* settlement offers $0 to the class. Under the prior-panel-precedent rule, *Deepwater Horizon* cannot supersede *Flowserve* to bind an injunctive-only settlement that requires "competent proof" of "real and immediate" future harms.

### C. Countless class members lack standing[3]

Three latebreaking "intentions" from Named Plaintiffs cannot bind millions of class members at large. "Absent class certification, there is no justiciable controversy between the defendant and the unnamed putative class members, who were not yet before the court." *Cruson,* 954 F.3d at 251. Rule 23 cannot bypass the hard floor of Article III. Brief of the United States, *Lab'y Corp.* at 5 (U.S. LabCorp Br.) ("[A]ll class members must share the same injury, which necessarily includes a cognizable Article III injury.")

---

[3] Absent class members' lack of standing necessarily precludes Rule 23(a)(3) typicality, *see Flecha,* 946 F.3d at 768-69, as Plaintiffs' equity trading patterns cannot be common in brokerage accounts that *can* trade a wide variety of assets unexposed to market makers. "Rule 23(a)(3) may * * * screen out class actions in which the * * * factual position of the representatives is markedly different from that of other members of the class[.]") 7A Charles Alan Wright et al., *Fed. Prac. and Proc.* § 1764, *275 (3d ed. 2005).

Named Plaintiffs settled a class of "current U.S. brokerage customers of Schwab." ROA.1338. But “some people trade a lot … [s]ome people trade less so.” ROA.2933. The harm alleged is a ***transaction-specific harm***, not a persistent harm: Class members *not trading* receive *$0* in price improvement before or after the Merger. Whether, when, and what trade might occur is an “individual question ... where 'members of a proposed class will need to present evidence that varies from member to member.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). *Accord* ROA.2949. Because the class is defined without regard to the injury, it necessarily includes members without standing, making certification improper under *Wilson* and *TransUnion*, and defeats commonality and typicality under Rule 23(a). Plaintiffs’ approach will stretch *Wilson* to a breaking point, 144 F.4th at 788-89, by binding millions of customers who have not submitted any declarations, future trading intentions, or competent proof of future harms, except future costs from settlement implementation.

* * *

Just as *Earl* held that Plaintiffs cannot seek damages based on past risks that never materialized, 53 F.4th at 903, plaintiffs cannot transform their past damages claims into rights to seek injunctive relief—or bootstrap

a compliance program to "redress" speculative future harm. Without a "concrete link" (*Murthy*, 603 U.S. at 76) between the compliance program and an imminent injury to the named plaintiffs, the settlement is a jurisdictional nullity—a private attempt to exercise the kind of forward-looking regulatory authority reserved for the Department of Justice. See ROA.2927. Because Plaintiffs have no standing to seek this injunction, the entire settlement collapses.

Standing for injunctive relief requires more than "'some day' intentions." *Lujan*, 504 U.S. at 564. Plaintiffs failed to carry their burden under *Wilson*, 144 F.4th at 790, and cannot use a mandatory 36-million-member class to circumvent Article III. *Frank*, 586 U.S. at 492. This Court should reverse the settlement approval for lack of standing. If Plaintiffs insist that past economic injury alone supports injunctive relief, they must concede that their (b)(2) certification is improper under *Allison* and *Dukes*. *Infra* Part II.B.

## II. A mandatory class cannot be certified when notice is deficient and representatives are inadequate

It is ironic that reversing Plaintiffs' deal is the only way to preserve class-wide damage claims, because as currently structured, all "the settlement does for (to?) them is cut them off at the knees." *Crawford v.*

*Equifax Payment Svcs., Inc.,* 201 F.3d 877, 882 (7th Cir. 2000) (Easterbrook, J.). Named Plaintiffs settled their damage claims for $50/person. ROA.1340. But class members' *unreleased claims* will lose tolling in future class actions—a consequence only first footnoted in a rebuttal to objectors (ROA.2156 n.24).

### A. The class notice violated Due Process by not affirmatively disclosing loss of tolling for absentees' damage claims

"Schwab's records establish that the [class has] 36 million members." ROA.1017, 1032. Yet Plaintiffs only "properly noticed … approximately 25 million", ROA.2121. *Is it another bait-and-switch, or are they "past customers" (ROA.1011) who will also lose tolling without notice?*

*American Pipe* tolls the clock for individual claims during a pending class action, but *China Agritech* prohibits use of that tolling to file successive class actions after the limitations period has expired. 584 U.S. at 739-42.

