No. 25-40774

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

JONATHAN CORRENTE; CHARLES SHAW; LEO WILLIAMS,
Plaintiffs-Appellees,

*versus*

THE CHARLES SCHWAB CORPORATION,
Defendant-Appellee,

*versus*

STATE OF IOWA, OBJECTOR; SHIYANG HUANG, OBJECTOR,
Appellants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
USDC NO. 4:22-cv-00470
(The Honorable Amos L. Mazzant III, Presiding)

_____

## BRIEF OF AMICUS CURIAE ALEX KOZINSKI SUPPORTING
## APPELLANTS AND SUGGESTING REVERSAL

_____

Eugene Volokh (CA Bar #194464)
Hoover Institution
Stanford University*
434 Galvez Mall
Stanford, CA 94305-6003
Tel: (650) 721-5092
volokh@stanford.edu
*Affiliation for identification only

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ ii

INTEREST OF AMICUS .................................................................... 1

SUMMARY OF ARGUMENT ............................................................. 2

ARGUMENT ...................................................................................... 3

CONCLUSION ................................................................................. 18

CERTIFICATE OF COMPLIANCE ................................................. 20

CERTIFICATE OF SERVICE .......................................................... 21

## TABLE OF AUTHORITIES

**Cases**:

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) .......................... 7

*China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018) ................................ 8-9

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ....................................... 6

*Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877 (7th Cir. 2000) 4

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) .............................. 16

*Farrar v. Hobby*, 506 U.S. 103 (1992) ............................................ 12, 17

*Fessler v. Porcelana Corona de Mexico, S.A. de C.V.*, 23 F.4th 408 (5th Cir. 2022) ................................................................. 2, 12-13, 17, 19

*Hawes v. Macy's Inc.*, 2024 WL 2125640 (S.D. Ohio May 13, 2024) ..... 6-7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................. 10, 12, 17

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ............... 2, 4

*Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) ......... 5

*Klee v. Nissan N. Am., Inc.*, No. 2:12-cv-08238-BRO-PJW (C.D. Cal. 2013) ............................................................................................ 1

*La. Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995) .......... 12

*Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013) ............................................................................................ 5

*Roes v. SFBSC Mgmt.*, 944 F.3d 1035 (9th Cir. 2019) ...................... 4, 18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .......................... 3, 5-6

*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998) ..... 19

*Women's Comm. for Equal Emp't Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173 (S.D.N.Y. 1977) ............................................................. 4

**Statutes:**

15 U.S.C. § 18 (Clayton Act, Section 7) ............................................ 8, 11

**Interest of Amicus**

Amicus has spent most of his half-century career within the federal judiciary. Following his graduation from UCLA Law School in 1975, he clerked for Ninth Circuit Judge (now Justice) Anthony M. Kennedy. He then clerked for Chief Justice Warren E. Burger. In 1982 President Reagan appointed him as the first Chief Judge of the United States Claims Court (now the United States Court of Federal Claims). In 1985 he was appointed to the Ninth Circuit, where he served until his retirement in 2017. He was Chief Circuit Judge from 2007 to 2014.

In 2013, he was an objector to the class-action settlement in *Klee v. Nissan North America, Inc.*, No. 2:12-cv-08238-BRO-PJW (C.D. Cal. 2013).

Amicus has an abiding interest in the administration of justice in the United States and particularly in the federal courts. As the Class Action Fairness Act has moved most significant class-action lawsuits to federal court, it has shifted to district judges much of the responsibility for ensuring that class actions are administered fairly. When class actions are settled, this responsibility becomes especially consequential because "[c]lass-action settlements are different from other

settlements." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). This is so because "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations." *Id.* Amicus believes that the district court below did not adequately discharge this responsibility.

Amicus writes only for himself. No one else contributed financially to the preparation or submission of this brief. No party's counsel authored the brief in whole or in part. All parties have consented to filing it. Fed. R. App. P. 29(a)(2).

## Summary of Argument

At least three things went wrong below that the district court failed to address adequately: The named plaintiffs cut a side deal—$50 each plus $5,000 "service awards"—while the rest of the class got no damages. The class notice never told 25 million people that approving the settlement would kill their ability to bring future class claims. And the court awarded $8.25 million in attorney's fees without answering the key question posed by this Court's opinion in *Fessler v. Porcelana*

*Corona de Mexico, S.A. de C.V.,* 23 F.4th 408 (5th Cir. 2022):  How substantial was the relief the class actually got?

