No. 25-40774

# In the United States Court of Appeals for the Fifth Circuit

Jonathan Corrente; Charles Shaw; Leo Williams

*Plaintiffs-Appellees*

v.

The Charles Schwab Corporation

*Defendant-Appellee*

v.

Shiyang Huang, Objector; State of Iowa, Objector

*Movants-Appellants*

On Appeal from the United States District Court
for the Eastern District of Texas
No. 4:22-cv-470
Honorable Amos Mazzant, III

## REPLY BRIEF OF APPELLANT SHIYANG HUANG

Shiyang Huang
2813 SW Rother Rd.
Topeka, KS 66614
defectivesettlement@gmail.com


*Objector-Appellant Shiyang Huang*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Members of this Court may evaluate possible disqualification or recusal.

1. The Charles Schwab Corporation - Defendant
2. Alan Schoenfeld - Counsel for Defendant
3. Wilmer Cutler Pickering Hale and Dorr LLP - Counsel for Defendant
4. Andrew Thompson (Tom) Gorham - Counsel for Defendant
5. Gillam & Smith LLP - Counsel for Defendant
6. Chris Casamassima - Counsel for Defendant
7. Cynthia Richman - Counsel for Defendant
8. Gibson, Dunn & Crutcher LLP - Counsel for Defendant
9. Daniel Glen Swanson - Counsel for Defendant
10. David Charles Marcus - Counsel for Defendant
11. Harry Lee Gillam, Jr - Counsel for Defendant
12. Jeffrey Liu – Counsel for Defendant
13. James Travis Underwood - Counsel for Defendant
14. Jason Jacob Mendro - Counsel for Defendant
15. Jennifer Milici - Counsel for Defendant
16. John O'Toole - Counsel for Defendant
17. Melissa Richards Smith - Counsel for Defendant
18. Veronica Smith Moye - Counsel for Defendant
19. King & Spalding - Counsel for Defendant
20. Nancy Atlas - Mediator
21. Christopher Kirk Harris - Objector
22. David Ray Whipple - Objector
23. Gavin Rozzi - Objector
24. Richard Farri - Objector
25. Shiyang Huang – Objector-Appellant
26. State of Iowa – Objector-Appellant

27. Brenna Bird - Counsel for Objector-Appellant
28. Eric H. Wessan - Counsel for Objector-Appellant
29. Breanne Stoltze - Counsel for Objector-Appellant
30. Theodore H. Frank - Objector
31. Joseph Scott St John - Counsel for Objector
32. Michael Frank Bednarz - Counsel for Objector
33. The Honorable Alex Kozinski (Ret.) – *Amicus Curiae*
34. Eugene Volokh – Counsel for *Amicus Curiae*
35. Cameron L Hess - Objector
36. Williams Grubbs - Objector
37. Maria Demelo - Objector
38. Taylor Rengel - Objector
39. Eric Wrage - Objector
40. Richard H Kalin - Objector
41. Richard & Tanii Hunt - Objector
42. Shmuel Klein - Objector
43. Daniel Hallman Jr. - Objector
44. Brandon Stanley - Objector
45. Susan Sheridan - Objector
46. Corey Zinn - Objector
47. Michael Witten - Objector
48. Melville Webster, III - Objector
49. Nathan Simon - Objector
50. John Tucker - Objector
51. Nancy & George Ludwig - Objector
52. Fredrick Mattox - Objector
53. Wenjing Jiang - Objector
54. Nick Kephalos - Objector
55. Carol Galinski - Objector
56. Aldo Barreras - Objector
57. Christopher Madden - Objector
58. Matthew Gordan - Objector
59. Matthew Bosco - Objector
60. James Tylman - Objector
61. Bryan Poynter - Objector
62. Aji Kim Seung Poynter - Objector
63. Mark West - Objector
64. David Wilkie - Objector
65. Pamela Kummer - Objector
66. Dorian Bilik - Objector
67. Brent Rockwell - Objector
68. Craig West - Objector
69. Thomas Patrick Malone - Objector
70. Wendy Marquez - Objector
71. Stephan & Karen Frantzen - Objector
72. Agnes Elwell - Objector
73. Nicholas E Dobos - Objector
74. Michael Freduenberg - Objector
75. Craig Matson - Objector
76. Wesley Nash - Objector
77. Jay Vaughn - Objector
78. Stephen V Donohue - Objector
79. Siddharth Bhavsar - Objector
80. Aaron Bromberg - Objector
81. John D Tolliver II - Objector
82. Charles Valinotti - Objector

83. Jenrilyn Phippeny - Objector
84. Ingrid Eisenstadter - Objector
85. Anthony Capowski - Objector
86. Weinan Chen - Objector
87. Michael & Pamela Stelman - Objector
88. John C & Gloria Crivello - Objector
89. John Crivello, Sr. - Objector
90. Jetta Bastyr - Objector
91. Jonathan Hogan - Objector
92. Susana Bowen - Objector
93. Stephen A & Marian R. Barker - Objector
94. Mark Bond - Objector
95. Rita Johnston - Objector
96. Jonathan Corrente - Plaintiff
97. Leo Williams - Plaintiff
98. Charles Shaw - Plaintiff
99. Adam Ernette - Counsel for Plaintiffs
100. Bathaee Dunne LLP - Counsel for Plaintiffs
101. Allison Watson - Counsel for Plaintiffs
102. Andrew Chan Wolinsky - Counsel for Plaintiffs
103. Brian James Dunne - Counsel for Plaintiffs
104. Chad Emerson Bell - Counsel for Plaintiffs
105. Korein Tillery - Counsel for Plaintiffs
106. Christopher M Burke - Counsel for Plaintiffs
107. Burke LLP - Counsel for Plaintiffs
108. Edward Maxwell Grauman - Counsel for Plaintiffs
109. Elizabeth L DeRieux - Counsel for Plaintiffs
110. Capshaw DeRieux, LLP - Counsel for Plaintiffs
111. Priscilla Ghita - Counsel for Plaintiffs
112. S. Calvin Capshaw, III - Counsel for Plaintiffs
113. Yavar Bathaee - Counsel for Plaintiffs
114. Priscilla Ghita – Counsel for Plaintiffs
115. Allison Watson – Counsel for Plaintiffs
116. The Honorable Amos Mazzant, III - District Judge

