GIBSON DUNN

Jason J. Mendro
Partner
T: +1 202.887.3726
M: +1 202.812.2133
jmendro@gibsondunn.com

November 6, 2026

VIA CM/ECF

Thomas B. Plunkett
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
Suite 115
New Orleans, LA 70130

Re: *Corrente v. The Charles Schwab Corp.*, No. 25-40774

Dear Mr. Plunkett:

Defendant-Appellee The Charles Schwab Corporation respectfully submits this response to the Court's October 26, 2026 order instructing the parties to file supplemental letter briefs regarding Iowa's ability to participate in this case.

Iowa lacks Article III standing because it has shown no concrete injury to any cognizable interest from the settlement. This Court therefore may not consider claims that Iowa alone raises. Although Iowa may participate as an amicus in this Court, and its role as a non-party objector in the district court is undisputed, neither of those roles confers standing to appeal and assert arguments distinct from Huang's. Iowa chose not to intervene, and it would have no right to intervene in any event.

This Court should decide these issues rather than remanding to the district court. With or without Iowa's participation, the judgment should be affirmed.

## I. Iowa Lacks Standing To Appeal.

"Before [this Court] may address [Iowa]'s substantive arguments, [it] must determine whether [Iowa] has standing." *Chapman v. Tristar Prods., Inc.*, 940 F.3d

299, 303 (6th Cir. 2019). "If at least one plaintiff has standing," this Court may resolve any claims that a proper plaintiff shares with the others. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). But absent standing, the Court may not consider issues pressed by Iowa alone. That principle implicates several issues. Below, Huang—the only proper party—did not assert any argument concerning deficiencies in Iowa's CAFA notice, and "Iowa alone" raised certain fee issues "below." Dkt. 162, at 2. Unlike Iowa, Huang did not challenge the amount of fees in the district court. *Compare* ROA.1254-65, ROA.1831-43, *with* Iowa Br. 39-59, *and* ROA.1977-80.

To be sure, Huang purports to adopt Iowa's arguments on appeal. But Huang's adoption is effective only as to arguments that "are *equally applicable* to" Huang as to Iowa. *United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir. 1991). Huang concedes that Iowa's CAFA notice objections are not applicable to Huang. Oral Arg. Audio 16:45-17:00; *see* Iowa Br. 59-63. And Huang has forfeited the attorney's fee issue and cannot raise it in this Court. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court[.]"); *accord Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) (objector can challenge district court's order only to the extent it "disregard[ed] his objections").[1] Thus, to the extent the Court wishes to reach any of these issues, it cannot do so without first determining that Iowa has standing to raise them.

[1] As Plaintiffs have explained, Pls. Br. 72-73, the same principle means that both Iowa and Huang forfeited the argument that the settlement notice was inadequate

Iowa lacks standing because it has suffered no concrete "injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Both of Iowa's theories of injury fail.

*First*, Iowa contends that it has *parens patriae* standing to vindicate its "quasi-sovereign interests" in protecting the "economic well-being of Iowan consumer class members." Dkt. 59, at 14-16 ("Opp."). But a State lacks standing to challenge a settlement where it cannot demonstrate *its own* injury—even where the State claims to be "standing in the shoes of . . . class members" residing in the State. *Paterson v. Texas*, 308 F.3d 448, 450-51 (5th Cir. 2002). To maintain a *parens patriae* action, "the State must articulate an interest apart from the interests of particular private parties," and more "than injury to an identifiable group of individual residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).

That is all Iowa alleges here—purported injuries to "Iowan consumer class members." Opp. 14. Iowa's claim to standing is thus indistinguishable from Texas' claim to "represent[] the interests of Texas class members" in *Paterson*. 308 F.3d at 451. This Court rejected that claim there, and it should do the same here.

Iowa also argues (Opp. 15-16, 18) that the settlement undermines "its sovereign lawmaking powers," *Snapp*, 458 U.S. at 607, given its purported role as an "interested monitor in the fairness of class actions" under Iowa's state-law Rule 23

---

because it supposedly should have expounded on the statute of limitations on class damages claims under *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018). Neither raised that argument below.

analogue and state consumer-protection statutes. But if the existence of such a rule and a statute alone were enough, States would *always* have standing to object to class-action settlements. Unsurprisingly, courts have roundly rejected that theory.

