Bathaee :: Dunne :: LLP

Brian J. Dunne
Bathaee Dunne LLP
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
(213) 462-2772 Tel

November 6, 2026

Thomas B. Plunkett, III
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place, Suite 115
New Orleans, LA 70130-3048

Re: *Corrente, et al. v. The Charles Schwab Corp.*, No. 25-40774

Dear Mr. Plunkett:

On October 26, the Court instructed the parties in the above-captioned appeal "to simultaneously file letter briefs by November 6, 2026" addressing three enumerated issues. Doc. No. 158. Plaintiffs-Appellees respectfully submit this letter brief in response to that directive.

**(1) Whether the State of Iowa has Article III standing, including whether it has standing under a parens patriae theory or via the Class Action Fairness Act's notice requirement**

The district court issued two orders pertinent to this appeal, both dated November 24, 2025: a Memorandum Opinion and Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, ROA.2442-2492 (the "Settlement Order"), and a Memorandum Opinion and Order Granting Plaintiffs' Counsel's Motion for an Award of Attorney's Fees, Litigation Expenses, and Service Awards, ROA.2493-2521 (the "Fee Order"). Iowa lacks Article III standing to appeal either order.

Plaintiffs' Motion to Dismiss, Doc. No. 44 (Jan. 26, 2026), and Reply in Support of Motion to Dismiss, Doc. No. 66 (Mar. 13, 2026), extensively address Iowa's lack of standing—under *parens patriae*, under CAFA, and under any other theory. Plaintiffs' merits brief, Doc. 104 (May 22, 2026), does too. *See id.* at Arg. § I. To recap, a litigant ordinarily "may not merely champion the rights of another," but "must establish that he has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (cleaned up). Iowa has no such personal stake here—it is not a Class Member, has not traded on a Schwab account, and asserts no plan to do so in the future. Instead, Iowa relies on two theories of standing—*parens patriae* and CAFA notice—that both fail, and the issue is not close.

As to *parens patriae*, Iowa's position is weaker than one previously rejected by this Court in *Paterson v. Texas*, 308 F.3d 448 (5th Cir. 2002), and colors outside the lines set down by the Supreme Court in *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600-07 (1982), for evaluating such positions. Per *Snapp*, when a State claims standing under *parens patriae*, it "must articulate an interest apart from the interest of particular private parties." 458 U.S. at 607. That is, if a State wishes to challenge a settlement or attorney's fee award, it needs to claim a particularized interest of its own, not just that it doesn't like the relief provided to its citizens under the settlement. For example, when a class settlement with Western Union allowed Western Union to retain funds not claimed by the class, the State of Texas argued for *parens patriae* standing under *Snapp* based on Texas's relatively bespoke laws governing unclaimed or abandoned property, Tex. Prop. Code §§ 74.201, 74.301. *Paterson*, 308 F.3d at 450. When a class settlement with a pressure cooker manufacturer provided an allegedly too-high proportion of class monies to the lawyers rather than the class members, the State of Arizona pointed to Arizona

statutes and rules of procedure "limiting the maximum fees that attorneys may charge" and prohibiting deceptive acts with respect to contingency fees. *Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 305-06 (6th Cir. 2019). And when Louisiana and Mississippi objected to a class settlement concerning the Deepwater Horizon oil spill, they pointed to State-funded unemployment insurance and other benefit programs that would allegedly be strained due to undercompensated class members. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp. 2d 891, 943 (E.D. La. 2012).

In each of the above cases, the court—including this one, in *Paterson*—rejected the alleged State-specific injury as grounds for *parens patriae* standing. In *Paterson*, there was no unclaimed money at the time to support injury under the Texas Property Code, 308 F.3d at 451; in *Chapman*, Arizona's recited statutes and rules were either not "law-making" examples at all or too generic to make them "[]distinguishable from the objections which individual Arizonans might raise," 940 F.3d at 306; and in *Deepwater Horizon*, the States' "argument would logically give standing to any state to challenge ***any*** settlement of a private dispute," and "similar arguments have been repeatedly rejected by federal courts," 910 F. Supp. 2d at 943 (citing *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989)) (emphasis in original). Iowa's arguments for State-specific regulatory injury—for example, Iowa Code § 13.2, which allegedly "imposes an affirmative 'duty' on the Attorney General to '[p]rosecute and defend' in all courts 'all actions or proceedings, civil or criminal, in which the state may be a party *or interested*, when, in the attorney general's judgment, the interest of the state requires such action,'" ROA.1968 (brackets and italics inserted by Iowa)—are similarly generic to those rejected by the Sixth Circuit in *Chapman* and the district court in *Deepwater Horizon*. Countenancing them as the basis for distinguishable State injury under *Snapp* would, as

the *Deepwater Horizon* court put it, logically permit Iowa—or any other State—to object to any class settlement, anywhere, at any time, for any reason, the antithesis of *Snapp*. And returning specifically to binding precedent, this Court's decision in *Paterson* rejected a much more concrete and particularized state statute as a basis for *parens patriae* standing to object to a class settlement.

