<u>**VIA ECF**</u>

Shiyang Huang
2813 SW Rother Rd.
Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

November 6, 2026

Tom Plunkett, Clerk of Court
United States Court of Appeals, Fifth Circuit
Office Of the Clerk, F. Edward Hebert Building
600 S. Maestri Place,
New Orleans, LA 70130-3408

RE: ***Corrente v. The Charles Schwab Corp.*, No. 25-40774 (5th Cir.)**
**Supplemental Letter Brief re: the State of Iowa (Dkt. 158)**

Appellant Huang submits this letter pursuant to Dkts. 158, 161.

In his view, **Iowa has *parens patriae* standing under CAFA.**

<table>
<tr><td rowspan="2">Party \ Issue</td><td colspan="5">Non-jurisdictional issues</td></tr>
<tr><td>§1715 notice</td><td>Class notice / China Agritech</td><td>Class certification</td><td>Settlement approval</td><td>Fee motion, (h)(1) notice</td></tr>
<tr><td>This Court (sua sponte)</td><td>None</td><td colspan="4">Non-forfeitable, “independent duty” under Morrow, High Sulfur, Strong, Stirman (all 5th Cir.)</td></tr>
<tr><td>Huang</td><td>None</td><td>Rule 23 issues on appeal (Morrow)</td><td colspan="2">Yes – preserved below</td><td>No standing</td></tr>
<tr><td>Iowa, (CAFA and Snapp)</td><td rowspan="3">Info. Injury,<br><br>FEC v. Akins, 524 U.S. 11 (1998)</td><td colspan="4">(1) Pub. L. No. 109-2, § 2(a)(4), 119 Stat 5 identified harms on “free flow of interstate commerce,” a quasi-sovereign interest under Snapp; or (2) S. Rep. 109-14 (2005)(legislative history)</td></tr>
<tr><td>Iowa (under Chapman)</td><td>Iowan past customers</td><td>None</td><td>Iowan past customers</td><td>Fee reverter, 23(h)(1) failure</td></tr>
<tr><td>Iowa (Snapp, parens patriae)</td><td colspan="4">Snapp’s quasi-sovereign interests to “enjoin nuisance,” assure its “benefits of the federal system,” and enforce “antitrust laws”</td></tr>
<tr><td>Iowa (§1715 only)</td><td colspan="5">None – no text in § 1715 obligations let sovereigns do anything</td></tr>
</table>

## (1) Whether the State of Iowa has Article III Standing

Iowa has *parens patriae* standing under CAFA, because Congress identified harms to "***the free flow of interstate commerce.***" Pub. L. No. 109-2, § 2(a)(4), 119 Stat. 5, as a note to 28 U.S.C. § 1711 (emphasis added), and States are allowed to proceed as *parens patriae* to "vindicate the States' interest in the removal of barriers to the participation by its residents in ***the free flow of interstate commerce***." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 608 (1982) ("*Snapp*") (emphasis added).[1]

*Past customers, fee reverter, Rule 23(h)(1) and § 1715 issues* all supply standing under *Chapman v. Tristar Prods.,* 940 F.3d 299 (6th Cir. 2019).

***1.*** This Court repeatedly stated its "obligation … to protect the class action device from misuse because the most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees[.]" *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 849 (5th Cir. 1998). "Because courts have an independent obligation to protect the interests of the class,"[2] *Morrow v. Jones,* 140 F.4th 257, 262 (5th

---

[1] A "court of appeals is entitled to apply the controlling law even if the litigants failed to cite the best authority." *In re Aqua Dots Prods. Liab. Litig.,* 654 F.3d 748, 752 (7th Cir. 2011); *Elder v. Holloway,* 510 U.S. 510 (1994).
[2] "[T]he court was bound to conduct its own thorough rule 23(a) inquiry … to protect … unnamed potential class members [who] do not and cannot

Cir. 2025) reached new Rule 23 issues on appeal "whether or not Plaintiffs themselves raised the issue." *Id.* "[W]hen fees are paid from the defendant's own funds, a conflict results from 'the danger that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees[.]'" *Strong*, 137 F.3d at 850. Because this Court has appellate jurisdiction, all Rule 23 issues can be reached *sua sponte*.

***2.*** But any *party* is limited by Article III: "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021). Huang had ECF and was uninjured by the Rule 23(h)(1) failure Iowa caught, ROA.1980.[3] He lacked standing to dispute fees. ROA.1256.[4] Only Iowa briefed its § 1715(b) injury on appeal.