"Before an absent class member may be forever barred from pursuing an individual damage claim, however, due process requires that he receive some form of notice that the class action is pending and that his damage claims may be adjudicated as part of it." *Johnson,* 598 F.2d at 438. "Notice of a mandatory class settlement … requires that class members be given information reasonably necessary[.]" *Katrina,* 628 F.3d at 197. *Katrina*

scrutinized "What Does the Settlement Provide?" and "How will the lawyers be paid?" sections to find notice "unfaithful" for failing to share "all necessary information for any class member to become fully apprised and make any relevant decisions." *Id.* at 198-99.

Actual notices failed: "What am I giving up to receive injunctive relief?" section never disclosed that tolling is extinguished in a mandatory settlement. ROA.1093. Instead, Plaintiffs affirmatively misrepresented that the deal "preserves" all damage claims. *See* ROA.1022 ("the Settlement preserves any right that absent class members have to bring damages claims (including on behalf of a class)"). The record proved otherwise:

- Class notice and FAQ section have no tolling mentions. ROA.1150-59.
- Plaintiffs' supporting declarations are silent on *China Agritech*. ROA.1122-1130, 1415-1423, 2199-2203. (Nor need they care: *their damages got settled for $50*. ROA.1340)
- Plaintiffs only admitted it in a rebuttal's footnote after an objector raised it. ROA.1999-2001, 2156 n.24.

For a layperson, "preserved" means "I can still sue later." It does not mean "the *China Agritech* rule means this class action is the *only* chance left to sue as a class action." Under *Katrina*, "it is unfaithful to the settlement

agreement to omit the fact" and "not clearly inform" the tolling losses with settlement approval. 628 F.3d at 198-99. ***As Parties settled a month before tolling became important*** (as the statute of limitations expires in October 2024 for Plaintiffs' claims; ROA.1106), the class was affirmatively misled that damage claims are "not releas[ed]" or "preserved" ROA.1303, 1022. It is a disservice to the class who axiomatically "allocat[ed]" $9 million of precious claims to pay for counsel's fee awards. *Strong,* 137 F.3d at 849-50.

Plaintiff disclosed nothing about the loss of tolling until their famous footnote reply. ROA.2156 n.24. Nor can Plaintiffs weaponize forfeiture to gain from halfhearted notices. ROA.1093. *See Morrow,* 140 F.4th at 261-62 (Courts owe an "independent obligation to protect the interests of the class.") (holding waiver does not apply to Rule 23(h) notice defects); *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) ("objector need not be an oracle and predict issues")

### B. Rule 23(b)(2) cannot "shoehorn" individualized monetary recoveries into a mandatory class

This case is what *In re Monumental Life Ins. Co.* warned against: "shoehorn[ing] damages actions into the Rule 23(b)(2) framework[.]" 365 F.3d 408, 416 (5th Cir. 2004). Under Plaintiffs' Rule 23(b)(2) settlement agreement "on behalf of the other members of the Settlement Class",

ROA.1332, "Schwab shall pay … USD $50 (fifty dollars) to each Plaintiff to settle and release the Plaintiffs' Released Claims[.]" ROA.1340, 1013, 2160. By accepting individualized $5,050 payments to settle their own damages, the Named Plaintiffs launched a private lifeboat for themselves, leaving the mandatory class to sink with $0 and a compliance program that the Defendant itself dismisses as "conjecture." ROA.2088.

*Essentially, Named Plaintiffs "opted out" of their own injunctive Rule 23(b)(2) class by settling their damages in it*. But the rule "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61. The District Court footnoted Plaintiffs' $50 payments, ROA.2443 n.2, but its decision that it "need[s] not delve" into predominance (ROA.2462) reflects fundamental error.

$50 payments for each Named Plaintiff constitute "individualized" monetary awards under *Dukes* and *Perry* outside of "a single injunction or declaratory judgment" that "would provide relief to each member of the class." *Perry*, 675 F.3d at 846 (quoting *Dukes,* 564 U.S. at 360).