### Argument

Mindful of the Court's heavy workload and the limited time it can devote to any particular case, amicus will focus on only three objections that the district court did not adequately address.  While the other issues raised by appellants merit serious consideration, amicus believes these errors are sufficient to warrant reversal.

**1.**  Each of the named plaintiffs received a $50 account credit plus a $5,000 "service award"; no other class members did.  Put aside the service awards (discussed below), what is the justification for cutting a damages side-deal with the class representatives?  "Such special rewards for counsel's individual clients are not permissible when the case is pursued as a class action."  *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003).  "Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations."  *Id.*

"[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised." *Women's Comm. for Equal Emp't Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977).  Other circuits have condemned the practice.  *See, e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 721-22 (6th Cir. 2013); *Roes v. SFBSC Mgmt.*, 944 F.3d 1035, 1056-58 (9th Cir. 2019); *Crawford v. Equifax Payment Servs., Inc.,* 201 F.3d 877, 882 (7th Cir. 2000) ("Crawford and his attorney were paid handsomely to go away; the other class members received nothing").

More troubling is the district court's indifferent treatment of the issue, to which it devotes a single footnote:

> Plaintiffs also assert that no conflict of interest is created by the fact that they will each receive $50 from Defendant in return for releasing their individual damages claims since any damages claims of the absent class members are not being released under the Settlement (Dkt. #197 at p. 18).  Thus, there is no concern that Plaintiffs have sacrificed the right of the absent class members for their own benefit (Dkt. #197 at p. 18).

ROA.2459 n.7.  While not expressly adopting this argument, this is the sum and substance of the district court's treatment.

But this makes no sense at all.  To the contrary, it confirms that the class representatives got a *different* (and better) deal than the rest

4

of the class: They each got $50 while the rabble got a chance to sue for whatever they can prove on their own. Why this is of "no concern" to plaintiffs, and presumably the district court, is unclear. By failing to explain why this makes sense, the district court abused its discretion.

Now a word about the $5,000 service awards, which also go by the name "incentive awards." Substantial service awards create an incentive for class representatives to support the settlement. They thus create a conflict between their ethical duty to advocate on behalf of the class and their self-interest in being paid.

While many courts allow them, this Court's neighbor-circuit, the Eleventh, has categorically prohibited them. *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1255–62 (11th Cir. 2020). Even circuits that permit such awards have expressed concern about their routine approval. *See, e.g., Pampers*, 724 F.3d at 722; *Staton*, 327 F.3d at 975-78. They caution that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives" because they can "corrupt the settlement by undermining the adequacy of the class representatives and class counsel." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157,

5

1164 (9th Cir. 2013). Therefore, "district court[s] must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

While the Court might ultimately uphold these awards, it should not do so on this record because the district court did not give the awards sufficient scrutiny. For one thing, $5,000 is far more than the *entire class* received as damages ($0) and 100 times the damages even the named plaintiffs recovered. Courts have disapproved incentive awards disproportionate to the damages recovered. *E.g., Staton,* 327 F.3d at 975-78; *Hawes v. Macy's Inc.*, 2024 WL 2125640, at *7 (S.D. Ohio May 13, 2024) (disapproving awards "between *200x* and *1400x* the per-capita class recovery that other class member will receive on a first distribution" (emphasis in original)).

6

For another, the justification for the incentive awards here is thin. It consists of identical paragraphs from three named plaintiffs, each of which reads in relevant part:

> I estimate that I have spent a total of 30-40 hours of time working on this case with counsel from its inception to present.  This work includes keeping abreast of case and settlement developments, reviewing and collecting my own documents for production to Schwab (including manually searching for years of financial records requested by Schwab and providing those records to counsel), responding to written discovery requests (including detailed interrogatories about my finances and trading history), and periodically discussing case-related matters with my counsel.

Supplemental Declarations of Jonathan Corrente, Charles Shaw and Leo Williams, ROA.2199–2200, 2201–2202, 2203–2204.

Plaintiffs don't explain why such routine litigation chores (for which parties who aren't class representatives don't get paid) merit between $125 and $166.67 an hour, which itself is much more than twice the damages they recovered.  "At bottom, if class counsel intends to seek an incentive award that represents such an inflated recovery compared to what the absent class members will receive, it is incumbent upon counsel to explain why it is justified."  *Hawes*, 2024 WL 2125640, at *7; *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal.