Pursuant to FRAP 26.1, Shiyang Huang is an individual.

Date:  June 1, 2026                    Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang

iii

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ..................................................i

TABLE OF AUTHORITIES.................................................................. v

REPLY BRIEF OF APPELLANT HUANG ........................................................1

ARGUMENT .........................................................................5

    I.     Plaintiffs Lack Article III Standing ..............................................5

          A.     Plaintiffs Cannot Rewrite The Record On Appeal .............5

          B.     Plaintiffs' Own Expert Report Confirms An Article III Redressability Defect For the "Compliance Program"........8

    II.    Class Certification And Settlement Approval Violated Rule 23 Procedural Safeguards Under Due Process .............................12

          A.     Not Rejecting $5,000 "Preferred Positions" Will Creates A *New* Circuit Split And Exceed The Rules Enabling Act ....13

          B.     Notice Cannot Satisfy Due Process Or Adequacy ............16

          C.     $50 Payments Disqualified Plaintiffs Under Rule 23 .......19

          D.     Each Error Independently Requires Reversal ..................21

    III.   Fee Award Reversal Necessitates Settlement Reversal .............22

          A.     Plaintiffs Concede The *Johnson* Factors Were "Obviated"22

          B.     A *Presumption of Reasonableness* Requires Full Reversal .23

CONCLUSION .........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.,* 572 F.3d 221 (5th Cir. 2009)..8

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................... 3, 14, 20

*Berger v. Compaq Computer Corp.,* 257 F.3d 475 (5th Cir. 2001) ........... 1, 12

*Briseño v. Henderson,* 998 F.3d 1014 (9th Cir. 2021) ......................... 10, 23

*Califano v. Yamasaki,* 442 U.S. 682 (1979)......................................................9

*Carlson v. Bioremedi Therapeutic Sys., Inc.,* 822 F.3d 194 (5th Cir. 2016) ..11

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983)...........................................7

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013).................................9, 12

*Diefenthal v. CAB,* 681 F.2d 1039 (5th Cir. 1982) ........................................5

*Drazen v. Pinto,* 106 F.4th 1302 (11th Cir. 2024) ................................. 2, 22

*Earl v. Boeing Co.,* 53 F.4th 897 (5th Cir. 2022) .....................................7, 8

*Frank v. Gaos,* 586 U.S. 485 (2019)............................................... 1, 11, 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
        528 U.S. 167 (2000) .............................................................. 9, 11

*Gill v. Whitford,* 585 U.S. 48 (2018) ...........................................................9

*Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir. 1992) .............15

*Higginbotham v. Ford Motor Co.,* 540 F.2d 762 (5th Cir. 1976)..................14

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ....24

*In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014)...........................5, 18

*In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
        517 F.3d 220 (5th Cir. 2008) ............................................ 11, 22, 23

*In re Katrina Canal Breaches Litig.,* 628 F.3d 185 (5th Cir. 2010)...............18

*In re Monumental Life Ins. Co.,* 365 F.3d 408 (5th Cir. 2004)....................21

Case: 25-40774 Document: 106 Page: 7 Date Filed: 06/01/2026

*In re Sw. Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) .................. 19

*Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468 (5th Cir. 1986) .................. 13

*Johnson v. Gen. Motors Corp.,* 598 F.2d 432 (5th Cir. 1979) ..................... 16

*Johnson v. NPAS Sols., LLC,* 975 F.3d 1244 (11th Cir. 2020).......... 13, 15, 16

*Kamilewicz v. Bank of Boston Corp.,* 100 F.3d 1348 (7th Cir. 1996) ... 3, 4, 12

*Kincade v. Gen. Tire & Rubber Co.,* 635 F.2d 501 (5th Cir. 1981) .............. 20

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)................................. 5, 9

*Maher v. Zapata Corp.,* 714 F.2d 436 (5th Cir. 1983) ........................ 11, 21

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983 (11th Cir. 2020) ....................................................................................................... 16

*Morrow v. Jones,* 140 F.4th 257 (5th Cir. 2025)........................... 16, 17, 22

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1998) .............................................. 4

*Oscar Priv. Equity Inv. v. Allegiance Telecom, Inc.,* 487 F.3d 261 (5th Cir. 2007) ........................................................... 21

*Parker v. Anderson,* 667 F.2d 1204 (5th Cir. 1982) ..................................... 14

*Pearson v. NBTY, Inc.,* 772 F.3d 778 (7th Cir. 2014) .................................. 23

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) .............. 16

*Piambino v. Bailey,* 610 F.2d 1306 (5th Cir. 1980) ..................................... 23

*Prantil v. Arkema Inc.,* 986 F.3d 570 (5th Cir. 2021) ................................. 10