The Sixth Circuit's decision in *Chapman*, 940 F.3d at 305, is illustrative. There, like Iowa here, Arizona tried to establish *parens patriae* standing to challenge a class-action settlement by pointing to its state-level Rule 23 equivalent and an anti-consumer-fraud statute. *Id.* The Sixth Circuit was unconvinced. State rules of civil procedure are not a "product[] of the legislative branch" that could reflect an exercise of sovereign lawmaking powers "but rather rules promulgated by the Arizona Supreme Court." *Id.* at 306. And Arizona could not demonstrate any injury to its sovereign powers under its consumer-protection laws because it did not show any "fraud or collusion" in the settlement. *Id.* So too here.[2]

Iowa relatedly contends (Opp. 7-8) that its own interests are at stake because the settlement might bar it from later suing for restitution or disgorgement on behalf of its citizens. That argument does not establish any injury *to Iowa*. Iowa's sole authority shows that it cannot sue to vindicate *class members'* rights after the settlement, but nothing in the settlement affects Iowa's *own* rights. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1179-82 (9th Cir. 2014) (cited at Opp. 7-8)

---

[2] As in Arizona, rules of civil procedure in Iowa, including its state-law analog to Rule 23, are promulgated by the state Supreme Court, not by the legislature. Iowa Code § 602.4201(1), (3)(a).

(observing that class-action settlements do not preclude States from seeking injunctive relief to vindicate "broader governmental interests"). Iowa's objections are "indistinguishable from the objections which individual [Iowans] might raise," so the settlement "imperil[s] [no] quasi-sovereign interests." *Chapman*, 940 F.3d at 306.

*Second*, Iowa asserts (Opp. 8-13) that CAFA gives it an interest "in speaking on behalf of class members against class-action settlements." But CAFA gave States no right other than to receive CAFA notices. 28 U.S.C. § 1715(b), (f); *see Chapman*, 940 F.3d at 306-07. The record evidence shows that Iowa received CAFA notice here, *see* Schwab Br. 53-55, so CAFA plainly cannot support an *actual* injury in fact.

In any event, the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). CAFA's notice requirement is a textbook example. *See Spokeo*, 578 U.S. at 342 (failure to provide "required notice" is a "bare procedural violation"). Iowa cannot show that the requirement protects any concrete interest "'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-26 (2021).

Iowa irrelevantly observes (Opp. 13) that Rule 23 traces its roots to the common-law bill of peace, but it fails to explain how that historical "form of group litigation permitted in English courts" pertains to the State's concrete interests or

CAFA's notice requirement. *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). Because CAFA provides no basis to invalidate the settlement, Iowa's claimed procedural injury is irrelevant. *See* Schwab Br. 53-57.

## II. No Other Procedural Vehicle Allows Iowa To Raise Arguments Distinct From Huang's In This Appeal.

The State of Iowa could have participated as a non-party amicus below, and it did participate as a non-party objector. But none of that helps Iowa on appeal. The Court still may not address arguments raised only by Iowa, rather than by Huang, who alone has standing to appeal. As to intervention, the State had no right to participate as a party intervenor. And that question is moot in any event because Iowa did *not* timely seek to intervene. It is far too late to do so now.

1. *Amicus Status.* Like any other litigant with an interest in the case, Iowa could have chosen to participate as an amicus curiae both in the district court and on appeal. But the right to participate as an amicus is irrelevant to the dispositive issues here—Iowa's ability to assert arguments that no party has raised.

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam). This Court has long recognized that an amicus has "no status except to advise" or "suggest"; amici "are not parties to, and they are not bound by, the decree." *City of Winter Haven v. Gillespie*, 84 F.2d 285, 287 (5th Cir. 1936). A mere amicus is thus "without standing . . . to appeal." *Id.*

Moreover, if Iowa were treated as an amicus, the Court would still be unable to "consider the arguments raised only by [Iowa]." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 n.3 (5th Cir. 2009). "It is well-settled in this circuit that an amicus curiae generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal." *Weathers v. Hou. Methodist Hosp.*, 116 F.4th 324, 329 n.3 (5th Cir. 2024) (per curiam) (citation omitted). Iowa's potential status as an amicus is thus beside the point.

2. *Objector Status.* Schwab did not dispute Iowa's right to participate as a non-party objector below, because an objector who is neither a named party nor an absent class member is effectively an amicus. But that objector status creates no freestanding right to appeal a judgment that does not bind or even affect Iowa.