Moving to CAFA, the statute does indeed mention States, and mandates that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement" comprising specified information. 28 U.S.C. § 1715(b). According to Iowa, this gives it—and every other State in the country—free-ranging constitutional standing to challenge any aspect of any class settlement in federal court, anywhere, in any posture. There are three problems with this argument. First, "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Second, while it is true that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and "its judgment is . . . instructive and important," *id.* at 341, Congress ***expressly did not*** provide States with a right of action in response to an alleged CAFA notice failure. To the contrary, Congress expressly set forth the consequence of and remedy for CAFA "notice not provided" in 28 U.S.C. § 1715(e) *et seq.*—and that section grants additional rights only to "class member[s]," *id.* CAFA also includes a separate "Rule of construction" stating that "Nothing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials." *Id.* § 1715(f). The *Chapman* and *Deepwater Horizon* courts correctly read these statutory texts as ruling out any

argument that Congress intended to define an injury-in-fact as to States through the enactment of CAFA. *See Chapman*, 940 F.3d at 306-07; *Deepwater Horizon*, 910 F. Supp. 2d at 943.

What's left, then, of the CAFA-confers-injury argument is that historical practice, ***against the express terms of what Congress actually enacted***, supposedly confers a cognizable constitutional injury on a State through an alleged failure of CAFA notice. *See Spokeo*, 578 U.S. at 340-41 ("In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."). Specifically, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. Although Iowa's alleged historical analogue to its alleged CAFA notice injury is not entirely clear, its counsel has repeatedly invoked the historical Bill of Peace in briefing and argument. The problem with this historical analogue, however, is that the historical record identifies no free-ranging right of a Lord, State, or other quasi-sovereign to object to a Bill of Peace, *see, e.g., Sharon v. Tucker*, 144 U.S. 533, 541-42 (1892) (discussing bills of peace and their uses)—let alone when governing procedure is detailed, written down, and denies any such right, *see* 28 U.S.C. §§ 1715(e), (f). Put more plainly, the historical Bill of Peace underpins Congress's judgment in defining particular rights and requirements under CAFA and Rule 23, *see Trump v. CASA, Inc.*, 606 U.S. 831, 849-50 (2025); it does not supplant Congress's reasoned judgment in enacting (or, for Rule 23, enabling) these detailed specifications of who has what right and recompense, and under what circumstances and conditions, *see Spokeo*, 578 U.S. at 340-41; *Trump*, 606 U.S. at 849 (rejecting a "shortcut to relief" that "circumvent[s] Rule 23's procedural protections").

What Iowa seeks in this case is a judicial green light for any State to object to any aspect of any class action settlement in any federal court, without a showing of particularized harm, all

because CAFA includes a State-specific notice requirement—yet expressly withholds a State-specific remedy. This argument is inconsistent with this Court's precedent, with *Spokeo*, and with *Trump* (among other authority). And that Iowa makes this argument—that any State can intervene to unwind a settlement for any reason—in the context of a merger challenge is deeply ironic, considering its own recent Supreme Court filings warning that merging entities need finality against upstart State Attorneys General. *See* Motion for Leave to File Bill of Complaint at 14 ¶ 60, *Iowa & Montana v. Arizona*, No. 164, Orig. (U.S. Aug. 25, 2026) ("Businesses need certainty. There are profound costs of holding a $110 billion deal in limbo to litigate a lone politicized veto.").

**(2) Whether the State of Iowa has the authority to participate as an objector, intervenor, or amici**

Plaintiffs respectfully submit that Iowa lacks standing to appeal either the Settlement Order or the Fee Order—and that the issue is not particularly close. The next question is, what ***can*** Iowa do in connection with this appeal? The Court has raised three possibilities: objection, intervention, and participation as *amicus curiae*.

As to the first option—objection—Iowa lacks standing to object to the settlement for the reasons set forth in the previous section. Objector standing under Rule 23 is expressly confined to class members, *see* Fed. R. Civ. P. 23(e)(5)(A), and several of the cases and other authorities discussed in the previous section of this letter brief specifically address State-as-putative-objector standing. *See Paterson*, 308 F.3d at 449 (Texas objected in district court); *Deepwater Horizon*, 910 F. Supp. 2d at 943 ("The Gulf States, which are obviously not members of the settlement class, lack standing to submit objections."); *Chapman*, 940 F.3d at 302 (Arizona objected and moved to intervene in district court). Iowa cannot stand as an objector here on appeal.