---

participate in any stipulations concocted by the named parties." *Stirman v. Exxon Corp.,* 280 F.3d 554, 563 n.7 (5th Cir. 2002). Courts are "fiduciar[ies] serving as guardian for the unrepresented class members[.]" *United States v. City of Miami,* 614 F.2d 1322, 1331 (5th Cir. 1980); *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 229 (5th Cir. 2008). *In re NFL Players Concussion Injury Litig.,* 821 F.3d 410, 430 (3d Cir. 2016)("We have an independent obligation to protect the interests of the class"); *In re Sw. Airlines Voucher Litig.,* 799 F.3d 701, 715 (7th Cir. 2015).

[3] https://web.archive.org/web/20250729140324/https:/www.schwabcorrentesettlement.com/documents; *Briseno v. Henderson,* 998 F.3d 1014, 1026 n.3 (9th Cir. 2021) ("independent duty" to verify Rule 23(e)(2)(C) clauses)

[4] Reverter is "a gimmick for defeating objectors [who] would not have standing to object[.]" *Pearson v. NBTY, Inc.,* 772 F.3d 778, 786 (7th Cir.

C.A. Dkt. 107. Plaintiffs insisted a damage class remained viable until after objection deadline, ROA.1022, 1832, 1843; ROA.2156-58 & n.24; *See also* Oral Arg. 46:52-56 & ROA.2931. Huang disputed notice on appeal. *Morrow*. 140 F.4th at 262 ("The mandatory language of the Rule itself suggests that we should not treat the notice requirement as a forfeitable issue.")

***3.*** Congress stressed that "abuses of the class action device" harmed "***the free flow of interstate commerce***[.]" Pub. L. No. 109-2, § 2(a)(4), 119 Stat. 5 (emphasis added). Five circuits read § 2(a)(4) or § 2 this way.[5] ***Snapp*** called it a *quasi-sovereign* interest "to *vindicate the State's interest* in the removal of barriers to the participation by its residents ***in the free flow of interstate commerce***." 458 U.S. at 608 (emphasis added). Plaintiffs said, "look at the statute[.]" Oral Arg. 28:20-27. *Indeed, the dots have connected*.[6] CAFA found that "[c]lass members' are 'harmed' when "counsel are awarded

---

2014) (Posner J.); *Briseno,* 998 F.3d at 1027; Plaintiffs Br. 3, 77 (same). Schwab argued a *1983* case beats *Evans v. Jeff D.,* 475 U.S. 717, 734 (1986) on its "total liability." *Strong*, 137 F.3d at 850; Huang Reply 24. Yet the "package deal" keyword alone governs 2nd, 3rd, 8th, 9th, and 11th Circuits.

[5] *Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.* 865 F.3d 537, 540 (7th Cir. 2017) (Wood, C.J); *Bell v. Hershey Co.,* 557 F.3d 953, 957 (8th Cir. 2009) ("the national economy risked damage from a proliferation of meritless class action suits.") *Robert D. Mabe, Inc. v. OptumRX,* 43 F.4th 307, 320 (3d Cir. 2022). *Lester v. Exxon Mobil Corp.,* 879 F.3d 582, 591-92 (**5th Cir. 2018**) (Owen, J.) **(**CAFA "curb[s] abuses of the judicial system")(citing § 2; *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1197 (11th Cir. 2007) (Tjoflat, J.)).

[6] Congress can "elevate" harms. *TransUnion,* 594 U.S. at 425; Dkt. 171 at 4.

large fees, while leaving class members with … awards of little or no value." Brief for the United States, *Frank v. Gaos,* 2018 WL 3456069, 30-31 (U.S. Jul. 16, 2018), quoting Pub. L. No. 109-2, § 2(a)(3)(A). Class action abuses "harmed class members … undermined public respect for our judicial system … confusing notices … prevent class members from being able to fully understand and effectively exercise their rights[.]" *Id.* §§ 2(a)(2)-(4).[7]

And CAFA is "not a model of draftsmanship." [8] This Court interpreted CAFA's legislative history many times.[9] There, the language of 28 U.S.C. § 1715(f) is *promptly followed by* "[t]hus, federal and state officials will be notified about proposed settlements and have an opportunity to get involved if they think it is appropriate." S. Rep. 109-14, at 33 (2005). "Thus" wording infers that § 1715(f) *presumed* CAFA officials *had usable rights*.[10]

And CAFA's history points to *empowering government officials, not absentees*: to "ensure that a responsible state and/or federal official receives