*Second,* the district court erred in declining "*Allison*'s predominance test." *Monumental,* 365 F.3d at 418. It thought "injunctive relief is the only

relief sought[.]" ROA.2462. But a *de novo* review of the settlement agreement (ROA.1340) confirms these are damage claims, not classwide "incidental" relief. *Klier,* 658 F.3d at 474. Whether *Allison* applies is a question of law this Court reviews *de novo*, and not applying it is legal error.

Lastly, a remand to apply that standard is futile. Even if the court redid the *Allison* test, the settlement fails as a matter of law. Monetary relief is "incidental" only when it "flow[s] directly" to the class as a whole (*Allison*, 151 F.3d at 415), whereas these $5,050 payments are negotiated bounties that require individualized release. "[W]here the predominant relief sought is an award of money damages, class certification must proceed through the (b)(3) gate, with its mandatory opt-out provisions." *Klier*, 658 F.3d at 471.

In their rebuttals (ROA.2159), Named Plaintiffs characterize the $50 as "nominal." But the label is irrelevant; if $50 is permitted to bypass Rule 23(b)(2), then $500 or $5,000 will have inflation make them "nominal," and the "transparency" of the term becomes a shield for evading scrutiny. ROA.2161. Nor can Named Plaintiffs claim the $50 is "not part of the classwide settlement" (ROA.2159); such a claim contradicts the District Court's factual finding that "no other agreements" existed (ROA.2480) and would mean the parties reached an undisclosed side-deal.

Rule 23(b)(2) cannot permit "individualized" relief under *Dukes and Perry,* particularly as the court declined to apply *Allison*'s predominance test.

### C. The settlement is not adequate because Named Plaintiffs "opted out" of class members' zero-dollar outcome

Even if "tolling" appeared in the class notice (and it did not; ROA.1093), class representatives remain inadequate for the class.

*First,* Rule 23(a)(4) tests "the willingness and ability … to **protect the interests of absentees**.'" *Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 130 (5th Cir. 2005) (citations omitted). "[A] class representative [owes a] fiduciary duty not to throw away … a major component of the class's recovery." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (cleaned up). In *Gonzales*, "only the class representative, Gaytan, was awarded both retrospective monetary relief and prospective injunctive relief." *Id.* But absent class members "were granted only prospective relief." *Pettway,* 576 F.2d at 1177. This Court held when only a class representative "obtained individual relief[,]" it "constitutes inadequate representation[.]" *Gonzales,* 474 F.2d at 75-76. Crucially, this scrutiny is not reserved for *res judicata*; it is required of "the trial court making its initial 23(a)(4) determination." *Id.* at 74-75. *Accord In re Dry Max Pampers Litig.,* 724 F.3d 713, 721-722 (6th Cir. 2013).

Rule 23(e) demands more. *Amchem* held that "[s]ettlement is relevant to a class certification." 521 U.S. at 619. *Kincade* holds "by choosing to bring their action as a class action, the named plaintiffs disclaimed any right to a preferred position in the settlement. … [I]t does negate any claim a named plaintiff might have to preferred treatment simply by reason of his status as a class representative." 635 F.2d at 506 n.5. *Parker v. Anderson,* 667 F.2d 1204, 1211 (5th Cir. 1982) ("the duty owed by class counsel is to the entire class and is not dependent on the special desires of the named plaintiffs"). *See also* Fed. R. Civ. P. 23(e)(2)(D) (Settlements also must "treat[] class members equitably relative to each other.")[4]

Here, Named Plaintiffs each got the exclusive privilege to settle damage claims for $50; counsel for the *class* sought $5,000 service awards for each of them. ROA.1340, 1350, Named Plaintiffs also advocated to have 36 million (ROA.1017) class members get **$0**. Since reaching a deal that

[4] *Crawford* also reversed a deal where absentees "are free to file their own suits, *provided,* however, that no other suit may proceed as a class action." 201 F.3d at 880. The fact that "one class member receives $2,000 and the other 200,000+ nothing is quite enough" to reject the settlement under Rule 23(e). *Id.* at 882. It was "substantively troubling" that plaintiff "and his attorney were paid handsomely to go away; the other class members received nothing … and lost the right to pursue class relief.") *Id.*

included generous rewards, counsel also changed their tune from that of a consumer protector, ROA.136 ("impossible for individual Class members to redress the wrong" individually), to that of class-action skeptics. ROA.2157 ("individual litigation [is] a feasible and potentially rewarding path.")