2008) ("[T]he parties should present ... evidence of the named plaintiff's substantial efforts taken as class representative to justify the discrepancy between her award and those of the unnamed plaintiffs." (footnote omitted)). This Court should instruct district courts that vague, rote recitations like those here are inadequate to support substantial incentive awards.

**2.** Theodore H. Frank objected that the class notice was misleading because it did not caution class members that they could not bring their claims as a class action, and thus effectively couldn't bring those claims at all:

> Plaintiffs assert that "The proposed class settlement does not release or resolve any damages claims available under Section 4 of the Clayton Act." Dkt. 197 at 1. This is technically true, but misleading, because a court approval of the settlement will foreclose future class claims for damages. *Individual* class member claims are tolled by the class action, but it is now impossible to bring class claims for damages where the four-year statute of limitations has expired, because class actions are not tolled. *China Agritech, Inc. v. Resh*, 584 U.S. [732] (2018). And as plaintiffs acknowledge in their complaint,
>
>> Because the damages suffered by each individual Class member may be relatively smaller than the costs of litigation, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such

8

> > that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions …

> Dkt. 1 ¶ 476.  The loss of the class claims thus means the loss of the individual claims.

ROA.1999–2000.

Plaintiffs conceded that *China Agritech* holds what Frank claims because, of course, it does.  ROA.2156 n.24.  But they argued that "[i]t is … not a basis to reject the Settlement" because "it is pure speculation" that "absent the settlement, a damages class encompassing all Class Members would have been certified."  *Id.*  Schwab, for its part, argued that some class members claimed to have significant damages and thus an incentive to litigate, while the claims of others are "indeed small" and thus their "interest in preserving those claims is correspondingly insignificant" and "inappropriate for class treatment."  ROA.2085–2086.  But claims too small to litigate individually are precisely why class actions are useful, and uncertainty about class certification is no greater for a future class involving the same individuals than it was in this case.  In any event, neither plaintiffs nor Schwab respond to Frank's challenge to the sufficiency of *notice* rather than the substance of the settlement.

The district court did not address the issue. ROA.2464–2469 (discussing other notice challenges).

Whether Frank's objection is valid calls for judgment about materiality. The district court might conclude that the omission is immaterial; or it might determine that *some* of the 25 million class members did not object because they were lulled into believing they might be the beneficiaries of another class action. Whichever way the district court resolved the issue, this Court would doubtless have given that ruling substantial deference. But implicitly rejecting the objection without discussion or acknowledgement is an abuse of discretion. Frank's argument was neither frivolous nor poorly articulated. If sustained, it would likely have precluded class certification or settlement approval. The court's failure to address it requires reversal and, at the very least, remand for consideration of the issue.

**3.** As the district court recognized early in its order approving the $8.25-million attorney's fee award, "The most critical factor in determining reasonableness is the degree of success obtained." ROA.2496 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). But after nodding to this admonition, the court did nothing to implement it.

10

Rather, it discussed other issues, such as the lodestar rate, block billing, the difficulty of the case and the diligence of the lawyers. But it never answered the fundamental question at the heart of the Supreme Court's and this Court's jurisprudence: What degree of success was obtained on behalf of the class?[1]

That the result here is, at best, a partial victory is obvious from the complaint. It spans 103 pages and 488 paragraphs. It claims that Schwab violated section 7 of the Clayton Act by acquiring a competitor. It seeks divestiture, treble damages, disgorgement, segregation of the Schwab and Ameritrade lines of business and "requiring that Plaintiff and the Class Members be permitted to opt-out of payment for order

---

[1] A single footnote in the district court's order might be construed as addressing this issue. ROA.2501 n.9:

> In further support of their Attorney's fee award, Plaintiffs' Counsel contends that this lawsuit is one of only two successful post-merger Section 7 challenges this century and would also be the only successful challenge relating to payment-for-order-flow practices (Dkt. #199 at pp. 15–16).

If the district court meant to adopt this as a finding, it's insufficient. It merely shows that the case was difficult and had *some* success. That doesn't address the *degree* of success. Had the district court denied class certification, and had plaintiffs then prevailed in their individual claims, that too would have been success, but would not justify class-action attorney's fees. As in fishing, size matters.