*Richardson v. Wells Fargo Bank, NA,* 839 F.3d 442 (5th Cir. 2016) ...... 13, 20

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) ........................... 9

*Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir. 2002) ............................... 22

*Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844 (5th Cir. 1998) ........... 23

*Torres v. SGE Mgmt., LLC,* 945 F.3d 347 (5th Cir. 2019) ....................... 4, 22

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ........................................ 7

*Trump v. CASA, Inc.,* 145 S. Ct. 2540 (2025) ............................................... 4

vi

*United States v. Graves,* 908 F.3d 137 (5th Cir. 2018) ................................. 13

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) .................................. 21

*West v. Prudential Sec., Inc.,* 282 F.3d 935 (7th Cir. 2002) ......................... 10

*Wilson v. Centene Mgmt. Co.,* 168 F.4th 217 (5th Cir. 2026) .................. 8, 10

*Yee v. Escondido,* 503 U.S. 519 (1992) ........................................................ 14

**Rules**

Fed. R. App. P. 28(i) ......................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ................................................................................... 12

Fed. R. Civ. P. 23(b)(2) ................................................................................... 20

Fed. R. Civ. P. 23(g)(2) ................................................................................... 16

**Other Authorities**

Brief for the United States, *Frank v. Gaos,*
2018 WL 3456069 (U.S. July 16, 2018) ....................................... 9, 11

Objection of Alex Kozinski, *Klee v. Nissan N. Am., Inc.,*
No. 2:12-cv-8238, Dkt. 50 (C.D. Cal. Oct. 15, 2013) ....................... 15

Objection of Anna St. John, *Ma v. Harmless Harvest, Inc.,*
No. 16-cv-7102, Dkt. 18 (E.D.N.Y. Sept. 29, 2017) .......................... 15

Response of Federal Defendants, *In re OPM Data Sec. Breach Litig.,*
No. 1:15-md-1394, Dkt. 201 (D.D.C. Sept. 9, 2022) ......................... 15

## REPLY BRIEF OF APPELLANT HUANG

"[F]ederal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos,* 586 U.S. 485, 492 (2019). "Class action lawsuits are … not for capable, committed counsel to pursue their own goals through those class members." *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 484 (5th Cir. 2001). But Plaintiffs—who merely "intend to make additional trades in the near future," ROA.2199-2203—ask this Court to affirm $5,050 for each named plaintiff, $9 million to counsel after an "obviated" *Johnson* factors analysis (Plaintiffs Br. 83), ending *at least* 25 million's legal rights for zero dollars, with a proposed compliance program. ROA.1340-43, 2156 n.24.

Appellees wrote nearly 150 pages. Their *silence* speaks volumes.

*For Plaintiffs:* they do not explain how their some-day intent is an injury-in-fact, or how Article III redressability can rely on "conjecture." ROA.2088. They no longer say what they repeatedly assured the class: "***the Settlement preserves any right … to bring damages claims (including on behalf of a class***)[.]" ROA.1022. They do not say why the $9 million class counsel *preferred individual arbitration for class damages*. ROA.2157, 2932. They do not answer Iowa and Huang's simple question: *why can each Named Plaintiff yield $5,050 from this lawsuit, but all absentees get $0?*

1

*For Schwab:* it no longer highlights that Plaintiffs' expert report is "conjecture" or "premature." ROA.2088, 2950:7. Schwab (Br. 36, 41-43) took an unusual role to *protect* Plaintiffs' class certification, asserting future class relief will be so substantial *yet proportional* to Plaintiffs' weak claims.

*For "past" customers*: Plaintiffs wrote nothing about those they once vowed to protect, ROA.133, 1011, whose damages were tolled by Plaintiffs' complaint, got no notice by Plaintiffs' class definition swap when counsel signed a $9 million deal. Schwab (Br. 49) dismissed them all in a footnote. Instead, Plaintiffs (Br. 52, Dkt. 90 at 3) contend "future" customers benefit from Schwab losing at least $9 million, before they suffer any injury-in-fact.

The whole (b)(2) "class" rests on plaintiffs who "intend to make additional trades in the near future", ROA.2199-2203, *speculating* injury-in-fact, while their experts *disproved* Article III redressability. ROA.2457-59.

The remainder "class action" is a $9 million invoice for "conjecture." ROA.2088. As counsel became "absent Class Members' adversaries ... in effect representing [defendant] in obtaining overbroad releases." *Drazen v. Pinto,* 106 F.4th 1302, 1333 (11th Cir. 2024) (Op. of Tjoflat, J.). That explains the structural blockades for objectors with jurisdictional patches and notice. *Id.* at 1352. Plaintiffs even opposed Huang's motion to join the

fairness hearing remotely, and succeeded, ROA.1907, 1955. The deal otherwise rests on a 29-page, *redacted*, single-spaced expert report, wholly "speculat[ing]" (ROA.2943:17) future recoveries from third parties.

*   *   *

Whether each absentee's claim is worth $50 or $0, *counsel got the most*: "the lawyers support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information." *Kamilewicz v. Bank of Boston Corp.,* 100 F.3d 1348, 1352 (7th Cir. 1996) (Easterbrook, Posner, Manion, Wood, JJ., dissent from denial of rehearing en banc). *Amchem Prods. v. Windsor,* 521 U.S. 591, 621 (1997) (citing *Kamilewicz*).