The Supreme Court's decision in *Marino* straightforwardly compels the conclusion that Iowa has no right to appeal. There, a group of non-class-member police officers attempted to challenge the class-action settlement of a Title VII lawsuit against the City of New York based on the City's racial discrimination in the promotion of black and Hispanic officers. 484 U.S. at 303. Although those non-class-member officers "presented their objections to the District Court at the hearing, they chose not to move to intervene." *Id.* The Court held that, because those officers were mere objectors and not parties to the judgment, "they may not appeal from the consent decree approving that lawsuit's settlement." *Id.* at 304. Just so here.

At oral argument, Iowa invoked *Devlin*, 536 U.S. 1, as the basis for its right to appeal. But *Devlin* held only that "nonnamed *class members*" who have timely objected "have the power to bring an appeal without first intervening." *Id.* at 14 (emphasis added). Iowa, of course, is not a class member.

That distinction is dispositive. *Devlin* expressly distinguished between the appeal rights of unnamed class members and those of objectors who are not class members. The Court reasoned that unnamed class members undoubtedly have Article III standing to challenge a settlement because the settlement directly "dispose[s]" of their rights. *Devlin*, 536 U.S. at 6-9. And they are proper "parties" to an appeal of the settlement because they are bound by it. *Id.* at 9. In reaching that conclusion, however, the Court reaffirmed *Marino*'s holding that those who are "*not* members of the class" may not "appeal . . . a settlement" because it does not bind them. *Id.* (emphasis added). Under *Marino*, Iowa's objection below conferred neither Article III standing nor any new right to appeal.

In short, Iowa's participation as a non-party objector below simply made it an amicus by a different name. That status is irrelevant.

3. *Intervenor Status.* Iowa had no right to intervene below, either permissively or as of right. The State identified neither any interest impaired by the settlement, Fed. R. Civ. P. 24(a)(2), nor any claim or defense in common with the action, *id.* 24(b)(1)(B). No claim or defense in this case was "based on" any statute,

GIBSON DUNN



regulation, or executive order administered by Iowa. *Id.* 24(b)(2). And no federal statute conferred upon Iowa a right to intervene. *Id.* 24(a)(1), (b)(1)(A).

Moreover, Iowa did not even try to intervene. That is the end of the matter. The question whether Iowa *could have* intervened is academic. Because it is *not* a proper party to the appeal, the Court lacks jurisdiction over Iowa's appeal. *See Farber v. Crestwood Midstream Partners L.P.*, 863 F.3d 410, 419 (5th Cir. 2017) (finding "no appellate jurisdiction over [the] claims" of a "nonparty to the judgment below"). The only remedy is outright dismissal. *Id.*

In any event, it would be pointless to remand for the district court to consider an intervention motion that Iowa never filed. At this juncture, any such motion would be plainly untimely. "Whether intervention is sought permissively or as of right, Rule 24 requires that the application for intervention be 'timely.'" *United States v. Marion Cnty. Sch. Dist.*, 590 F.2d 146, 148 (5th Cir. 1979). Post-judgment intervention motions are almost never timely, *Edwards v. City of Houston*, 78 F.3d 983, 1000-01 (5th Cir. 1996) (en banc), and Iowa's motion here would follow both a judgment *and an appeal*.

"Timeliness is a function of the relative prejudice to the existing parties and the would-be intervenor." *Marion Cnty. Sch. Dist.*, 590 F.2d at 148. Permitting intervention now would prejudice the settling parties, who would face further delay in implementing the settlement relief. Conversely, Iowa would suffer no prejudice; it

has already aired its objections to the district court, which rejected them. Iowa could have moved to intervene at that time, but it simply declined to do so.

Finally, as explained above, the Court need not reach any hypothetical issue of intervention because Iowa lacks Article III standing. Any purported right to "status as an intervenor below, whether permissive or as of right, does not confer standing" to appeal. *Diamond v. Charles*, 476 U.S. 54, 68 (1986); *e.g.*, *Paterson*, 308 F.3d at 449, 451 (dismissing appeal even though Texas intervened in district court).

**III. Remand Is Not Warranted.**

None of the Court's questions regarding Iowa's authority to participate in this appeal warrants a remand. The Article III standing issue is limited to this appeal; as a non-party, Iowa did not need Article III standing to object below. *See supra* at 7-8. This Court—not the district court—"must always determine its own jurisdiction." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513 (5th Cir. 2017). And as explained above, any question about Iowa's objector, amicus, or intervenor status is academic, and remand would serve no purpose. *See supra* at 6-10.

Sincerely,

*/s/ Jason J. Mendro*

Jason J. Mendro

cc: Counsel of Record (via CM/ECF)