As to the second option—intervention—the procedural lay of the land is actually relatively fraught, and even unsettled, as an overall matter. "There is no appellate rule allowing intervention generally," with Fed. R. App. P. 15(d) "contemplat[ing] intervention only in proceedings to review agency action." *Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020). This Court "ha[s] allowed intervention in cases outside the scope of Rule 15(d)," *id.* (citing *United States v. Bursey*, 515 F.2d 1228, 1238-39 (5th Cir. 1975)), but has permitted appellate intervention only "in an exceptional case for imperative reasons" to "prevent . . . procedural gamesmanship," *id.* at 1105. The most recent decision of this Court to expressly rule on a motion to intervene denied it for failure to meet the "exceptional case[]" standard. *See id.* at 1105-06. And scholars have noted that the overall standard for appellate intervention across the country is complex and uncertain. *See, e.g.,* Brief of Scholars of Federal Civil Procedure as Amici Curiae in Support of Respondents, *Arizona v. Mayorkas*, No. 22-592, 2023 WL 1996964 (U.S. Feb. 9, 2023). Regardless of procedural niceties, the usual substantive lodestar for intervention is "where it is evident that the [proposed intervenor's] interest cannot adequately be represented" absent intervention. *Richardson*, 979 F.3d at 1104 (quoting *Bursey*, 515 F.2d at 1238 n.24).

Plaintiffs respectfully submit that Iowa does not meet the exacting requirements for appellate intervention here, because it ***has no*** legally cognizable interest of its own, as explained at length in the previous section. As a result, Iowa has no legally cognizable interest distinct from that of appellant Huang, who is a class member with standing below and standing on appeal. To the extent that Iowa wishes to add color or context to Mr. Huang's arguments on appeal, that is a perfectly appropriate role of an amicus—a role Iowa itself has served in other appeals, according to its own objection and briefs. *See* ROA.1968 (citing *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 121 (2d Cir. 2025), where Iowa served "as *amicus curiae*"). But Iowa cannot, even as an

intervenor without injury of its own, raise issues not raised or preserved by Mr. Huang, the party with actual standing. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) (distinguishing between right to intervene and Article III standing in connection with appeal).

That is, regardless of whether Iowa is permitted to intervene, it cannot (given it lacks Article III standing) press its own alleged issues and injuries, but can only bolster Mr. Huang's issues and arguments. *Id.* ("an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III"). As a result, intervention is not necessary, and should as an "exceptional" remedy, *Richardson*, 979 F.3d at 1105, be denied. But at bottom, whether Iowa is welcomed as intervenor or as *amicus*, its role is the same: an explicator of Mr. Huang's arguments and issues, and no more. *See Diamond*, 476 U.S. at 68; *see generally United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (reversing as abuse of discretion Court of Appeals ruling based on arguments presented only by *amici*, and explaining: "Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." (cleaned up)).

**(3) Whether [the Court] must resolve these issues on appeal, or whether [the Court] should remand to allow the district court to address them in the first instance**

The Court must resolve Iowa's standing in order to rule either way on this appeal. Standing is jurisdictional, Plaintiffs' challenge to Iowa's standing was raised early in this appeal (indeed, in a motion filed in January, Doc. No. 44), and no facts developed in the district court could change whether Iowa has standing. Moreover, *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), likely prevents the Court from either affirming or reversing on the merits without first addressing Iowa's standing, given the difference in arguments pressed by the appellant with

unchallenged standing (Huang) and the one without (Iowa). In *Steel Co.*, the Supreme Court rejected the so called "doctrine of hypothetical jurisdiction" in which Courts of Appeals were "proceed[ing] immediately to the merits question, despite jurisdictional objections, at least where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Id.* at 93-94.

Here, the problem under *Steel Co.* with reaching the merits without deciding Iowa's standing is that the "merits" differ (affirmance or otherwise) whether Iowa has standing or not. Specifically, Huang below raised only a subset of issues pressed on appeal by Iowa—for example, Huang's district court objection did not substantively challenge Plaintiffs' motion for attorney's fees and expenses, *see* ROA.1831-43, and basic party-presentation and appellate-preservation principles generally limit the Court to issues actually pressed by parties with standing. *See Roberts v. KJ Win, Inc.*, 179 F.4th 369, 373 (5th Cir. 2026) ("This court typically 'refuse[s] to consider issues not raised below.'" (quoting *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1364 (5th Cir. 1983)). The Court's recognized exceptions to this principle—"a purely legal matter and failure to consider it must result in a miscarriage of justice," *Roberts*, 179 F.4th at 373 (quoting *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021))—are inapplicable to the various issues now pressed on appeal that were never raised by Huang below.

In view of the above, in order to affirm or reverse on any substantive issue, the Court would likely need to address Iowa's standing and role on appeal. As to the issue of Iowa's standing itself, the Court could presumably remand to the district court to evaluate that in the first instance, but it is not clear how remanding that purely legal issue would advance proceedings, particularly as the issue of Iowa's standing has been extensively briefed to this Court, does not rely on underlying

factual findings, and the antitrust compliance program required under the settlement is waiting for final resolution to commence.

Respectfully submitted,

Brian J. Dunne

cc: all counsel

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2026, I electronically filed Plaintiffs-Appellees' court-directed letter brief with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I certify that counsel for all participants (including Mr. Huang, *pro se*) are registered CM/ECF users with respect to this appeal, and that service on them will be accomplished by the appellate CM/ECF system.

*s/ Brian J. Dunne*