[7] *Std. Fire Ins. Co. v. Knowles,* 568 U.S. 588, 595 (2013) (citing § 2(b)(2)).
[8] *Drazen v. Pinto,* 106 F.4th 1302, 1349 (11th Cir. 2024)(Tjoflat, J.); *Linneman v. Vita-Mix Corp.,* 970 F.3d 621, 625 (6th Cir. 2020) (citing cases)
[9] *Frazier v. Pioneer Americas, LLC,* 455 F.3d 542, 545-46 nn.5, 17 (5th Cir. 2006) *Rainbow Gun Club, Inc. v. Denbury Onshore, LLC,* 760 F.3d 405, 410-11 (5th Cir. 2014); *Louisiana v. Am. Nat. Property Cas.* Co., 746 F.3d 633, 639 (5th Cir. 2014); *Cedar Lodge Plantation v. CSHV Fairway View I,* 768 F.3d 425, 428 (5th Cir. 2014); Schwab Br. 56 (citing S. Rep. 109-14 at 35).
[10] Plaintiffs' counsel also "change[d] his mind," admitting sovereigns also have standing if private actions will release their claims. Oral Arg. 25:30-40.

information … and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." *Id.* at 32. CAFA "intended to … add[] a layer of independent oversight to prohibit inequitable settlements." *Id.* at 34. "Notice will also deter … settlements that do not benefit the injured parties." *Id.* at 35.

***4.*** *Chapman* alone held Arizona's objection as "indistinguishable from the objections which individual Arizonans might raise." 940 F.3d at 306. But Iowa *can* **(1)** represent Iowan *past customers*, whose claims were tolled, had no notice and *cannot* "object[.]" *Id.* ROA.1011 (the "Settlement Class is narrower than the class defined in the Complaint, which also encompassed past customers seeking damages for past conduct") **(2)** Only Iowa can raise § 1715(b) injuries. Schwab Br. 22 n.1; ROA.1980. **(3)** No absentee raised Rule 23(h)(1) or *spam-folder* notice Huang had, *id.;* Huang Br. 14, and **(4)** no absentee has Article III standing to challenge the fee awards. ROA.1349.

***5.*** *Parens patriae* allows States to act when the "matters complained of affect her citizens at large." *Snapp,* 458 U.S. at 603. States can act when "health and comfort of the inhabitants of a State are threatened[.]" *Id.* "The public nuisance and economic well-being lines of cases were specifically brought together … in [alleged] violation of the federal antitrust laws[.]" *Id.*

at 605; *id.* ("a wrong which, if proven, limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position"). "Similarly, federal statutes creating benefits or alleviating hardships create interests that a State will obviously wish to have accrue to its residents." *Id.* "[A] State does have an interest, independent of the benefits that might accrue to any particular individual, in assuring that the benefits of the federal system are not denied to its general population."[11] *Id.* Class-action abuses interfering with the Clayton Act, Due Process, Rule 23 *(28 U.S.C. App.)* thus injure *quasi-sovereign* interests. ROA.2156-58.[12]

**(2) Whether Iowa can participate as an objector, intervenor, or amici**

**Intervenor:** Iowa will face an impossible catch-22 for intervention. First, *Town of Chester v. Laroe Estates,* 581 U.S. 433, 435 (2017) requires

[11] "[T]he State and its residents are not excluded from the benefits that are to flow from participation in the federal system." *Snapp,* 458 U.S. at 608; *Texas v. United States,* 50 F.4th 498, 515 (5th Cir. 2022) (Richman, C.J.).

[12] Settlements that only "induce the defendants to pay the class's lawyers enough to make them go away [with] only worthless benefits for the class should be dismissed out of hand." *In re Subway Footlong Sandwich Mktg. Litig.,* 869 F.3d 551, 556 (7th Cir. 2017)(citation modified); A "settlement involving a meager recovery for the class but generous compensation for the lawyers … promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Eubank v. Pella Corp.,* 753 F.3d 718, 720 (7th Cir. 2014) (Posner, J.); *Briseno,* 998 F.3d at 1027 ("a Murderers' Row of provisions … favor[ed] class counsel and the defendant at the expense of the class members.")

every intervenor to show standing—the *same* jurisdictional scrutiny as to Iowa's standing to appeal. And timeliness is *impossible* for Iowa: § 1715(b) notice delivers *far before* class notice; yet key papers drop *months later*.[13] ROA.2832; *Johnson v. NPAS Sols.,* 975 F.3d 1244, 1253 (11th Cir. 2020).[14]

**Amici:** 28 U.S.C. § 517 allows U.S. DOJ to appear in any federal court. In district courts, There appears to be no "*right to brief as amici*" similar to Fed. R. App. P. 29(a)(2), or "*right to appeal by amici*" for anyone. *In re Bayshore Ford Trucks Sales, Inc.,* 471 F.3d 1233, 1249 n.34 (11th Cir. 2006).