The disparities demonstrate that Named Plaintiffs are inadequate under *Gonzales,* by securing the "preferred position" or "special desires" rejected by *Kincade* and *Parker*. Beyond exclusives for Named Plaintiffs, class members are notably worse off after the settlement: "You would either need to bring your own lawsuit on behalf of a damages class or file an arbitration individually with FINRA (because non-class claims are subject to binding arbitration under your account agreements). ROA.1842; *accord* Addendum, *infra*. Worse, "under *China Agritech* [584 U.S. 732, 740-42] the statute of limitations for classwide damages claims filed after approval of the Settlement would not receive the benefit of tolling." ROA.2156 n.24.

Despite notice failures and a $5,050 to $0 cash ratio, Named Plaintiffs argue *Gonzales* applies only in *res judicata*. ROA.2162. But *Gonzales* required the same in "the trial court making its initial 23(a)(4) determination." 474 F.2d at 74-75. Nor would absentees intervene if Named Plaintiffs were adequate. *Id*. Plaintiffs may argue that all benefit from the

compliance program (ROA.2138), but they share that benefit too—if it has any value—while also pocketing $5,050 each. Gaytan was a class member too; but he was inadequate for getting money only for himself.

"Plaintiffs are de facto releasing class claims of hundreds of millions of dollars (after trebling) for zero dollars." ROA.2003. Whether settlement terms changed their view of Rule 23's utility, *Kincade* remains: class representatives cannot get a "preferred position" and Named Plaintiffs cannot settle their own claims and neglect class members' recoveries. 635 F.2d at 506 n.5; *Parker,* 667 F.2d at 1211.

Plaintiffs cannot get perks as class representatives. If they truly endorse the "compliance program" (despite "conjecture" forecasts, ROA.2088 (Schwab), ROA.1973 (Iowa); ROA.2943), they *need no more*.

### D. The settlement violates Rule 23(e) and the Rules Enabling Act because $5,000 service awards created improper "preferred positions"

The $5,050-to-$0 ratio is an irreconcilable conflict, and service awards funded 99% of that ratio. These awards create a conflict of interest that dooms adequacy under Rule 23(a)(4) and violates the equitable requirements of Rule 23(e). A settlement that pays the representatives to settle while leaving the class with nothing cannot be "fair, reasonable, or

adequate." *Crawford,* 201 F.3d at 882 ("that one class member receives $2,000 and the other 200,000+ nothing is quite enough" to deny settlement approval); *Dry Max Pampers,* 724 F.3d at 722 (Service awards "make … class representatives … have no reason to care whether … unnamed class members can [receive] adequate relief.").

*Kincade* held "named plaintiffs disclaimed any right to a preferred position in the settlement." 635 F.2d 501, 506 n.5. *Kincade* binds this Court and the Eleventh Circuit alike. Applying that binding precedent, the Eleventh Circuit concluded that incentive awards are categorically prohibited. *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1259 & n.9 (11th Cir. 2020). This Court should reach the same conclusion under its own precedent.

Applying *Kincade* also prevents a collision with the Rules Enabling Act, 28 U.S.C. § 2072(b), requiring federal rules "shall not abridge, enlarge, or modify any substantive right." Rule 23 is merely a "procedural means of aggregating claims" (U.S. LabCorp Br. at 13) and cannot be used to "enlarge… any substantive right." Because individual plaintiffs cannot receive incentive awards in individual lawsuits, Rule 23 cannot transform a procedural tool into a tool for enriching representatives at the class's

expense. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 & n.9 (1980) ("central concept" of Rule 23 is cost-sharing, not cost-enlargement).

A growing circuit split reflects the inertia of courts that have not confronted the alignment between Rules Enabling Act and *Kincade*'s logic. *Scott v. Dart,* 99 F.4th 1076, 1085 (7th Cir. 2024) (collecting cases). But the Rules Enabling Act and *Kincade* together compel the same conclusion that service awards create the exact "preferred position" this Court has rejected. A ban restores the integrity of the class-action mechanism by ensuring Named Plaintiffs see the real—*not sugarcoated*—outcome facing class members. *NPAS*, 975 F.3d at 1258.