11

flow for their trades." ROA.139. The settlement accomplished none of these objectives. What the class got instead was a 4-year monitoring program that was not mentioned in the complaint and the value of which objectors have called into question. Whatever its value, it was not everything (or anything) the complaint set out to achieve; at best, the settlement is a partial victory.

This Court recently issued guidance as to how district courts must evaluate attorney's fees applications when the result is a partial victory. *Fessler v. Porcelana Corona de Mexico, S.A. de C.V.,* 23 F.4th 408 (5th Cir. 2022). Relying on *Hensley* and *Farrar v. Hobby*, 506 U.S. 103 (1992), this Court explained: "It is axiomatic that 'work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved ... and therefore no fee may be awarded for services on [an] unsuccessful claim.'" *Id.* at 416 (quoting *Hensley*, 461 U.S. at 435 (cleaned up)). "When a plaintiff's claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly." *Id.* (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 n.13 (5th Cir. 1995)). "Class Counsel is not entitled to any fee recovery for hours expended on these

unsuccessful claims unless the district court finds a 'common core of facts' or 'related legal theories.'" *Fessler*, 23 F.4th at 417 (quoting *Hensley*, 461 U.S. at 434-35).  And even if "the district court had adequately supported its conclusion that unsuccessful claims were intertwined with those that proved successful, the court [must still] … properly analyze the award in relation to the results obtained." *Id.* at 418.

The district court did none of this.  It disregarded *Fessler*'s teaching by concluding that "the Objectors['] attempt to undermine the requested fee award by comparing it to the speculative value of the injunctive relief provided by the Settlement is not a proper basis to object." ROA.2513.  But *Fessler* rejected this shortcut:  "[T]he court must consider the amount of damages *and non-monetary relief sought* compared to what was actually received by the Class." 23 F.4th at 419 (emphasis added).

> The district court offered an alternative rationale:
>
> Nevertheless, even if Plaintiffs' Counsel had to justify their attorney's fee award based on the value of the injunctive relief provided by the Settlement, the Court finds that Plaintiffs' Counsel has easily done so in this case  (*See* Dkt. #196 at ¶¶ 84–85 (providing, in an expert report, that the compliance program will yield additional price

improvements between $10.7 million and $14.5 million per month for Schwab brokerage customers)).

ROA.2513.

Even without an objection, the district court was not entitled to adopt the best-hope estimates of plaintiffs' expert without explaining why those figures are rationally-based and reasonable. But here, objector State of Iowa vigorously challenged the value of the compliance program:

> Plaintiffs' own experts disclaim any actual results. *See* Dkt. 205 ¶ 87. As they explain, their proposed solutions "are still subject to approval by" Schwab …. *Id.* "To the extent that the final agreed-upon Compliance Program differs in its provisions from the recommendations in this report, we assume the expected price improvement to differ as well." *Id.* … [T]he settlement agreement binds Schwab to neither of the expert report's suggested paths, making the analysis mere conjecture. Even on the experts' own terms, their "estimates rely on limited data." *Id.* The upshot is that the experts cannot say that monitoring would be successful ….
>
> …
>
> Iowa is particularly skeptical that the actual value of this settlement is "$128.4 million to $174 million annually," *id.* at 25—an amount based on a hypothetical program that will perform unspecified tasks in pursuit of vaguely defined duties in return for an annual announcement that things for the class have gotten no worse. Schwab … has agreed to change none of the alleged nefarious behavior that Plaintiffs claimed had distorted the market and cost them actual

14

dollars …. The value of that settlement to anyone but the named Plaintiffs, who each get $5,050, is zero.

ROA.1973, 1976.

Responding to this objection, plaintiffs relied on their experts to claim that "the program called for in the settlement ... *may* provide on the order of more than one hundred million dollars per year of benefit to Class Members." ROA.2125 (emphasis added). But they did not address Iowa's argument that those figures are illusory. Schwab, for its part, *agreed* with Iowa that the expert report's "value calculations are conjecture." ROA.2088. Significantly, Schwab confirmed that it "does not endorse that report's recommendations and *has not agreed to adopt the measures it outlines*." *Id.* (emphasis added). Even the district court acknowledged "the speculative value of the injunctive relief provided by the Settlement." ROA.2513.