Settling parties stipulated class certification[1]—a far cry from the adversity in *Drazen*'s subsequent appeal, No. 25-13409 (11th Cir.), where the settling parties now raise opposite views on their settlement's validity. Adverseness is an Article III jurisdictional prerequisite for class certification,

---

[1] Rule 23(b)(2) applies only when "the party opposing the class has acted or refused to act on grounds that apply generally to the class." But Schwab "agree[d]" to class certification. ROA.1351-52. *Amchem,* 521 U.S. at 620. (Rule 23, "designed to protect absentees by blocking unwarranted or overbroad class definitions[,] ... demand[s] undiluted, even heightened, attention in the settlement context.")

3

a burden those optional objectors cannot bear. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 848 (1998) (Rules that "protect the rights of absent class members … are never invoked in an adversarial setting"). Adverseness existed as Plaintiffs shifted their burdens to objectors. ROA.2157-58. Few could counter a $9 million settlement, leaving *compliance program bills for the class to pay*. *Cf. Kamilewicz,* 100 F.3d at 1349 (describing an *injurious* class action delivering $2.19 to an absentee, *while charging* $91.33 in fees).

To stop fee-first class actions from bankrupting Rule 23, *Johnson* factors cannot be "obviated" (Plaintiffs Br. 83) because a "presumption of reasonableness" applies to *any* class-action fee request. ROA.2480, 2507; *Torres v. SGE Mgmt., L.L.C.,* 945 F.3d 347, 352 (5th Cir. 2019). Narrow remands will only invite more opportunistic class actions to flood the court dockets, as universal injunctions now also require Rule 23(b)(2). *Trump v. CASA, Inc.,* 145 S. Ct. 2540 (2025).

                    *                    *                    *

As Objector Frank summarized, Plaintiffs either "do not have Article III standing to seek or settle for prospective injunctive relief … or they have sold the class out[.]" ROA.2005. This Court should unequivocally reverse.

## ARGUMENT

## I.    Plaintiffs Lack Article III Standing

### A.    Plaintiffs Cannot Rewrite The Record On Appeal

"Jurisdiction is not conferred by the stroke of a lawyer's pen ... it must be adequately founded in fact." *Diefenthal v. CAB*, 681 F.2d 1039, 1052 (5th Cir. 1982). But Plaintiffs start by rewriting their declarations.

Plaintiffs' latest declarations only stated they "***intend to execute additional trades in the near future.***" ROA.2199-2203 (emphasis added). On appeal, Plaintiffs Br. (at 42, 43, 45) rewrites it three times: they "intend to keep trading," "will continue to trade," and finally "each named plaintiff is unequivocal that they will continue to trade[.]"

Appellate advocacy cannot change a historical record. "An appellate court may not consider new evidence furnished for the first time on appeal." *In re Deepwater Horizon*, 739 F.3d 790, 805 (5th Cir. 2014). Their *original* declarations, ROA.2199-2203, are precisely "some day" intention rejected in *Lujan v. Defenders of Wildlife*: "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." 504 U.S. 555, 564 (1992).

The other arguments remain inconsistent with the record and the law.

*First,* Plaintiffs claim (Br. 46 n.3) "every trade" is affected by order routing practices. Yet no Named Plaintiff ever traded options, mutual funds or bonds to have standing. ROA.45. The complaint only targets stocks and options. ROA.133-134 (stock, options); ROA.104-05 ("The ***ROFM is a distinct sub-market*** of the overarching market for securities order flow.") (emphasis added).[2] There is no "market maker" for mutual funds, because *no order routing is involved.*[3] Huang Br. 29. *Schwab customers who only trade mutual funds will receive $0 "price improvement," with or without this class action. Id.* Plaintiffs' "every trade" claim is inconsistent with their own complaint—targeting stocks and options only. ROA.133-34.

*Second,* Plaintiffs offer a *once-a-member, always-injured* theory (Br. 42, 46-47; Schwab Br. 57-60). But "ongoing" "customer" is a status; the *trade price improvement* is a discrete event *per trade*. This Court rejected status-

---

[2] ROA.190; Schwab's SEC Rule 606 report discusses stocks and options *only*: content.schwab.com/drupal_dependencies/psr/606/2026-Q1-Schwab-Quarterly-Report.pdf.

[3] Mutual funds are bought and sold at *one price* near end of each business day. No market maker or price improvement is expected. *E.g.,* money market funds, always trade at $1.00/share. FINRA, *Mutual Funds,* www.finra.org/investors/investing/investment-products/mutual-funds.

based theories of injury. *Earl v. Boeing Co.,* 53 F.4th 897, 903 (5th Cir. 2022) ("because that risk never materialized, plaintiffs have suffered no injury in fact and lack Article III standing"). Here, "*ongoing*" *Schwab customers who do not trade stocks and options for four years will have $0 price improvement.*

Or else, injunctive class actions will be limitless: any "ongoing" gym subscriber can impose compliance programs for future speculative "risk" of slip-and-fall accidents. That is why plaintiff must show "the imminence of a future violation" under *City of Los Angeles v. Lyons,* 461 U.S. 95, 107-08 (1983), because a Schwab account, a gym subscription, or a Boeing 737 seat is *only a status.*

*Finally,* Plaintiffs (Br. 44 n.2) admit "[t]he district court linked past and continuing injury to the injunctive relief provided[.]" But standing cannot be *linked,* but must be shown "for each claim that [Plaintiffs] press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021).

Schwab (Br. 58-59) cites a damages case for standing to settle for $0 here, conflating forms of relief. *Id.* at 436 ("a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages.") *Accord Earl,* 53 F.4th at 903.