**(3) Whether this Court shall resolve these issues on appeal, or remand**

Since Iowa has *parens patriae* standing under CAFA, this Court can decide it. All parties agree: Every appellate court has a special obligation to satisfy its own jurisdiction. "The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997). *Huyer v. Van de Voorde,* 847 F.3d 983 (8th Cir.

[13] *United States v. Covington Cty. School Dist.,* 499 F.3d 464, 466 (5th Cir. 2007) ("15 weeks [before] seeking to intervene" is untimely.); *Sierra Club v. Espy,* 18 F.3d 1202, 1205 n.2 (5th Cir. 1994) (legal standards on timeliness)

[14] Huang (as a proposed amicus) and the U.S. Chamber of Commerce (as *amicus*) concurred that Rule 23(e) procedures moot interventions while *objections* can be heard. *Bolton v. At World Properties,* No. 26-1483, Dkts. 87, 93 (7th Cir. Sep. 28/29, 2026). Intervention *only for an appeal* is not needed for nonparties. *Lewis v. Crochet,* 105 F.4th 272, 281 (5th Cir. 2024).

2017) dismissed one of multiple objector appeals for lack of jurisdiction (Huang misspoke, Oral Arg. 16:25, citing a sister case.) Two circuits agree.[15]

*Further,* standing is a "purely legal question. No facts could have been developed to aid our resolution of the issue." *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 768 n.10 (5th Cir. 1976).[16] Even intervention is reviewed *de novo,* including timeliness *when there is no finding below*. *Espy, supra* n.13.

* * *

*Did Congress expect Huang—a pro se—to shoulder a full body of class-action law against its abusers, or resist a $0 defective settlement with $1,000+, all for thankless "serial objector" smears (Plaintiffs Br. 4, ROA.2157-58) that an E.D. La. federal judge and now-U.S. Attorney of Utah each endured for a decade? Will counsel call AGs "serial objectors" too when Congress identified harms on "interstate commerce," and Snapp called it a quasi-sovereign interest?*

*Did CAFA let sovereigns just "notice" how class actions can bypass adversarial testing? Did CAFA make sovereigns beg for leave to "object," but not appeal, so that Intelligender happens again if one court overrules them? As no court can reject or modify the still-undrafted "Plan," ROA.1342-43, must*

[15] *In re Equifax Inc. Cust. Data Sec. Breach Litig.,* 999 F.3d 1247, 1260 n.6 (11th Cir. 2021); *Saucillo v. Peck,* 25 F.4th 1118, 1122 (9th Cir. 2022).
[16] Iowa got *some* CAFA notice in February 2025, and Iowa objected below on July 29, 2025. ROA.1956-85. Iowa timely appealed. ROA.3125-26.

*sovereigns live with whatever unfolds for 4 years? As Plaintiffs sent spam email notices, with neither time-bar or fee motion website disclosure by objection deadline, ROA.1980, 1861 n.2; Huang Br. 13-14, can they mute CAFA officials too? How can absentees get § 1715(b) injuries (Schwab Br. 22 n.1 thinks Iowa can)? Must sovereigns only watch purported fiduciaries extract a "valuable" $9 million, making pro se arbitrations "harder?"* Oral Arg. 38:15-50; *supra* n.12; *Strong,* 137 F.3d at 849 ("public perceptions that attorneys exploit the class action device to obtain large fees at the expense of the class.")

Parties must accept "the statute" *including the note to 28 U.S.C. § 1711*: **(1)** Congress identified harms to "free flow of interstate commerce" after years of class-action abuses; *id.,* Pub. L. No. 109-2, § 2(a)(4), 119 Stat. 5; **(2)** *Snapp* held "free flow of interstate commerce" *is* a *quasi-sovereign* interest; and **(3)** Iowa has *parens patriae* standing to protect *quasi-sovereign* interests.

CAFA connected itself into *Snapp*. Iowa has *parens patriae* standing.

Date: November 6, 2026

Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2813 SW Rother Rd.
Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

*Objector-Appellant Shiyang Huang*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using this Court's CM/ECF system on November 6, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/Shiyang Huang