Because the district court failed to recognize that these awards create a conflict that violates Rule 23, *Kincade,* and the Rules Enabling Act, its approval must be reversed.

* * *

As Iowa and Huang both asked: why couldn't every absent class member receive $50 too? ROA.1967 n.1. Because the $5,050-to-$0 disparity is not an oversight—it is the price of Named Plaintiffs' abandonment.

This Court should reverse.

## III. UNDER *TORRES,* "THE DISTRICT COURT ABUSED ITS DISCRETION IN EXPLICITLY DISCLAIMING USE OF THE JOHNSON FACTORS"

District courts owe a fiduciary duty to the class. This Court recognized that "the trial court's duty of active involvement continues to ensure fairness through the fee awards stage … when it comes to fee awards in the class action context, "the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." *Morrow,* 140 F.4th at 262.

That is why this Court requires "district court[s] to conduct proper lodestar-fee ***and*** *Johnson* analyses[.]" *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 284 (5th Cir. 2008) (emphasis added). In *Torres,* this Court considered a "district court's statement that it was "unnecessary to engage in determining the reasonableness of the fee and costs under the *Johnson* fee calculation factors … This statement is at odds with our decision in *High Sulfur* and prevents us from concluding that the district court properly utilized the Johnson framework." 945 F.3d at 352. This Court had "little choice but to find that the district court abused its discretion in explicitly disclaiming use of the *Johnson* factors." *Id.* at 354.

Here, that legal standard of "whether the lodestar value should be adjusted either upwards or downwards based on the twelve *Johnson* factors" *was disclaimed again*. ROA.2506. The court did so because "neither Plaintiffs' Counsel nor Defendant argue for an adjustment to the lodestar in this case." *Id.* (citation omitted). "Indeed, Plaintiffs' Counsel seeks an award for less than the lodestar amount in this case." *Id.* Then, the court quoted this line with approval: "[b]ecause there is a strong presumption that the lodestar represents a reasonable fee … the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable" ROA.2507. Further, the court applied "a presumption of reasonableness in the request for an attorney's fee award." ROA.2480. The court again stated "the fact that Plaintiffs' Counsel's requested fee award is both unopposed by Defendant and less than their lodestar weighs heavily in favor of a finding of reasonableness." ROA.2507.

*Torres* cannot agree: "That the record does not clearly reflect that the district judge utilized the *Johnson* framework is error." *Torres,* 945 F.3d at 355. "Nor does it save the award to read the court's statement that the *Johnson* factors were "unnecessary"[.]" *Id.* at 354. This Court had "little choice but to find that the district court abused its discretion in explicitly

disclaiming use of the *Johnson* factors." *Id. Accord High Sulfur,* 517 F.3d at 228 ("When a district court awards attorneys' fees it must explain how each of the *Johnson* factors affects its award.") *McClain,* 519 F.3d at 284 (remand "for the district court to conduct proper lodestar-fee and *Johnson* analyses").

As "courts have "an independent obligation to protect the interests of the class," that was an abuse of discretion whether or not [Huang] raised the issue." *Morrow,* 140 F.4th at 262. It would be inequitable to apply forfeiture for Huang—he cannot "predict issues that will arise for the first time in the district court's final order." *Saucillo,* 25 F.4th at 1129. Forfeiture cannot bar review under *Morrow,* and *Saucillo* is also directly comparable. In *Morrow,* this Court considered appellants who challenged a district court's order on attorney's fees without class notice. 140 F.4th at 261. Appellants argue "they cannot have forfeited the issue because they never had the opportunity to raise it." *Id.* It did not matter: "[b]ecause courts have "**an independent obligation to protect the interests of the class**," that was an abuse of discretion **whether or not Plaintiffs … raised the issue.**" *Id.* at 262 (emphasis added). As *Morrow* recited the Advisory Committee Notes to Rule 23(h), "the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come

from a common fund or are otherwise paid. *Even in the absence of objections*, the court bears this responsibility." *Id.* (quoting Fed. R. Civ. P. 23(h), Advisory Committee Notes—2003 Amendment) (emphasis in original). "[E]ven if [Huang] did have the opportunity to raise the [*Johnson*] issue below and neglected to do so, we have discretion to consider it." *Id.* at 261. The Rule 23 "posture" supports review, *id.,* and whether the district court applied the *Johnson* factors is also a question of law. This Court "ha[s] discretion to address a forfeited issue if it "involves a pure question of law, and our refusal to address it would result in a miscarriage of justice."" *Id.*