How can a program that the operative party does not endorse or commit to implement even be valued? Why is it worth hundreds of millions of dollars when one party to the agreement believes that the "value calculations are conjecture" and the district court calls them "speculative"? Do class members benefit from a program that Schwab may not implement? Where do they complain if Schwab never agrees to

15

implement the recommended measures, or implements a watered-down version?  Sure, the settlement provides for court supervision but, on Schwab's telling, it's not bound to do anything the experts recommend, so what is there for the court to supervise?

While raised here in the context of the fee award, valuation of the relief obtained for the class permeates the case.  If the settlement is worth materially less than the district court believed, that would bear directly on "the degree of success obtained," the fidelity and competence of class counsel, the objectivity of the class representatives and the settlement's overall fairness.  This issue can't be swept under the rug by an oblique finding tucked into a parenthetical.  Valuation calls for a substantial justification and a hard look in order "to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012).  This, the district court did not do.

But there is another defect in the district court's order.  Even assuming that the settlement is worth what plaintiffs allege, the fact remains that plaintiffs presented numerous claims that were not

16

successful. A battery of lawyers spent almost 15,000 hours on the case. Were any of those hours spent investigating or researching claims that failed? If so, those hours must be excluded under the Supreme Court's teachings in *Hensley* and *Farrar*, and this Court's command in *Fessler*. The district court said nothing about it.[2]

Perhaps the court believed that every one of plaintiffs' unsuccessful claims shared "a common core of facts" and "common legal theories" with the claim for which they obtained prospective relief. But, as this Court noted in *Fessler*, "Class Counsel must shoulder the burden of proving that the hours submitted are for claims sharing a common core of facts." 23 F.4th at 418. Did plaintiffs' counsel here carry that burden? The district court does not say. Instead, the district court touts the difficulty of the issues, the diligence and expertise of counsel, and that Schwab did not oppose the fees motion. But Schwab had *agreed* not to oppose fees in the amount plaintiffs requested. Such

---

[2] Counsel took a 24 percent haircut on its fees, but the district court attributed this reduction to the fact that counsel used block billing, itself a suspect practice ("this voluntary percentage reduction is consistent with the reduction routinely applied for block billing by both the Fifth Circuit and this Court," ROA.2502), not because some of the hours were spent pursuing claims that were unsuccessful.

"clear sailing" provisions are not a confirmation that the fee application and the settlement as a whole are fair; they are "important warning signs of collusion." *Roes*, 944 F.3d at 1051. As for the difficulty of the issues and counsel's diligence and expertise, they count for little. Unsuccessful claims are usually difficult and many diligent, competent lawyers lose. And when they work on a contingency, they don't get paid.

## Conclusion

Class actions are an important innovation in American law. Millions of consumers who cannot afford to hire lawyers, or whose damages are too small to justify litigation, have benefitted and continue to benefit. Class action lawyers perform a public service. They spend countless hours and expend copious resources on discovery, experts and other litigation expenses. If they win, they deserve to be rewarded handsomely, not only for the work they did but also for the risk they took. But, if they are rewarded, it is important to ensure that the rules are followed and the win is amply documented. Only the district court supervising the case can do this.

As this Court noted in *Fessler*, "the court's scrutiny should 'guard[] against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class.' *Strong [v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 849 (5th Cir. 1998)]." 23 F.4th at 419-20. The district court's perfunctory approval of the settlement here does not satisfy this standard. The judgment below must be reversed.

Date: March 30, 2026

Respectfully submitted,

/s/ Eugene Volokh
Eugene Volokh (CA Bar #194464)
Hoover Institution
Stanford University*
434 Galvez Mall
Stanford, CA 94305-6003
Tel: (650) 721-5092
volokh@stanford.edu
*Affiliation for identification only*

19

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 3805 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Date: March 30, 2026

/s/ Eugene Volokh
Eugene Volokh (CA Bar #194464)
Hoover Institution
Stanford University
434 Galvez Mall
Stanford, CA 94305-6003
Tel: (650) 721-5092
volokh@stanford.edu

20

# CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I electronically filed the foregoing Brief of Amicus Curiae Alex Kozinski Supporting Appellants and Suggesting Reversal with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send notification of such filing to all counsel of record.

Date: March 30, 2026

/s/ Eugene Volokh
Eugene Volokh (CA Bar #194464)
Hoover Institution
Stanford University
434 Galvez Mall
Stanford, CA 94305-6003
Tel: (650) 721-5092
volokh@stanford.edu