7

Prior-panel-precedent rule also applies to class certification: the preponderance-of-evidence standard governs class certification. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009). Both also ignore *Wilson,* which holds "class-certification stage [is] beyond the motion-to-dismiss stage." *Wilson v. Centene Mgmt. Co.,* 168 F.4th 217, 227 (5th Cir. 2026). Nor did Plaintiffs even explain how *25 million individuals* must follow *how three Plaintiffs trade* for classwide standing. Huang Br. 33.

### B.    Plaintiffs' Own Expert Report Confirms An Article III Redressability Defect For the "Compliance Program"

Next, Plaintiffs (Br. 43-45, 52) insist a *compliance program* generates standing, simultaneously asserting the program's *future* effectiveness is unreviewable on appeal, although Huang fully incorporated Iowa's positions.

They are incorrect. *Earl* prohibits "unsupportable inferences" from supplying Article III standing. 53 F.4th at 903. Jurisdictional defects can be raised *sua sponte, anytime,* and Plaintiffs' speculative theory of redress under their *proposed* compliance program is an Article III redressability defect.

*First*, Plaintiffs (Br. 16) confirm the expert report is still on the record, and that report *confirms* an Article III defect. Redressability requires a "continuing violation" or "imminence of a future violation," a remedy "limited to the inadequacy that produced the injury in fact that the plaintiff

has established," and "[t]he scope of ... relief is dictated by the extent of the violation established." Brief for the United States, *Frank v. Gaos*, 2018 WL 3456069, at 23-24 (U.S. Jul. 16, 2018) (quoting *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 108 (1998); *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 187-88 (2000); *Gill v. Whitford*, 585 U.S. 48, 66 (2018); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Plaintiffs must show the compliance program will "'encourage [the] defendant[] to discontinue current violations' against the plaintiffs and 'deter [the defendant] from committing future ones' against the plaintiffs." *Id.* at 24 (quoting *Laidlaw*, 528 U.S. at 181, 186). It must be "likely," as opposed to "speculative" to redress those harms, *Lujan*, 504 U.S. at 561.

But the experts projected relief ***from third parties, not from Schwab***: it "assumes that every market maker has equal ability to absorb increased order flow," or "contemplates a counterfactual scenario[.]" **ROA.2857-59**. Schwab (Br. 28), Iowa (Br. 19), Huang and the experts (ROA.1869, 2853) *all expect better prices as-is*. This Court cannot "endorse standing theories that require guesswork as to how independent decision makers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013).

*Further*, Plaintiffs cannot support their *individual* standing with a *class-wide* expert report: Plaintiffs (Br. 43) desire what *Wilson* rejects: "merits-based evaluation of an expert report to determine standing at the class-certification stage is improper." 168 F.4th at 229; ROA.1863; *West v. Prudential Sec., Inc.,* 282 F.3d 935, 938 (7th Cir. 2002) (Easterbrook, J.) ("That amounts to a delegation of judicial power to the plaintiffs, who can obtain class certification just by hiring a competent expert.")

*Alternatively*, "Plaintiffs must clear 'the *Daubert* hurdle' when the cementing of relationships among proffered class members of liability or damages or both turns on scientific evidence." *Wilson*, 168 F.4th at 229-30. If the expert report implicates Rule 23 class certification, a *Daubert* inquiry is mandatory. ROA.1863-64 (quoting *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021)) ("if an expert's opinion would not be admissible at trial, it should not pave the way for certifying a proposed class.") *Briseño v. Henderson*, 998 F.3d 1014, 1028-29 (9th Cir. 2021) (rejecting "unverifiable evidence" to value a "virtually worthless" injunction in a settlement).

Plaintiffs (Br. 16) assert "[t]he district court considered the admissibility challenge ... within the approval order rather than by a

separate *Daubert* order." Yet, Plaintiffs cannot point to a single ruling on Huang's *Daubert* motion or the *still-redacted* expert report's admissibility.[4]

The expert report confirms the compliance program cannot redress under Article III: it will not "encourage [the] defendant[] to discontinue current violations' against the plaintiffs and 'deter [the defendant] from committing future ones' against the plaintiffs." Brief of the United States, 2018 WL 3456069 at 24 (quoting *Laidlaw*, 528 U.S. at 181, 186).

*   *   *

Plaintiffs cannot rewrite their "some day" speculations under *Lujan* on appeal. Further, the compliance program does not exist yet, Iowa Br. 11-12, and the terms are unenforceable. *See* ROA.2088; *Amicus* Br. 15 (same).

The district court was "powerless to approve" this settlement for Plaintiffs to act as a private attorney general. *Frank,* 586 U.S. at 492.

---

[4] All three cited pages (ROA.2454, 2477, 2489) only recited dollar figures presented by these experts. There was no "basis for conducting a meaningful review of the exercise of the district court's discretion." *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983). "[T]he record reflects that no *Daubert* inquiry took place" and "the district court clearly abused its discretion by not conducting a *Daubert* inquiry or making a *Daubert* determination on the record." *Carlson v. Bioremedi Therapeutic Sys., Inc.,* 822 F.3d 194, 201 (5th Cir. 2016); *Also see In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 230 (5th Cir. 2008) ("[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are … announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.")