*Saucillo*, 25 F.4th at 1129 (Mares appeal) is also instructive. "Mares objected to the size of settlement for the class claim" below. *Id.* at 1129. But Mares "does not renew his same objections on appeal." *Id.* His appeal argues that "the district court erroneously applied a presumption of fairness." *Id.* The Ninth Circuit reversed, agreeing with Mares' reasoning that "he could not pre-object" to the district court employing the incorrect legal standard, holding that "when the district court considered [an] issue" in its final order, "the issue is not waived on appeal" even if no objector raised it. *Id.* at 1130. "In other words, an objector need not be an oracle and predict issues that will arise for the first time in the district court's final order." *Id.*

* * *

"*High Sulfur* was concerned with the *court's procedures*," *Torres,* 945 F.3d at 354 (emphasis in original), which requires ***both*** "proper lodestar-fee and *Johnson* analyses[.]" *McClain,* 519 F.3d at 284. A full *Johnson* analysis would reveal, *e.g.,* the divergence between the **$8,250,000** fee award and mere **$15,150** total class-wide cash recovery ($0 for ~25 million absent class members and $5,050 per Named Plaintiff; ROA.1340-43, 1350). The eighth Johnson factor, the amount involved and the results obtained, would weigh heavily against the fee award when even Defendant Schwab itself rejected the settlement's anticipated benefits as "conjecture." ROA.2088.

Rule 23(h) allows no "presumption" of fee reasonableness. ROA.2480. As a part of defendant's total costs, *Strong,* 137 F.3d at 849-50, courts "must scrutinize a fee award under the Johnson factors and not merely 'ratify a pre-arranged compact.'" *High Sulfur,* 517 F.3d at 228. "[B]y summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court "abdicated its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone"" *Id.* (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980)).

## IV. THIS COURT SHOULD REVERSE AND REMAND

"[C]lass counsel … can't be trusted to represent the interests of the class." *In re Walgreens Co. Stockholder Litig.,* 832 F.3d 718, 726 (7th Cir. 2016). If Plaintiffs' case is not dismissed as in *Earl,* 53 F.4th at 903; *Muransky,* 979 F.3d at 936, this Court should provide guidance to deter abusive class-action settlements. Class-action settlements should not be a "catch-22" where *class members face massive burdens of protecting themselves from faulty proposals* (while States must watch, as Plaintiffs' motion insists). "Judicial economy counsels that we reach these issues now, so that any error may be corrected in a single proceeding on remand." *United States v. Marine Shale Processors*, 81 F.3d 1361, 1369 n.8 (5th Cir. 1996); *La. Generating, LLC v. Il. Union Ins. Co.,* 831 F.3d 618, 629 n.33 (5th Cir. 2018) (collecting cases). Many circuits do so in objector appeals. *In re Optical Disk Drive Prods. Antitrust Litig.,* 959 F.3d 922, 935 (9th Cir. 2020); *Williams,* 65 F.4th at 1259-60. Such merits issues are frequently "capable of repetition, yet evading review." Help is needed to deter future fee-driven settlements from crafting creative but illusory class-wide relief. *See* ROA.2951.

Further, Huang is a class member, but besides illustrating the notice failures, he cannot raise grievances of other "past customers" (ROA.1011)

who cannot receive notice, lost tolling, with no access even to the "compliance program". But either this Court's "independent duty" (*Morrow,* 140 F.4th at 262) or Iowa's *parens patriae* capacity should protect them, too.

## CONCLUSION

The district court's orders below should be reversed.

Date: March 25, 2026

Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2813 SW Rother Rd.
Topeka, KS 66614
(314) 669-1858
defectivesettlement@gmail.com

*Objector-Appellant Shiyang Huang*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1: this document contains 10,478 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 2007 in 14-point Charter font.

/s/Shiyang Huang

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using this Court's CM/ECF system on March 25, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/Shiyang Huang