Huang (Br. 33) and Iowa (Br. 25, 29) also converged on a *danger*: **the proposed compliance program will less likely redress harms, but more likely injure class members**, until benefits ever exceed the $9 million fees and future consultant bills. Schwab must internalize the costs, ROA.2853, likely by cutting benefits or increasing costs. *Cf. Kamilewicz,* 100 F.3d at 1349 (describing an injurious class action that returned an absentee $2.19 *while charging* $91.33 in attorney's fee). It is why, again, Plaintiffs *cannot* "usurp the powers of the political branches." *Clapper,* 568 U.S. at 408-09.

## II.    Class Certification And Settlement Approval Violated Rule 23 Procedural Safeguards Under Due Process

Due Process would ask: *why should each named plaintiff receive $5,050 from this case while no absentee can?* Plaintiffs have no answer.

Adequacy under Rule 23 carries "constitutional dimensions ... which implicates the due process rights of all members who will be bound by the judgment." *Berger,* 257 F.3d at 481. It "mandates an inquiry into ... the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Id.* at 482. "[B]ecause absent class members are conclusively bound by the judgment ... the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all

times." *Id.* at 480. The inquiry asks whether named plaintiffs have "an insufficient stake in the outcome or interests antagonistic to the unnamed members." *Id.* at 480 n.9 (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). *Richardson v. Wells Fargo Bank, NA,* 839 F.3d 442, 454 (5th Cir. 2016) (noting critical "importance of whether the class representative's and absent class members' interests remained aligned and *whether they received the same relief*.")(emphasis added).

### A.    Not Rejecting $5,000 "Preferred Positions" Will Creates A *New* Circuit Split And Exceed The Rules Enabling Act

*Johnson v. NPAS Sols. LLC* holds a ban of service awards "accords with our precedent" because "by choosing to bring their action as a class action ... named plaintiffs `disclaim[] any right to a preferred position in the settlement.'" 975 F.3d 1244, 1259 n.9 (11th Cir. 2020) (quoting *Kincade v. Gen. Tire & Rubber Co.,* 635 F.2d 501, 506 n.5 (5th Cir. 1981**)).** *NPAS* quotes *Kincade's* preferred-position ban, *twice, as binding, at length*. *Id.*

But Plaintiffs (Br. 62, 66)—who also claim their $5,000 awards "deplete no class recovery" for a *class getting $0*—claim *NPAS* "did not rely on *Kincade*[.]" They are wrong. "We are always chary to create a circuit split," *States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018), but their desired outcome is *a new circuit split* if two sister circuits read *Kincade* differently.

*See also Parker v. Anderson,* 667 F.2d 1204, 1211 (5th Cir. 1982) ("the duty owed by class counsel is to the entire class and is not dependent on the special desires of the named plaintiffs").

Justice Ginsburg wrote "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act" for *absentee protections. Amchem,* 521 U.S. at 613. The Rules Enabling Act never wrote service awards into Rule 23. Only *NPAS* followed this Court's "preferred position" ban. Many circuits did not address *Greenough* and *Pettus* either. Schwab's citations (Br. 47) on *defendants'* rights are irrelevant.

Plaintiffs' (Br. 64) "unpreserved" claim also fails. Huang quoted *NPAS* below in his objection, which was overruled without any comment. ROA.1263, 2513-14. Whether service awards violate the Rules Enabling Act is a "purely legal question. No facts could have been developed to aid our resolution of the issue." *Higginbotham v. Ford Motor Co.*, 540 F.2d 762, 768 n.10 (5th Cir. 1976). "[A] party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. Escondido*, 503 U.S. 519, 534 (1992).

Service awards must be rejected under *Kincade, to restore cohesiveness of class representation*. The United States voiced similar concerns on service

awards.[5] A Second Circuit judge endorsed *NPAS*.[6] Justice Thomas criticized the "incentive payments for the named plaintiffs" as "securing significant benefit for themselves—strongly suggest[ing] that the interests of the class were not adequately represented."[7] Current and former federal judges—*as objectors previously*—are far more critical of service awards.[8] *Amicus* Br. 7 ("why such routine litigation chores (for which parties who aren't class representatives don't get paid) merit between $125 and $166.67 an hour.")[9] As *Fikes Wholesale* recently observed, service awards are "standardless." 62 F.4th at 721; *NPAS,* 975 F.3d at 1259-60. While counsel litigates, non-lawyer plaintiffs only *care for recovery*. The service awards are usually presented as an "incentive" for endorsing a simultaneously-presented *class*

---

[5] Response of Federal Defendants, *In re OPM Data Sec. Breach Litig.* No. 1:15-md-1394, Dkt. 201 at 7-8 (D.D.C. Sep. 9, 2022).

[6] *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 729-30 (2d Cir. 2023) (Jacobs, J., concurring)("class actions that plaintiffs lack incentive to bring are class actions that need not be brought."); *see also Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1208 (6th Cir. 1992) (distinguishing "expenses incurred relating to litigation" from what precedents "disallowed … cost of personal services and private expenses.")

[7] *Frank,* 586 U.S. at 494-95 (Thomas, J., dissenting)

[8] *See also* Objection of Anna St. John, *Ma v. Harmless Harvest, Inc.,* No. 16-cv-7102, Dkt. 18 (E.D.N.Y. Sep. 29, 2017) ("all representatives have 'leverage[d]' 'the class device' for their own benefit.") Objection of Alex Kozinski, *Klee v. Nissan N. Am., Inc.* No. 2:12-cv-8238, Dkt. 50 at 27-28 (C.D. Cal. Oct. 15, 2013) ("removing the only individuals now in the litigation who know enough to out the settlement as unfair.").

[9] Service awards also require that Plaintiffs are *injured* by Rule 23 obligations, traceable to the *paying defendant* and *redressable* by receiving $5,000. That argument is illogical.

*settlement agreement,* not as an "incentive" to protect the class. Objecting is so difficult for most lay objectors, and careful scrutiny (*Amicus* Br. 6-7) in mostly *unopposed* settings with *optional* objectors is unrealistic: for every case trimming the award, dozens are undisturbed. *Id.* at 1259 (citing cases).

All in all, service awards are unacceptable under *Kincade* and *Parker*.

**B.    Notice Cannot Satisfy Due Process Or Adequacy**

Class counsel "owe[] fiduciary duties to the class as a whole." *Med. & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 996 (11th Cir. 2020); Fed. R. Civ. P. 23(g)(2) ("the court must appoint the applicant best able to represent the interests of the class"). As "class actions are more ripe for abuse," *Morrow v. Jones,* 140 F.4th 257, 262 (5th Cir. 2025), "special … protections includ[ing] notice[] ensur[e] that class members know when their rights are being compromised." *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1169 (5th Cir. 1978). It is courts' "duty to ensure that the due process rights of the absent class members are safeguarded." *Berger,* 257 F.3d at 482. "Before an absent class member may be forever barred from pursuing an individual damage claim ... due process requires that he receive some form of notice that … his damage claims may be adjudicated as part of it." *Johnson v. Gen. Motors Corp.,* 598 F.2d 432, 438 (5th Cir. 1979).

16

Counsel, not three lay plaintiffs, drafted the notice Plaintiffs now defend. Counsel now invokes forfeiture. *Morrow* rejected that argument for Rule 23(h) notice: "The mandatory language of the Rule itself suggests that we should not treat the notice requirement as a forfeitable issue … That this is a class action underscores the importance of addressing the notice issue ... Because class actions are more ripe for abuse." 140 F.4th at 262. Rule 23(e)(1) notice—at the heart of Due Process—is not forfeitable.

The notice here failed at every step.

*First,* past customers received nothing. Plaintiffs' complaint tolled all "current and past" Schwab customers' damages. ROA.133, 1011. The class definition now excluded them. ROA.1338. Past customers thus lost tolling with no notice—although Plaintiffs (Br. 74) argue notice exists "to inform lots of people of their actual rights." Schwab's contrary view (Br. 19, 49) that "settling parties had no duty to advise the class of independent legal bars to potential class claims" cannot be squared with *Gen. Motors Corp.*

*Second,* current customers received notice that was misleading. Class counsel repeatedly represented that "the Settlement preserves any right ... to bring damages claims (including on behalf of a class)." ROA.1022; *accord* ROA.1013, 1093, 1303, 1317; Huang Br. 13. The "What am I giving up[?]"

17

section of notice said nothing about losing damages class-action rights, or arbitration requirements for current customers. ROA.1093-94.

*Third*, only Objector Frank surfaced the *China Agritech* effect. ROA.1999-2001. Only then did Schwab (ROA.2085) and Plaintiffs (ROA.2156 n.24) concede new damage classes will be time-barred.

*Fourth*, when the district court asked whether the settlement practically forecloses damages recovery, *class-action* counsel pivoted to individual arbitrations. ROA.2931. It confirmed what the notice did not say.

*Fifth*, two sentences would have cured the defect:

If the Court approves this settlement, you cannot have another class action for your damage claims.

"You would ... file an arbitration individually with FINRA (because non-class claims are subject to binding arbitration under your account agreements)."

Huang Br. 13 (quoting counsel's written statement). A footnote after the objection deadline cannot satisfy Due Process requirements. ROA.2156 n.24.

Counsel also invokes a "slightly misleading" standard. That standard governed notice saying class members would "get" relief rather than "exact no additional money." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010); *accord Deepwater Horizon*, 739 F.3d at 820 (omission of "allegedly").

18

Here, "preserved" meant "time-barred" for class damages (ROA.2085, 2156 n.24), and "FINRA arbitration" for individual damages (Huang Br. 13).

"It is unfaithful to the settlement agreement to omit the fact" and "not clearly inform" the class. *Katrina*, 628 F.3d at 199. "The standard here is not constructive disclosure, but clear and direct disclosure to the district judge." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 716 (7th Cir. 2015). "If … the class had been adversely affected by this failure to disclose, the consequences would be more severe." *Id.* This is such a case.

## C.    $50 Payments Disqualified Plaintiffs Under Rule 23

*On antagonism:* Plaintiffs (Br. 56) claim "antagonism is wholly absent here." Yet "the named plaintiffs' individualized settlement, for $50 each" (Plaintiffs Br. 60) for absentees is "[y]ou retain them after the settlement is approved and can bring them, settle them, or do whatever else you wish with them for whatever price." Huang Br. 13.

Plaintiffs also argue they (Br. 58, 61) "gave up something additional of value in exchange[,]" and Schwab (Br. 42) argues "Huang cannot identify a single right belonging to absent class members that plaintiffs gave away[.]"

Huang simply asked for adequate representatives who will "receive[] the same relief"—so that the recovery is $0 for *everyone* or *pro rata* for

*everyone*. *Richardson,* 839 F.3d at 454. *Amchem,* 521 U.S. at 623-26. Named Plaintiffs also rejected Iowa and Huang's identical proposals for $50 per class member. Huang Br. 13; ROA.1967 n.1 ("Had Plaintiffs negotiated even that compensation to all class members, Iowa would not be here today."). It *is* the conflict: The exclusive position is only available for named plaintiffs.

*On cohesiveness:* Plaintiffs (Br. 59) argue they "remain adequate class representatives despite their settlement of their damages claims." That sentence is itself an admission of *divergent interests*. Rule 23(a)(3) requires that "the claims ... of the representative parties are typical of the claims ... of the class." Three representatives who cashed the very claims *absentees must retain* are in an *exclusive* position, and too structurally apart to be adequate.

Schwab (Br. 44) strategic concedes an "obviously miniscule" conflict. That concession supports reversal. *Kincade* governs structure, not amount: "named plaintiffs 'disclaim[] *any* preferred position in a settlement.'" *Kincade,* 635 F.2d at 506 n.5 (emphasis added). Any is *categorical* under Due Process. *Parker,* 667 F.2d at 1211 ("the duty owed by class counsel is not dependent on the special desires of the named plaintiffs").

Neither Appellee also explains how $50 damage settlements can sit inside a Rule 23(b)(2) *injunctive-relief class-action settlement agreement*.

20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). But it is exactly how Plaintiffs (Br. 55-57) structured the settlement to allow. *Contra In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) (refusing to "shoehorn[] damages actions into the Rule 23(b)(2) framework").

### D.    Each Error Independently Requires Reversal

This Court required that "courts must examine factors both for and against" each Rule 23 element. *Oscar Priv. Equity Inv. v. Allegiance Telecom*, 487 F.3d 261, 267-68 (5th Cir. 2007). The district court rejected objectors' Article III objections, and Iowa's fee objections. The court otherwise did not cite Huang or Iowa's other structural concerns. The orders largely presented Plaintiffs' arguments, and agreed. *See* ROA.2449-62. Those objections were overruled without a sufficient "basis for conducting a meaningful review of the exercise of the district court's discretion." *Maher,* 714 F.2d at 455.

Counsel received $9 million with "conjecture." ROA.2088. Notice abandoned past customers and misled class members on their damage claims (*Johnson v. GMC*). Plaintiffs receiving $5,050 are in an impermissible preferred position (*Kincade, Parker,* Rule 23(e)(2)(D), Rules Enabling Act) without providing absentees the "same relief" (*Richardson, Gonzales*). The $50 damages cannot sit inside a (b)(2) class certification (*Dukes, Allison,*

21

*Monumental Life*). When plaintiffs and counsel receive preferential treatments by denying absentees of the *same relief*, class counsel becomes "absent Class Members' adversaries ... in effect representing [Defendants] in obtaining overbroad releases." *Drazen,* 106 F.4th at 1333 (Op. of Tjoflat, J.).

Each symptom confirms the disease: counsel and Named Plaintiffs are altogether inadequate for the class. Each issue is independently reversible.

### III.   Fee Award Reversal Necessitates Settlement Reversal

### A.   Plaintiffs Concede The *Johnson* Factors Were "Obviated"

Plaintiffs (Br. 83) argue their below-lodestar request "obviated the need for an extensive factor-by-factor analysis." That constitutes an admission of error: "That the record does not clearly reflect that the district judge utilized the *Johnson* framework is error." *Torres,* 945 F.3d at 352.

But Plaintiffs (Br. 76) are incorrect that this Court "need[s] not" review the fee award, and the argument ignores this Court's "independent obligation to protect the interests of the class." *Morrow*, 140 F.4th at 261-62; *High Sulfur,* 517 F.3d at 227 & n.9 (same); *also cf. Stirman v. Exxon Corp.,* 280 F.3d 554, 563 n.7 (5th Cir. 2002) (rejecting class certification waivers). An "examination of attorneys' fees guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense

of the class." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998); *High Sulfur,* 517 F.3d at 228 (same).

Plaintiffs suggested below that "any … class member … may object to the award of attorneys' fees"). ROA.1323. But now Plaintiffs (Br. 76-77) contend all objectors lack standing because "no class member's recovery is or would be diminished by it." Judge Posner calls it a "gimmick." *Briseño,* 998 F.3d at 1027 (quoting *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014)). Still, the Seventh and Ninth Circuits reversed separately-funded, structurally disproportionate settlements under Rule 23(e). *Briseño,* 998 F.3d at 1027; *Pearson,* 772 F.3d at 786.

### B.    A *Presumption of Reasonableness* Requires Full Reversal

Schwab urged *a strong presumption of fee reasonableness*. ROA.2094, 2951. The district court agreed, necessitating reversal. ROA.2507, 2480. *See Strong,* 137 F.3d at 849 ("by summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court 'abdicate[s] its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action … its approval of the settlement must be reversed on this ground alone.'") (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980)). *High Sulfur,* 517 F.3d at 228 (same).

Schwab (Br. 38-40) contends the fees were negotiated after the settlement terms settled. But suggesting *sequencing* matters is "not realistic." *Pearson,* 772 F.3d at 786; *Strong,* 137 F.3d at 850 ("Even if the plaintiffs attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations.") The entire reversible settlement is a "package deal." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (collecting cases).

## CONCLUSION

The district court's orders should be reversed.

Date:  June 1, 2026

Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2813 SW Rother Rd.
Topeka, KS 66614
(314) 669-1858
defectivesettlement@gmail.com

*Objector-Appellant Shiyang Huang*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1: this document contains 5,050 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 2007 in 14-point Charter font.

/s/Shiyang Huang

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using this Court's CM/ECF system on June 1, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/Shiyang Huang

25